# 22-1481(L)

## 22-1982(CON)

# United States Court of Appeals

### For the Second Circuit

———— ❖ ————

UNITED STATES OF AMERICA,

*Appellee,*

—against—

ROBERT SYLVESTER KELLY, AKA R. KELLY,

*Defendant-Appellant.*

————

**On Appeal From The United States District Court
For The Eastern District of New York**

---

**THE GOVERNMENT'S APPENDIX
VOLUME III OF V
(Pages GA513 to GA791)**

---

BREON PEACE,
*United States Attorney,
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201
(718) 254-7000*

NICHOLAS J. MOSCOW,
LAUREN H. ELBERT,
KAYLA C. BENSING,
   *Assistant United States Attorneys,
      Of Counsel.*

# TABLE OF CONTENTS

Page

Defendant's Motion to Dismiss (DE 41),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated February 28, 2020...............................................................GA 1

Defendant's Motion to Dismiss, Motion to Strike (DE 42),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated March 2, 2020 .................................................................GA 12

Superseding Indictment (DE 43),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated March 12, 2020 ...............................................................GA 19

Joint Request to Charge (DE 117-1),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated July 7, 2021....................................................................GA 42

Defendant's Objections to Request to Charge (DE 117-3),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated July 7, 2021..................................................................GA 131

Government Memorandum in Support of Motion in Limine (DE 133),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated July 23, 2021................................................................GA 135

Defendant's Memorandum in Opposition to Motion in Limine (DE 146),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated July 31, 2021................................................................GA 190

Defendant's Letter Motion Regarding Jury Instructions (DE 219),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated September 18, 2021 ......................................................GA 203

Defendant's Memorandum in Support of Motion for Acquittal
(DE 269-1),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated February 17, 2022........................................................GA 211

Defendant's Memorandum in Support of Motion for a New Trial
(DE 270-1),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated February 17, 2022.............................................................GA 274

Defendant's Memorandum in Support of Supplemental Motion for a
New Trial (DE 276-1),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated March 21, 2022 .............................................................GA 296

Pretrial Conference Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated August 3, 2021 .............................................................GA 308

Jury Selection Transcript,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated August 9 through 11, 2021 ...........................................GA 328

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated August 18, 2021 ...........................................................GA 792

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated August 19, 2021 ...........................................................GA 796

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated August 20, 2021 ...........................................................GA 803

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated August 26, 2021 ...........................................................GA 814

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated September 1, 2021 ........................................................GA 853

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated September 14, 2021 ......................................................GA 870

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated September 15, 2021 ......................................................GA 872

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated September 22, 2021 ......................................................GA 886

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated September 23, 2021 ......................................................GA 897

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated September 24, 2021 ......................................................GA 901

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated September 27, 2021 ......................................................GA 907

Government Letter Regarding "For Cause" Challenges (DE 152),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated August 4, 2021 ...............................................................GA 918

Government Letter Regarding "For Cause" Challenges (DE 157),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated August 6, 2021 ...............................................................GA 924

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated August 23, 2021 .............................................................GA 928

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated August 25, 2021 .............................................................GA 949

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated August 30, 2021 .............................................................GA 952

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated August 31, 2021 .............................................................GA 954

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated September 2, 2021 .......................................................GA 960

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated September 3, 2021 .......................................................GA 962

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated September 9, 2021 .......................................................GA 986

Trial Transcript Excerpts,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated September 9, 2021 .......................................................GA 986

Government Exhibit 208(a),
  United States v. Kelly, 19-CR-286 (AMD).................................GA 1025

Government Exhibit 233(d),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated April 29, 2015...............................................................GA 1028

Government Exhibit 240(b),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated December 10, 2015.......................................................GA 1029

Government Exhibit 240(c),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated December 28, 2015.......................................................GA 1030

Government Exhibit 240(f),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated May 10, 2016.................................................................GA 1031

Government Exhibit 240(g),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated May 16 through 17, 2015.............................................GA 1033

Government Exhibit 401,
  United States v. Kelly, 19-CR-286 (AMD)..................................GA 1038

Government Exhibit 402,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated March 19, 2007 ............................................................GA 1039

Government Exhibit 417(a),
  United States v. Kelly, 19-CR-286 (AMD)..................................GA 1041

Government Exhibit 449,
  United States v. Kelly, 19-CR-286 (AMD)..................................GA 1042

Government Exhibit 497(a),
  United States v. Kelly, 19-CR-286 (AMD),
    Dated December 6, 2017........................................................GA 1047

Government Exhibit 485(b)-T,
  United States v. Kelly, 19-CR-286 (AMD),
    Dated December 6, 2017........................................................GA 1049

Submitted Separately on Disc

Government Exhibit 328(a)
  United States v. Kelly, 19-CR-286 (AMD)..................................GA 1063

Government Exhibit 329(a)
  United States v. Kelly, 19-CR-286 (AMD)..................................GA 1064

Government Exhibit 341(a)
  United States v. Kelly, 19-CR-286 (AMD)..................................GA 1065

Government Exhibit 342(a)
  United States v. Kelly, 19-CR-286 (AMD)..................................GA 1066

Government Exhibit 343(a)
  United States v. Kelly, 19-CR-286 (AMD)..................................GA 1067

186

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------x
                                      19-CR-286(AMD)
 3   UNITED STATES OF AMERICA,
                                      United States Courthouse
 4            Plaintiff,              Brooklyn, New York

 5            -against-               August 10, 2021
                                      9:30 a.m.
 6   ROBERT KELLY,

 7            Defendant.
     ------------------------------x
 8
              TRANSCRIPT OF CRIMINAL CAUSE FOR JURY SELECTION
 9              BEFORE THE HONORABLE ANN M. DONNELLY
                  UNITED STATES DISTRICT JUDGE
10                    BEFORE A JURY

11   APPEARANCES

12   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
13                            271 Cadman Plaza East
                              Brooklyn, New York 11201
14                            BY:  ELIZABETH GEDDES, ESQ.
                                   MARIA CRUZ MELENDEZ, ESQ.
15                                 NADIA SHIHATA, ESQ.
                              Assistant United States Attorneys
16
     For the Defendant:      THE C.H. SCHOLAR LAW FIRM PLLC
17                            225 Broadway - Suite 225
                              New York, New York 10007
18                            BY:  CALVIN HAROLD SCHOLAR, ESQ.

19                            THE LAW OFFICE OF THOMAS A. FARINELLA
                              260 Madison Avenue - 8th Floor
20                            New York, New York 10016
                              BY:  THOMAS A. FARINELLA, ESQ.
21
                              AIELLO & CANNICK
22                            69-06 Grand Avenue
                              Maspeth, New York 11378
23                            BY:  DEVEREAUX LEON CANNICK, ESQ.

24

25
```

187

1   APPEARANCES (CONTINUED)

2   Attorney for:              BLANK LAW, PC
                               444 South Washington Avenue
3                              Royal Oak, Michigan 48067
                               BY:  NICOLE BLANK BECKER, ESQ.

4

5   Court Reporter:            LINDA D. DANELCZYK, RPR, CSR, CCR
                               Phone:  718-613-2330
6                              Fax:    718-804-2712
                               Email:  LindaDan226@gmail.com

7

8   Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-aided transcription.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    188

```
 1                THE COURTROOM DEPUTY:  All rise.

 2                THE COURT:  All right, everyone, please have a seat.

 3                (Defendant enters the courtroom.)

 4                THE COURT:  Okay, good morning, everybody.

 5          Anything before we start?

 6                MS. GEDDES:  Not from the government.

 7                THE COURT:  Let's get everybody.

 8                THE COURTROOM DEPUTY:  All rise.

 9                (Prospective Juror enters the courtroom.)

10                THE COURTROOM DEPUTY:  Good morning, prospective

11     jurors.

12                Please stand and raise your right hand.

13                (Jury was sworn.)

14                THE PROSPECTIVE JUROR:  Yes, I do.

15                THE COURTROOM DEPUTY:  Thank you.  You may be

16     seated.

17                THE COURT:  All right.  Good morning, ladies and

18     gentlemen.  Welcome to the United States District Court for

19     the Eastern District.  I'm Judge Donnelly.  Our courtroom

20     deputy is Donna Greene.  And my law clerk is Feyilana Lawoyin.

21                As you know from the questionnaire, you're here

22     today because we are selecting a jury in a criminal case.  And

23     the name of the case is the United States against Robert

24     Sylvester Kelly.

25                As explained in the questionnaire, Mr. Kelly is
```

1   charged with racketeering for his alleged role as the leader

2   of an enterprise.  And he is alleged to have engaged in

3   racketeering acts that include bribery, sexual exploitation of

4   a child, kidnapping transportation of minors and other

5   individuals for the purpose of engaging in illegal sexual

6   activity, illegal coercion, and enticement of individuals in

7   forced labor.

8           Mr. Kelly is also charged with transporting

9   individuals, including a minor, for the purpose of engaging in

10  sexual activity and illegal coercion, and enticement of

11  individuals, including a minor.

12          Mr. Kelly has pleaded not guilty to all of these

13  charges.  It is the government's burden to prove Mr. Kelly

14  guilty beyond a reasonable doubt with respect to each of the

15  charges.

16          What I've given you is just a summary of the charges

17  so that you'll have some background on the case.  But I will

18  instruct you about the elements of those crimes at the

19  appropriate time.  And these are just charges.  It's the

20  purpose of a trial to determine whether the government has

21  proved those charges beyond a reasonable doubt.

22          Now I'd also like to introduce the parties to you,

23  starting with the government.

24          Maria Cruz Melendez.

25          MS. CRUZ MELENDEZ:  Good morning.

1          THE COURT:  Nadia Shihata.

2          MS. SHIHATA:  Good morning.

3          THE COURT:  And Elizabeth Geddes.

4          MS. GEDDES:  Good morning.

5          THE COURT:  At the defense table is Devereaux

6     Cannick.

7          MR. CANNICK:  Good morning.

8          THE COURT:  Nicole Blank Becker.

9          MS. BLANK BECKER:  Good morning.

10         THE COURT:  Mr. Thomas Farinella.

11         MR. FARINELLA:  Good morning.

12         THE COURT:  Calvin Scholar.

13         MR. SCHOLAR:  Good morning.

14         THE COURT:  And the defendant, Robert Kelly.

15         THE DEFENDANT:  Good morning.

16         THE COURT:  I first of all wanted to thank you all

17    for participating in this process.  The selection of a jury in

18    a criminal case is a critical part of the justice system.

19         Before we get started, I do want to give you a brief

20    overview of what your role will be if you are selected as a

21    juror in this case.

22         For those of you who have served as jurors before, I

23    think you'll find that this is a different experience for a

24    couple of reasons, which I'll talk to you about now.

25         First, I'm sure you've noticed that we've been

PROCEEDINGS                            191

1   referring to you by your assigned jury numbers, and that we've
2   asked you not to tell us your names.  And we have -- and
3   downstairs in the jury room they removed the name from your
4   questionnaires before we looked at them.
5           So none of us knows your name.  I don't know your
6   name.  The government doesn't know your name.  None of the
7   lawyers know your name.  And Mr. Kelly doesn't know your name.
8           And the reason for this is because earlier this year
9   I made a decision that the jury in this case would be what we
10  call "anonymous and partially sequestered."  That simply means
11  that nobody will know who the members of the jury are.
12  Although everybody will be able to see the jurors sitting in
13  the courtroom during the trial, nobody will know the names of
14  the jurors or anything about them.
15          The reason I did this was out of concern for your
16  privacy.  This is a high-profile case, and it's gotten a lot
17  of public attention, including in various forms of media.  And
18  I just don't want anybody trying to talk to you during the
19  trial for any reason.  I don't want you to be stopped on your
20  way to the train, or even somewhere here in the courtroom.
21          Keeping jurors anonymous is not at all unusual in a
22  high-profile case like this one.  And that's because other
23  people, for a variety of reasons, are interested in the case
24  and they might want to talk to you about it if they knew that
25  you were involved as a juror.

PROCEEDINGS                           192

1        You're going to have enough to do if you're selected

2   as a juror in this case with listening to the evidence, in

3   following the law, and dealing with people asking you

4   questions about it.  First of all, it's prohibited in any kind

5   of a case, but it's something I just didn't want to have you

6   deal with as part of your service as jurors.

7        The other part, as I said, for this that I made was

8   that the jurors will be brought to and from the courthouse by

9   the United States Marshals every day.  And that the jurors

10  will stay away from the rest of the public while you are in

11  the courtroom.  And this is done for the same reason, to make

12  sure that your privacy is protected.  And, again, this is not

13  unusual where there is significant media interest in a case.

14       The point is, that like any juror in any criminal

15  case, you play a critical function in listening to the

16  evidence and rendering a verdict, and nothing should distract

17  you from that job.

18       The second difference in the jury service in this

19  day and age has to do with the COVID-19 pandemic, which has

20  upended everyone's lives and the way our institutions

21  function.  And the court system is no different.

22       We here at the Eastern District, like courts

23  throughout New York, have consulted experts who have advised

24  us that it is safe to resume trials in our courtroom, as long

25  as we make sure we have certain protective measures in place.

PROCEEDINGS                    193

1          We are carefully following the guidance from the CDC

2    and other public health experts.  And both here in our court,

3    and in courts across New York, trials have been resumed.

4          We are taking every precaution to protect the health

5    of the public who come into our court and all of the people

6    who work here.

7          We've also made changes to the way we do trials so

8    that jurors can feel safe when they come to our courthouse to

9    fulfill this most important civic duty.

10         You probably noticed, obviously noticed some of it

11   when you came in.  We're taking temperatures.  People are

12   wearing masks in the public areas.

13         The entire courthouse is cleaned regularly and it's

14   sanitized early.  That includes doorknobs and table services

15   and chairs.  And there's hands sanitizer available throughout

16   the room.

17         Our courtrooms, this is our ceremonial courtroom,

18   which is ordinarily reserved for things like naturalization

19   ceremonies.  But we're using it because it can accommodate big

20   groups like this one.  When we actually try the case, that

21   will be a different courtroom.

22         But we've modified our courtrooms so that jurors are

23   no longer seated together in the jury box but instead they sit

24   apart from one another in what was previously the public area

25   of the courtroom.

PROCEEDINGS                    194

1          We've had an epidemiologist and ventilation or HVAC

2    specialist, an expert, review and confirm that we're doing

3    this the right way to make sure that everyone's safe.

4          If you are selected as a juror in this case, the

5    court will give you a mask every day of your service.  We'll

6    also give you lunch and snacks and water at no cost.

7          Obviously, the pandemic has imposed burdens on

8    everybody, but it's here, and so we've taken steps to make

9    sure that we can conduct trials in a safe and efficient

10   manner.

11         For over two centuries, it has been true that the

12   federal court is the always open.  That has been true in war,

13   in natural disasters, and even in pandemics that have occurred

14   previously.  It's true today because of the dedication of the

15   court staff here in the Eastern District, the lawyers, and the

16   judges, and the members of the public, like you, who continue

17   to serve dutifully and faithfully as jurors.

18         But one thing the pandemic has not changed is the

19   importance of jury service and the critical role that jury

20   service plays in our system of justice.

21         Jury service is both a right and a responsibility of

22   being a citizen of the United States, and that's true even in

23   these difficult times.

24         One of the great benefits of living in this country

25   is the trial by jury.  Obviously, jury service can be

PROCEEDINGS                                    195

1    inconvenient, nobody would deny that.  But I can tell you

2    after a fair number of years at this, that almost every juror

3    that I've spoken with after the proceeding has come away from

4    the experience with an appreciation not just for the system,

5    the jury system, but for their fellow jurors, the people that

6    they've served with.

7           So let me tell you about the purpose of this

8    process.  We're trying to select those jurors who can be fair

9    and impartial to both sides.  Some people find that they can

10   be fair and impartial in one kind of case but for a variety of

11   reasons, whether it's something you've heard or some

12   experience you've had, you can't be fair in another kind of

13   case.  And the process that we use is designed to help us

14   decide whether you can be fair and impartial in this case.

15          I think you can all appreciate that our task today

16   is an important one.  If during the course of this process you

17   think that because of something that has happened to you in

18   your life or something that you've heard or read that you

19   could not give both sides a fair trial, that is you couldn't

20   give both the government a fair trial and the defendant a fair

21   trial, then it is your duty to tell me.  It's not unusual, and

22   there's no reason to be embarrassed if you can't serve on a

23   particular jury.  They'll always be other cases that you can

24   serve on.

25          But as I assure you, you can also appreciate this

PROCEEDINGS                              196

1   system of justice only works if everybody is prepared to

2   perform their civic duty when they can serve as a juror fairly

3   and impartially.  And I wouldn't expect anybody to try to get

4   out of this for anything but the most valid reasons.

5           The second portion of the jury selection we're going

6   to be conducting in a different courtroom, and we'll be

7   questioning you individually.  We'll being asking you some

8   questions that are in addition to those questions that you've

9   answered in the questionnaire.

10          Just keep in mind that the goal of this questioning

11  process is to make sure that we're picking jurors who can be

12  fair and impartial to both sides.  Nobody's trying to pry into

13  your personal business or embarrass you in any way.

14          As I said, the purpose is to make sure that we're

15  getting those people who can give both sides a fair trial.

16          I should also tell you that in jury selection,

17  lawyers for both sides are permitted to exercise a number of

18  challenges, they're called peremptory challenges, and that

19  means they can excuse a certain number of prospective jurors

20  without giving a reason.  If you are excused, I'm sure you

21  won't take it personally.

22          If you are selected as a juror in this case, your

23  job is going to be to listen to the evidence, and to my

24  instructions on the law, and to make a determination that is

25  based on the law.

PROCEEDINGS                    197

1          So there are a couple of things that I want you to
2   keep in mind.
3          The first is that Mr. Kelly is presumed innocent.
4   He's presumed innocent until and only if the jury finds
5   unanimously that he is guilty beyond a reasonable doubt.
6          As I explained to you earlier, Mr. Kelly has been
7   indicted for certain crimes.  But the indictment is just an
8   accusation, it's not proof of anything.  You can't assume that
9   Mr. Kelly is guilty or more likely to be guilty just because
10  he's been charged with committing these crimes.
11          The reason, as I said before, that we have trials is
12  to determine whether the government has proved those
13  accusations beyond a reasonable doubt.  And as I just
14  mentioned, that is the government's burden to prove
15  Mr. Kelly's guilty beyond a reasonable doubt.  A defendant in
16  a criminal case does not have to prove that he is not guilty.
17          The next thing to keep in mind is that you must
18  follow the law as I give it to you, even if you don't agree
19  with it or you think it should be something else.
20          The next thing to keep in mind is that you must base
21  your verdict on the evidence, and that's the evidence that you
22  hear in the courtroom in the form of testimony or physical
23  evidence.  It's not based on anything that you've read in the
24  newspaper, or seen on television, or heard anybody talk about.
25          I've noted from your questionnaires that lots of you

PROCEEDINGS                                    198

1   like to watch law-related shows on television, and those are

2   great, but they don't really have anything to do with what our

3   job is here today.

4           So it's fine to enjoy those shows, but this is not

5   that.  So I want you to put anything that you think you

6   learned from one of those shows out of your mind.

7           In addition to shows that are, you know, Law & Order

8   or something like that that are for entertainment value, there

9   are also lots of news reports and documentaries about various

10  types of cases.  And the same thing, you have to keep those

11  out of your mind as well.

12          Those accounts may be true, but they might not be

13  true.  And you can't base your decision on anything that you

14  might have seen reported about, whether it's this case or some

15  other case.

16          As I explained before, your names and identities are

17  being kept in confidence.  So during this process, please

18  don't give any information about yourselves, or your family,

19  or where you work that might identify you.

20          As I also just told you, there will be -- is

21  significant media interest in this case.  That means there

22  will undoubtedly be television reports and newspaper reports

23  about this trial.

24          If you are selected as a juror, you're not going to

25  be permitted to read and watch or look at any accounts of this

PROCEEDINGS                                    199

1    case, no matter where they appear at all.

2           And the same -- and as important, you're not going

3    to be allowed to discuss the case with anyone else while the

4    trial is going on.  That includes your fellow jurors.  You

5    talk about other things, but you can't talk about the case

6    while the case is going on.

7           You also can't look anything up about the case on

8    social media or Google or anything having to do with the case,

9    whether it's the participants, or the nature of the charges or

10   anything like that.

11          I think it's probably pretty tempting to want to do

12   that, but you can't do it.  And the reason for these rules is

13   that they protect the integrity of this process and of the

14   trial.

15          Jurors in criminal cases base their verdicts only on

16   the evidence that they hear in the courtroom, not on something

17   that you see on television or that you've read on social

18   media.

19          So I'm going to -- if you're selected as a juror in

20   this case, I will remind you on a regular basis that you can't

21   look anything up.  You can't read anything about the case.

22   You can't blog about it or experience as a juror or anything

23   like that.  If you were to do that, you would be violating

24   your oaths as jurors.

25          You must report to me any effort by any person to

GA0527

1   influence you about the case in any way, shape or form.  If

2   anybody tries to speak with you about the case or get

3   information about the case, or finding out anything having to

4   do with the case, you must report back to me.

5           Just a word about our schedule.  The opening

6   statements and the presentation of evidence will begin on

7   August 18th.  That is a Wednesday.  The trial is expected to

8   last about four weeks.  We will be taking Fridays off

9   beginning the week of August 23rd, unless there's a religious

10  holiday during the week and that there are jurors who observe

11  a religious holiday, we'll take that holiday off instead of

12  the Friday.

13          As I said, before I'll be questioning you in another

14  moment in another courtroom, I just want to, just as a group,

15  ask you a few questions.  Some of these were in the

16  questionnaire, but it's been a little bit since you filled

17  them out.

18          So the first thing, as I said before, Mr. Kelly is

19  presumed to be innocent.  And as I said before, he's presumed

20  to be innocent until and only if the jury finds unanimously

21  that he is a guilty beyond a reasonable doubt.

22          Is there anyone here who disagrees with that rule of

23  law and can't follow it?

24          (No audible response heard.)

25          THE COURT:  All right, I don't see anybody.

PROCEEDINGS                                            201

1          As I explained to you earlier, he's been indicted

2     for these crimes.  As I said before, those are just

3     accusations.  You can't think somebody is more likely to be

4     guilty just because he's been charged with a crime or

5     committing these crimes.

6          Is there anyone here who can't follow that

7     principle?

8               (No audible response heard.)

9               THE COURT:  All right, I don't see any hands.

10          The government's burden is to prove Mr. Kelly guilty

11     beyond a reasonable doubt.

12          Anybody who can't follow that rule?

13               (No audible response heard.)

14               THE COURT:  Okay, I don't see any hands.

15          When you filled out the questionnaire, you were

16     asked and directed not to do any research or try to find out

17     about the case.

18          Is there anybody that's done that anyway, despite

19     that instruction, looked up anything having to do with the

20     case, you know, before you filled out the questionnaire or

21     since you filled out the questionnaire?

22          Even if you just Googled it, is there anybody who's

23     done that?

24               (Audible response heard.)

25               THE COURT:  That's okay, just raise your hand.

PROCEEDINGS                                             202

1          What number are you?

2          THE PROSPECTIVE JUROR:  260.

3          THE COURT:  260, okay.  Thanks.  Okay.

4          Anybody else?  Okay.

5          And now --

6          THE COURTROOM DEPUTY:  Judge.

7          MR. CANNICK:  Judge, I think there's one in the

8     back.

9          THE COURT:  Oh, I'm sorry.

10          You looked something up?

11          THE PROSPECTIVE JUROR:  185.

12          THE COURT:  185.  Okay, thank you.  All right.

13          You were also asked if you knew any of the

14     participants in the trial.  Now you've had a chance to see

15     everybody.  Anybody look familiar to you?  Okay.

16          MS. CRUZ MELENDEZ:  Judge, someone --

17          MS. SHIHATA:  Judge.

18          THE COURT:  Sorry.  Did you raise your hand?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  I can't hear you.

21          THE PROSPECTIVE JUROR:  The defendant looks

22     familiar.

23          THE COURT:  Okay, all right.

24          Anybody else?

25          Yes, sir.  Is it 160?

PROCEEDINGS                              203

1            THE PROSPECTIVE JUROR:  166.

2            THE COURT:  Okay.

3            THE PROSPECTIVE JUROR:  The defendant.

4            THE COURT:  Okay.  Well, let me have a see of show

5    of hands of everybody to whom the defendant looks familiar.

6            (Jurors complying.)

7            THE COURT:  All right.  What about anybody else?

8            (No audible response heard.)

9            THE COURT:  All right, that's good.  All right.

10           So at this point, we are going to ask questions of

11   each of you individually, and that involves transferring us to

12   a different courtroom.  So we're going to go with our jury

13   coordinators, and we'll see you in a few minutes.

14           THE COURTROOM DEPUTY:  All rise.

15           (Prospective Juror exits the courtroom.)

16           (Pause in the proceedings.)

17           THE COURTROOM DEPUTY:  All rise.

18           THE COURT:  Everybody can have a seat.

19           (Defendant enters the courtroom.)

20           THE COURT:  Okay.  All right, I have this

21   recollection that we dealt with Juror Number 6 yesterday, but

22   I guess I'm wrong.

23           MS. GEDDES:  I think that we would all agree that he

24   does not speak English.  He left many of the questions

25   unanswered, and he indicated difficulty in reading and

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

GA0531

PROCEEDINGS                                    204

1    understanding English.

2              THE COURT:  Yes, and that's fine, except that was

3    one of the people we had addressed yesterday but we're

4    addressing it now.

5              Does everybody agree that we don't have to go

6    through the process of questioning this juror?  Yes?

7              MS. GEDDES:  Yes.

8              MR. CANNICK:  Yes.

9              THE COURT:  Okay, so let's take Juror Number 6 off

10   the list.

11             So what number are we beginning with then?

12             THE COURTROOM DEPUTY:  29.

13             THE COURT:  29.  Is that somebody who didn't come

14   yesterday?

15             MS. GEDDES:  Yes.

16             THE COURT:  Oh.

17             Ms. Geddes, I only brought the second part of the

18   questions from yesterday.  Do you have questions for 29?

19             MS. GEDDES:  Oh, yes, we do.

20             THE COURT:  Okay.

21             MS. GEDDES:  (Proffering.)

22             (Prospective Juror enters the courtroom.)

23             THE COURT:  So this is Juror Number 29.

24             Good morning.

25             THE PROSPECTIVE JUROR:  Good morning.

PROCEEDINGS                          205

1          THE COURT:  How are you doing?

2          THE PROSPECTIVE JUROR:  I'm doing fine.  You?

3          THE COURT:  Good.  Thank you.

4          So I've gone over your questionnaire that you filled

5    out, and I'm just going to ask you a couple of additional

6    questions.

7          Why don't we start with that the piece of paper that

8    you've got in your hand that's near you.  That's just some

9    names that are in addition to the names from the

10   questionnaire.

11         Do you know any of those names or recognize any of

12   them?

13         THE PROSPECTIVE JUROR:  Nope.

14         THE COURT:  Okay.  So about some of the things you

15   answered in your questionnaire.

16         You're a cook; is that right?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  And don't tell us the name of the place

19   that you cook, but is it in a restaurant, or is it -- where is

20   it?

21         THE PROSPECTIVE JUROR:  It's a hospital.

22         THE COURT:  Oh, I see.

23         And how long have you had that job?

24         THE PROSPECTIVE JUROR:  Three years now.

25         THE COURT:  Okay.  And you also like to cook in your

GA0533

PROCEEDINGS                                            206

1    spare time; is that right?

2              THE PROSPECTIVE JUROR:  Love to cook.

3              THE COURT:  Anything in particular that you like to

4    cook?

5              THE PROSPECTIVE JUROR:  Italian food.

6              THE COURT:  I see.

7              What else do you like to do in your spare time?

8              THE PROSPECTIVE JUROR:  Well, most likely cook and

9    baking.  I have three kids.

10             THE COURT:  They're lucky, it sounds like.  Okay.

11             I just want to clarify the answer to two questions.

12             And just for counsel, that would be question 69 and

13   70.

14             I wanted to clarify your answer on this.

15             This has to do with people who work in law

16   enforcement.  They -- people who work in law enforcement

17   aren't any more believable or less believable than any other

18   person.  So if a person from law enforcement testifies, you

19   have to evaluate that person as an individual.

20             Would you be able to follow that instruction?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Okay.  And the other -- this is question

23   70.  If you are chosen to serve as a juror in this case, you

24   will be instructed that Mr. Kelly and his lawyers don't have

25   to put on any evidence at the trial at all.  That's because

PROCEEDINGS                                   207

1    it's the government that has the burden of proof.

2              Will you be able to follow that instruction?

3              THE PROSPECTIVE JUROR:  Yes, I would.

4              THE COURT:  Okay.  Thank you so much.

5              Now, during the course of the trial, you will hear

6    evidence that will involve testimony and exhibits that relate

7    to sexual activity between two people who are of the same --

8    or between people of the same sex.

9              Is there anything about that kind of evidence that

10   would affect your ability to be fair and impartial?

11             THE PROSPECTIVE JUROR:  No.

12             THE COURT:  Okay.

13             Let me just check with counsel to see if they have

14   additional questions for this juror.

15             MS. GEDDES:  No.

16             MR. CANNICK:  No.

17             THE COURT:  No, okay.

18             And I just wanted to go over a couple of those

19   important principles with you that we talked about in the

20   larger courtroom.  And I just talked to you about the burden

21   of proof, and you said that you can follow that rule, that the

22   government has the burden of proving guilt beyond a reasonable

23   doubt.

24             Can you follow that rule?

25             THE PROSPECTIVE JUROR:  Yes.

PROCEEDINGS                    208

1              THE COURT:  All right.  Now, also you have to follow

2    all of my instructions on the law.

3              Can you do that?

4              THE PROSPECTIVE JUROR:  Yes, ma'am.

5              THE COURT:  Okay.  And then you cannot do any

6    research about the case, look anything up on the internet or

7    anything like that.

8              Will you be able to follow that rule?

9              THE PROSPECTIVE JUROR:  Yes, ma'am.

10             THE COURT:  Okay.  And is there -- do you promise

11   that if you're selected as a juror in this case, that you will

12   give both sides a fair trial?

13             THE PROSPECTIVE JUROR:  Yes, ma'am, that's the right

14   way.

15             THE COURT:  Okay.  All right.

16             Thank you so much.  Ms. Greene is going to direct

17   you where to go next, okay?

18             THE PROSPECTIVE JUROR:  Thank you.

19             THE COURT:  Thanks.

20             (Prospective Juror exits the courtroom.)

21             (Prospective Juror enters the courtroom.)

22             THE COURT:  This is Juror Number 91?

23             Good morning.

24             THE PROSPECTIVE JUROR:  Good morning.

25             THE COURT:  How are you doing?

1              THE PROSPECTIVE JUROR:  Good.

2              THE COURT:  So you have in your hand there, we'll

3    just start with that, that has some additional names in

4    addition to the ones you saw on the questionnaire.

5              The question really is just do you recognize any of

6    those names?

7              THE PROSPECTIVE JUROR:  No, I don't.

8              THE COURT:  Okay.  So I've gone over your

9    questionnaire and I just want to ask you a couple of

10   additional questions about it.

11             THE PROSPECTIVE JUROR:  Sure.

12             THE COURT:  How long have you been a nurse?

13             THE PROSPECTIVE JUROR:  Okay, I've been in the

14   nursing field for -- since 2011.

15             THE COURT:  I see.  And in your current job?

16             THE PROSPECTIVE JUROR:  In my current position?  Or

17   my current job?

18             THE COURT:  Current position.

19             THE PROSPECTIVE JUROR:  Current position?  A little

20   over four years.

21             THE COURT:  I see.  Do you mind putting your --

22   holding your microphone up a little bit?  I just want to make

23   sure we can hear you.

24             I see one of the things you like to do in your spare

25   time is travel.  I guess you haven't had such opportunity in

PROCEEDINGS                                    210

1    the last couple of years to do that.

2              THE PROSPECTIVE JUROR:  Correct.

3              THE COURT:  Any place you like to travel to?

4              THE PROSPECTIVE JUROR:  I like to travel.

5              I have an upcoming trip, actually.

6              THE COURT:  When is that?

7              THE PROSPECTIVE JUROR:  August 31st.

8              THE COURT:  And how long are you planning to be

9    away?

10             THE PROSPECTIVE JUROR:  Ah, I'll being back on the

11   fourth day.

12             THE COURT:  I see.  And have you already purchased

13   your tickets for that trip?

14             THE PROSPECTIVE JUROR:  Yeah.  Well, the trip was an

15   actual gift as a health care hero, so...

16             THE COURT:  Congratulations.

17             THE PROSPECTIVE JUROR:  Thank you.

18             So I had to postpone the trip before due to exams in

19   school, but...

20             THE COURT:  And you can't postpone it again?

21             THE PROSPECTIVE JUROR:  The promotion ends on

22   September 30th.

23             THE COURT:  All right.

24             MS. GEDDES:  We consent, Judge.

25             MR. CANNICK:  No one is going to stand in the way of

PROCEEDINGS                                      211

1    a hero.

2              THE COURT:  Well, I'm sorry to see you go, but

3    congratulations to you, well deserved.

4              THE PROSPECTIVE JUROR:  Thank you.

5              THE COURT:  Enjoy your trip, okay?  All right.

6              (Prospective Juror exits the courtroom.)

7

8              (Continued on the following page.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JURY SELECTION                                    212

1              (The prospective juror approaches.)

2              THE COURT:  And this is Juror Number 115; is that

3      right?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Good morning.

6              How are you?

7              THE PROSPECTIVE JUROR:  Good morning.

8              THE COURT:  So I've read your questionnaire.  I'm

9      just going to ask you a couple questions about some of your

10     answers, all right?

11             THE PROSPECTIVE JUROR:  Okay.

12             THE COURT:  Actually, I'm going to start with

13     something else, which is the piece of paper in front of you.

14     That just has some names in addition to that list from the

15     questionnaire.

16             Do you recognize any of those names?

17             THE PROSPECTIVE JUROR:  No.

18             THE COURT:  Okay.  So you are currently employed as

19     a law enforcement officer; is that right?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Is that a federal position or a city

22     position?

23             THE PROSPECTIVE JUROR:  City.

24             THE COURT:  How long have you had that job?

25             THE PROSPECTIVE JUROR:  Just under two years.

JURY SELECTION                    213

```
 1                THE COURT:  Okay.  And what did you do before that?

 2                THE PROSPECTIVE JUROR:  I went back to school.

 3                THE COURT:  I see.  Because you were in the

 4     military; is that right?

 5                THE PROSPECTIVE JUROR:  Yes.

 6                THE COURT:  And I see that you studied criminal

 7     justice as well.  Is that in connection with your current

 8     position?

 9                THE PROSPECTIVE JUROR:  Yes.

10                THE COURT:  So I'm sure as part of your education

11     and as part of your job, you've learned a lot of different

12     things in terms of training or different rules of law.

13                Will you be able to put aside the things that you've

14     learned if you're selected as a juror in this case?

15                THE PROSPECTIVE JUROR:  Yes.

16                THE COURT:  And will you be able to follow the law

17     as I give it to you?

18                THE PROSPECTIVE JUROR:  Yes.

19                THE COURT:  Now, what kinds of things do you like to

20     do in your spare time?

21                THE PROSPECTIVE JUROR:  Hang out and just watch TV.

22                THE COURT:  Okay.  Anything else?

23                THE PROSPECTIVE JUROR:  Not really.

24                THE COURT:  Any kind of shows you like to watch?

25                THE PROSPECTIVE JUROR:  Japanese ones.
```

JURY SELECTION                                    214

1           THE COURT:  Okay.  So during the course of this

2    trial, you may hear evidence that involves some testimony or

3    exhibits having to do with sexual activity with people who are

4    of the same sex.

5           Is there anything about the nature of that evidence

6    that would make it hard for you to be fair and impartial?

7           THE PROSPECTIVE JUROR:  No.

8           THE COURT:  Okay.  And let me just see if either of

9    the lawyers has any questions for you.

10           MR. CANNICK:  Just briefly.

11           THE COURT:  Sure.

12           (Continued on the next page.)

13           (Sidebar conference.)

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                    215

1          (Sidebar conference held on the record out of the

2     hearing of the prospective juror.)

3          MR. CANNICK:  Your Honor, I think his brother-in-law

4     is in law enforcement.  If you could just find out what --

5     with whom.

6          THE COURT:  City or state, you mean?

7          MR. CANNICK:  City or state, what agency.

8          (Sidebar end.)

9          (Continued on the next page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JURY SELECTION                                    216

1            (In open court.)

2            THE COURT:  Is your brother also in law enforcement?

3            THE PROSPECTIVE JUROR:  Yes.

4            THE COURT:  Same kind of area as you are?

5            THE PROSPECTIVE JUROR:  Yes.

6            THE COURT:  So do you work together?

7            THE PROSPECTIVE JUROR:  No.

8            THE COURT:  Okay.  That's a city agency?

9            THE PROSPECTIVE JUROR:  Yes.

10           THE COURT:  Okay.  All right.  I just want to go

11   through some of these important principles that we discussed

12   in the main courtroom.

13           The first rule is that Mr. Kelly is presumed to be

14   innocent and the Government has to prove his guilt beyond a

15   reasonable doubt.  If you are selected as a juror in this

16   case, I will give you more detailed instructions about that

17   principle, but is that a principle that you promise to follow?

18           THE PROSPECTIVE JUROR:  Yes.

19           THE COURT:  Okay.  You also have to follow my

20   instructions on the law, as I said before, even if you don't

21   agree with them or think they should be different.

22           Can you do that?

23           THE PROSPECTIVE JUROR:  Yes.

24           THE COURT:  And also, critically important, you

25   can't do any research about the case, look anything up on the

JURY SELECTION                                    217

1    internet, or anything like that.

2            Will you be able to follow that directive?

3            THE PROSPECTIVE JUROR:  Yes.

4            THE COURT:  All right.  Do you promise that if you

5    are selected as a juror in this case that you will give both

6    sides a fair trial?

7            THE PROSPECTIVE JUROR:  I do.

8            THE COURT:  Okay.  Thank you so much.  Ms. Greene is

9    going to tell you where to go, okay?

10           (The prospective juror exits.)

11           (The prospective juror approaches.)

12           THE COURT:  And is this Juror 127?

13           THE PROSPECTIVE JUROR:  Yes.

14           THE COURT:  Okay.  Good morning.

15           You can take off your mask if you want to.

16           THE PROSPECTIVE JUROR:  Okay.

17           THE COURT:  How are you doing?

18           THE PROSPECTIVE JUROR:  Good.  How are you?

19           THE COURT:  Good.

20           So I've gone through your questionnaire, and I just

21   have a few additional questions, but why don't we start with

22   that piece of paper you have in your hand.  That's just a list

23   of some additional names that you might hear during the course

24   of the trial.

25           Do you recognize any of those people?

GA0545

JURY SELECTION                                    218

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Okay.  And you are a credential

3   specialist; is that right?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  What is that?

6          THE PROSPECTIVE JUROR:  When you have health

7   insurance and you go to an in-network doctor, I'm the person

8   that makes sure that that doctor has their license for

9   insurance.

10         THE COURT:  How long have you had that position?

11         THE PROSPECTIVE JUROR:  Since 2017.

12         THE COURT:  And you wrote that you've heard

13  something about this case, I guess, from reading it in the

14  media at some point.

15         THE PROSPECTIVE JUROR:  It was, like, years ago, I

16  remember hearing about something with him and a girl or

17  something, but that's as far as I knew of it.

18         THE COURT:  All right.  And, obviously, as I said,

19  when we were in the larger courtroom, you have to disregard

20  anything you might have heard from some other source if you

21  are a juror in this case --

22         THE PROSPECTIVE JUROR:  Of course.

23         THE COURT:  -- and you just have to focus on the

24  evidence that comes out during the course of the trial.

25         Can you put aside anything you might have heard

JURY SELECTION                                    219

1   about the case?  It doesn't sound like you heard very much

2   about it, but --

3              THE PROSPECTIVE JUROR:  Of course.

4              THE COURT:  And not let that have any impact at all

5   on your ultimate decision --

6              THE PROSPECTIVE JUROR:  Okay.

7              THE COURT:  -- okay?

8              THE PROSPECTIVE JUROR:  Yeah.  I don't know if I'm

9   supposed to tell you up front, but I have a flight scheduled.

10             THE COURT:  That's good to know, yes.  When is it

11  scheduled?

12             THE PROSPECTIVE JUROR:  It's the -- during the week,

13  I'm only gone the first Monday and Tuesday -- I'm sorry, the

14  last Monday and Tuesday of August.

15             THE COURT:  I see.  And that's not something you can

16  change?

17             THE PROSPECTIVE JUROR:  It's not.

18             THE COURT:  No?  Okay.  All right.  Well --

19             THE PROSPECTIVE JUROR:  Because I have -- I didn't

20  get insurance, otherwise I would have cancelled it --

21             THE COURT:  That's okay, we're not going to --

22             THE PROSPECTIVE JUROR:  -- because I'm going with

23  people I don't even know that well.

24             THE COURT:  I don't want to interfere with those

25  plans, so we'll excuse you.

JURY SELECTION                                      220

```
1            THE PROSPECTIVE JUROR:  Sorry.

2            THE COURT:  That's all right.  Have a good trip.

3            THE PROSPECTIVE JUROR:  Thank you.

4            THE COURT:  Hope the people are nice.

5            (The prospective juror exits.)

6            (The prospective juror approaches.)

7            THE COURT:  This is Juror Number 153.

8            If you want, you can remove your mask.

9            Good morning.

10           THE PROSPECTIVE JUROR:  Good morning.

11           THE COURT:  How are you doing?

12           THE PROSPECTIVE JUROR:  I'm good.

13           THE COURT:  I'm going to start with that piece of
```
paper in front of you, which is just some additional names
that you might hear either who will testify or whose names
might be mentioned during the course of the trial.

```
17           Are you familiar with any of them?

18           THE PROSPECTIVE JUROR:  No.

19           THE COURT:  And so I've gone through your
```
questionnaire.  I'm just going to ask you some additional
questions.

```
22           THE PROSPECTIVE JUROR:  Sure.

23           THE COURT:  You wrote that you have heard about some
```
of the allegations or some allegations about Mr. Kelly.

```
25           Can you put aside anything that you might have heard
```

JURY SELECTION                              221

1    and just evaluate this case based on the evidence that's

2    presented at trial?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  You also wrote that you've had some

5    people in your family who have been in prison before.

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Including someone who is currently in

8    prison.

9              THE PROSPECTIVE JUROR:  Yes.  I have a cousin, yeah.

10             THE COURT:  Anything about those circumstances that

11   would affect your ability to be --

12             THE PROSPECTIVE JUROR:  No.

13             THE COURT:  -- fair and impartial?

14             Okay.  And then you also have a cousin who is at the

15   Department of Homeland Security.

16             THE PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Anything about that position that would

18   make it hard for you to be fair and impartial?

19             THE PROSPECTIVE JUROR:  No.  We don't discuss work.

20             THE COURT:  Okay.  All right.

21             I'm going to ask you one other favor.  Our court

22   reporter takes down everything that we say, so just let me

23   finish before you answer.  It just makes her job a lot easier.

24             THE PROSPECTIVE JUROR:  Okay.

25             THE COURT:  So during the course of this trial, you

JURY SELECTION                                    222

1  are going to hear evidence and see some exhibits that have to

2  do with sexual activity between people of the same sex.

3           Is there anything about that kind of evidence that

4  would affect your ability to be a fair and impartial juror?

5           THE PROSPECTIVE JUROR:  No.

6           THE COURT:  Okay.

7           Let me check with the lawyers to see if there's

8  anything else they would like me to ask you.

9           (Continued on the next page.)

10          (Sidebar conference.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                    223

1           (Sidebar conference held on the record out of the

2     hearing of the prospective juror.)

3           MR. CANNICK:  Your Honor, she said her cousin works

4     for Homeland Security, and she said they don't discuss his

5     work, but I want to know whether or not if members of Homeland

6     Security testify here in the court, would she favor that

7     testimony over that of --

8           THE COURT:  Are we having Homeland Security testify?

9           MR. CANNICK:  Yes.  That's the lead agency in this

10    case.

11          THE COURT:  Oh, all right.

12          (Sidebar end.)

13          (Continued on the next page.)

14

15

16

17

18

19

20

21

22

23

24

25

JURY SELECTION                                             224

```
 1              (In open court.)

 2              THE COURT:  I know you said that you don't discuss

 3    your cousin's work with him or her, and the position is

 4    paralegal in the --

 5              THE PROSPECTIVE JUROR:  Yes.

 6              THE COURT:  -- Department of Homeland Security.  It

 7    may be that there are employees of Homeland Security who

 8    testify here.

 9              Will you be able to view their testimony fairly and

10    impartially even though you have a cousin who is also employed

11    at Homeland Security?

12              THE PROSPECTIVE JUROR:  Yes.  I don't know any of

13    her co-workers, so that wouldn't be an issue.

14              THE COURT:  All right.  It's probably not going to

15    be her that testifies, so --

16              THE PROSPECTIVE JUROR:  Right.

17              THE COURT:  -- all right.

18              Okay.  So I just want to review some of the

19    principles that we talked about in the larger courtroom, and

20    the first is the presumption of innocence; that Mr. Kelly is

21    presumed to be innocent, and the Government has to prove his

22    guilt beyond a reasonable doubt.  I will give more

23    instructions on that if you're selected as a juror, but can

24    you follow that principle of law?

25              THE PROSPECTIVE JUROR:  Yes.
```

JURY SELECTION                                      225

1          THE COURT:  And can you also promise that you will

2     follow all of my instructions on the law?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  And there's also, as I said before,

5     complete restriction on looking anything up about the case or

6     researching it or talking about it with anybody else.

7          Can you also follow that rule?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Okay.  And, finally, if you are selected

10    as a juror in this case, do you promise to be fair and

11    impartial to both sides?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  All right.  Thank you so much.

14         Ms. Greene is going to direct you to where you're

15    supposed to go.

16         (The prospective juror exits.)

17         (The prospective juror approaches.)

18         THE COURT:  This is Juror 163; is that right?

19         THE PROSPECTIVE JUROR:  Yes, ma'am.

20         THE COURT:  All right.  Good morning.

21         How are you doing?

22         THE PROSPECTIVE JUROR:  I'm well.  Thank you.

23         THE COURT:  Good.

24         So since we have the microphone, let's make use of

25    it.

GA0553

JURY SELECTION                                            226

```
 1              THE PROSPECTIVE JUROR:  Okay.

 2              THE COURT:  So much better.

 3              Okay.  So I've gone over your questionnaire, and I

 4    have a couple of additional questions to ask you or just some

 5    clarifications.

 6              THE PROSPECTIVE JUROR:  Yes.

 7              THE COURT:  Let's start with the piece of paper

 8    that's in front of you.  That's just some additional names

 9    that you may hear mentioned during the course of the trial or

10    perhaps who will testify.

11              Are any of those familiar to you?

12              THE PROSPECTIVE JUROR:  They are not.

13              THE COURT:  And how long have you been a flight

14    attendant?

15              THE PROSPECTIVE JUROR:  Eighteen and a half years.

16              THE COURT:  Okay.  And I take it that your schedule

17    won't interfere with your ability to serve as a juror in this

18    case?

19              THE PROSPECTIVE JUROR:  No.  They have the

20    provisions for covering my position.

21              THE COURT:  Okay.  Good.  Good.

22              And your spouse is also in the travel industry; is

23    that right?

24              THE PROSPECTIVE JUROR:  Hotel sales.

25              THE COURT:  Okay.  What kinds of -- is it --
```

*Denise Parisi, RPR, CRR*
*Official Court Reporter*

JURY SELECTION                              227

1           THE PROSPECTIVE JUROR:  So he works with high-end

2    travel agents to have their clients stay at the properties he

3    represents.

4           THE COURT:  I see.  Okay.

5           And then you also wrote that you've heard some

6    things about this case before; is that correct?

7           THE PROSPECTIVE JUROR:  Just minor things in the

8    press.  Nothing -- I can't recall any specific details.

9           THE COURT:  Okay.

10          THE PROSPECTIVE JUROR:  There were things that I

11   found -- I was like, oh, I had no idea that was in the

12   questionnaire.

13          THE COURT:  Yes, okay.  Oh, I see what you mean.

14          THE PROSPECTIVE JUROR:  There were accusations there

15   that I had absolutely zero idea of.

16          THE COURT:  Okay.  Well, as I think I said in the

17   larger courtroom, you know, if you're a juror in this case,

18   you will have to base your decision only on the evidence that

19   you hear in the courtroom.

20          THE PROSPECTIVE JUROR:  Of course.

21          THE COURT:  And I think you made reference at

22   another portion of your questionnaire that trial by media is

23   worse than trial by jury.

24          THE PROSPECTIVE JUROR:  It most definitely is.

25          THE COURT:  But what I'm making doubly sure of is

1   that you can put aside anything you might have heard about the

2   case, or that you heard about Mr. Kelly before, and just base

3   your decision on the evidence that you hear in the courtroom.

4           Can you do that?

5           THE PROSPECTIVE JUROR:  Of course.

6           THE COURT:  Okay.  And then you also told us that

7   you have a friend who's in Bill Cosby's family -- is that

8   right? -- and that you followed that case.

9           THE PROSPECTIVE JUROR:  I did, because of the

10  relation.

11          THE COURT:  Okay.  Do you have any opinions about

12  how Bill Cosby was treated during the course of that

13  investigation or trial?

14          THE PROSPECTIVE JUROR:  It -- I have to go by what

15  the verdict is.

16          THE COURT:  Okay.

17          THE PROSPECTIVE JUROR:  So I don't know all the

18  details regarding the case 100 percent, what the jury was

19  told; they were given facts, and they made their decision.

20          THE COURT:  All right.  I take it that you didn't go

21  to the trial; is that right?

22          THE PROSPECTIVE JUROR:  I did not.

23          THE COURT:  Okay.  Anything about just knowing

24  somebody in his family or anything about that trial that would

25  make it harder for you to be fair and impartial in this case?

JURY SELECTION                              229

1           THE PROSPECTIVE JUROR:  No.

2           THE COURT:  Okay.  Now, during the course of this

3    trial, there will be evidence that involves testimony and some

4    exhibits that's related to sexual activity between people of

5    the same sex.

6           Anything about that fact that would make it hard for

7    you to be fair and impartial in this case?

8           THE PROSPECTIVE JUROR:  No.

9           THE COURT:  Okay.

10          Let me just see from counsel if they have any

11    additional questions.  Give me just one second.

12          THE PROSPECTIVE JUROR:  Of course.

13          (Continued on the next page.)

14          (Sidebar conference.)

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                          230

1             (Sidebar conference held on the record out of the

2    hearing of the prospective juror.)

3             MS. GEDDES:  I apologize for not putting this in our

4    submission, but he indicated that he had a friend who was

5    convicted, I think, in federal court for drug distribution and

6    served ten years.  Can you ask him whether there was anything

7    about his prosecution that, you know, would affect his ability

8    to be fair and impartial?

9             THE COURT:  Yes.

10            He's also been the victim of a crime, so maybe I

11   will ask him about both of those.

12            MS. GEDDES:  Thank you.

13            (Sidebar end.)

14            (Continued on the next page.)

15

16

17

18

19

20

21

22

23

24

25

JURY SELECTION                    231

1              (In open court.)

2              THE COURT:  So I neglected to ask you about this

3    before.

4              It's been a little while, but you were mugged some

5    time ago, which I'm sure was an awful experience.

6              Anything about that experience that would make it

7    hard for you to be fair and impartial in this case?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  Okay.  And then you also had a friend

10   who served time for distributing drugs.

11             Anything about the circumstances of that case that

12   would affect your ability to be fair and impartial?

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  Okay.  All right.  I just want to review

15   some of the things that we discussed in the big courtroom.

16             The first is that Mr. Kelly is presumed to be

17   innocent, and the Government has to prove his guilt beyond a

18   reasonable doubt.  If you are selected as a juror, that's

19   something that I will explain to you in more detail, but is

20   that a principle that you promise to follow?

21             THE PROSPECTIVE JUROR:  100 percent.

22             THE COURT:  All right.  And do you also promise that

23   you will follow all of my instructions on the law?

24             THE PROSPECTIVE JUROR:  Yes, ma'am.

25             THE COURT:  And that prohibition against researching

JURY SELECTION                                    232

1    the case or looking anything up on the internet, it's critical

2    to the fair trial that we have.

3              Can you follow those rules?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Okay.  And, finally, do you promise that

6    you will give both sides a fair trial?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  Okay.

9              Ms. Greene is going to direct you where to go next.

10             THE PROSPECTIVE JUROR:  Okay.

11             Thank you.

12             THE COURT:  Thank you.

13             THE PROSPECTIVE JUROR:  Thank you, all.

14             (The prospective juror exits.)

15             (The prospective juror approaches.)

16             THE COURT:  And this is Juror 165; is that right?

17             THE PROSPECTIVE JUROR:  Correct.

18             THE COURT:  Good morning.

19             How are you?

20             THE PROSPECTIVE JUROR:  All right, Your Honor.

21             THE COURT:  Let's just start with the piece of paper

22   that you've got there.  That's just some additional names that

23   you may hear during the course of the trial and that may

24   possibly testify.

25             Do you know any of them?

JURY SELECTION                                    233

1           THE PROSPECTIVE JUROR:  No.

2           THE COURT:  Okay.  So you are currently a

3  dispatcher; is that right?

4           THE PROSPECTIVE JUROR:  Correct.

5           THE COURT:  And you were a police officer as well;

6  is that right?

7           THE PROSPECTIVE JUROR:  Yeah.

8           THE COURT:  For how long?

9           THE PROSPECTIVE JUROR:  Three years.

10           THE COURT:  Can you just --

11           THE PROSPECTIVE JUROR:  Three years.

12           THE COURT:  Here in the city or --

13           THE PROSPECTIVE JUROR:  City.

14           THE COURT:  Okay.  And anything about that

15  experience that would affect your ability to be fair and

16  impartial here?

17           THE PROSPECTIVE JUROR:  No.

18           THE COURT:  And you served as a juror before; right?

19           THE PROSPECTIVE JUROR:  Correct.

20           THE COURT:  In a civil case?

21           THE PROSPECTIVE JUROR:  Yes.

22           THE COURT:  Little bit different than this; right?

23           THE PROSPECTIVE JUROR:  Yeah.  A lot.

24           THE COURT:  During the time that you were a police

25  officer, did you ever have occasion to testify either in the

GA0561

1    grand jury or --

2              THE PROSPECTIVE JUROR:  No.

3              THE COURT:  Okay.  And what do you like to do in

4    your spare time?

5              THE PROSPECTIVE JUROR:  Golf, ride my motorcycle,

6    sleep.

7              THE COURT:  Okay.  Let me just see if -- oh, I have

8    something else I was going to talk to you about.

9              In this case, you will hear testimony or see

10   exhibits that have to do with sexual activity between people

11   of the same sex.

12             Is there anything about that circumstance that would

13   make it hard for you to be fair?

14             THE PROSPECTIVE JUROR:  No.

15             THE COURT:  Okay.  Let me see if either of the

16   lawyers has any additional questions for you.

17             (Pause.)

18             THE COURT:  No?

19             In the larger room, we talked about some general

20   principles of law.  I'm just briefly going to go over those

21   with you.

22             The first is the presumption of innocence.

23   Mr. Kelly is presumed to be innocent and the Government has to

24   prove his guilt beyond a reasonable doubt.  If you are

25   selected as a juror, I will explain what that means in much

JURY SELECTION                                    235

1    more detail, but is that a principle that you promise to

2    follow?

3               THE PROSPECTIVE JUROR:  Yes.

4               THE COURT:  Okay.  And do you also promise to follow

5    all of my instructions on the law?

6               THE PROSPECTIVE JUROR:  Yes.

7               THE COURT:  And in terms of researching and looking

8    things up on the internet, it's absolutely not permitted in

9    any case.

10              Do you promise not to do it in this case?

11              THE PROSPECTIVE JUROR:  Yes.

12              THE COURT:  And if you are selected as a juror, do

13   you promise to be fair and impartial to both sides?

14              THE PROSPECTIVE JUROR:  Yes.

15              THE COURT:  Okay.

16              Ms. Greene is going to take you to where you're

17   supposed to go next.

18              Thank you so much.

19              THE PROSPECTIVE JUROR:  Thank you.

20              (The prospective juror exits.)

21              (The prospective juror approaches.)

22              THE COURT:  This is Juror 166?

23              THE PROSPECTIVE JUROR:  Yeah.

24              THE COURT:  Okay.  Good morning.

25              Are we in morning still?  Yes.

*Denise Parisi, RPR, CRR*
*Official Court Reporter*

JURY SELECTION                                              236

1           Good morning.

2           How are you doing?

3           THE PROSPECTIVE JUROR:  Good, good.

4           THE COURT:  So I've gone through your questionnaire.

5    I'm just going to ask you an additional couple questions.  The

6    first thing I would like you to do is take a look at that

7    piece of paper.  Those are some names you might hear during

8    the course of the trial or who might testify.

9           Do you know any of those people, or are they

10   familiar to you?

11          THE PROSPECTIVE JUROR:  No.

12          THE COURT:  Now, you're currently doing an

13   internship; is that right?

14          THE PROSPECTIVE JUROR:  Yeah.

15          THE COURT:  When does that end?

16          THE PROSPECTIVE JUROR:  It just got extended, so I

17   think in December, around there.

18          THE COURT:  Oh, in December?

19          This trial is going to go on for about four weeks.

20          Is that something you can do with the internship?

21          THE PROSPECTIVE JUROR:  I don't know.  I really want

22   to participate in the internship, so I don't know.

23          THE COURT:  Have you spoken to them about it?

24          THE PROSPECTIVE JUROR:  I have.

25          THE COURT:  Okay.  What did they say?

JURY SELECTION                                    237

1              THE PROSPECTIVE JUROR:  I don't know, they just tell

2       me to let them know, just keep them updated.

3              THE COURT:  Okay.  Did you just graduate?

4              THE PROSPECTIVE JUROR:  Yeah.

5              THE COURT:  And this --

6              THE PROSPECTIVE JUROR:  Last year.

7              THE COURT:  Okay.  Congratulations.

8              THE PROSPECTIVE JUROR:  Thank you.

9              THE COURT:  How long have you been doing the

10      internship?

11             THE PROSPECTIVE JUROR:  About a month.

12             THE COURT:  Okay.  So if we start the trial -- the

13      testimony -- on the 18th, then that will be about a four-week

14      run there with some days off in there.

15             Is that going to make it hard for you to focus if

16      you are thinking about your internship or --

17             THE PROSPECTIVE JUROR:  I mean, I don't know.  I

18      would like to do the internship because I want to get my

19      career started --

20             THE COURT:  Yes.

21             THE PROSPECTIVE JUROR:  -- so I don't know.

22             THE COURT:  Have they told you that they are going

23      to kick you out or anything?

24             THE PROSPECTIVE JUROR:  No.

25             THE COURT:  You tell me, I mean, do you think that

JURY SELECTION                                    238

1   if you -- do you want to speak to them again and find out what

2   their position is going to be?

3            THE PROSPECTIVE JUROR:  Yeah.

4            THE COURT:  Are they paying you?

5            THE PROSPECTIVE JUROR:  Yeah.

6            THE COURT:  Okay.  And if you are selected as a

7   juror, do you continue to get paid?

8            THE PROSPECTIVE JUROR:  I would have to ask.

9            THE COURT:  Okay.  So let's continue on.

10           I'm going to ask you just to check those things for

11  me to see what their position is on paying you and all of

12  that, okay?

13           THE PROSPECTIVE JUROR:  Mm-hmm.

14           THE COURT:  Now, you also wrote in your

15  questionnaire that you had seen a documentary having to do

16  with this case and that you've heard some things about it.  If

17  you are selected as a juror in this case, you will have to put

18  aside anything that you've heard before about it and just

19  focus on the evidence that you hear during the course of the

20  trial.

21           Is that something that you can do?

22           THE PROSPECTIVE JUROR:  Yeah.

23           THE COURT:  Okay.  So no matter what you've heard

24  before -- I think as I said before, you know, media reports --

25  they can be true, but they may not be true.

JURY SELECTION                                    239

1          And the other thing is that whether they're true or

2     not, they can play absolutely no role in a juror who is making

3     a decision, so do you promise to put all of that aside if you

4     are selected as a juror in this case?

5          THE PROSPECTIVE JUROR:  Yeah, I promise.

6          THE COURT:  The other thing I noted from your

7     questionnaire is that you also followed the Jeffrey Epstein

8     case.

9          THE PROSPECTIVE JUROR:  Mm-hmm.

10          THE COURT:  Same thing, really.

11          Can you put aside anything you have heard about

12     that?

13          THE PROSPECTIVE JUROR:  Yeah.

14          THE COURT:  You can, okay.

15          You will hear evidence in this case, testimony, and

16     some exhibits that relate to sexual activity between people of

17     the same sex.

18          Anything about that that makes it hard for you to be

19     fair and impartial?

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  Okay.  And let me just check with the

22     lawyers to see if they have any additional questions for you.

23          MS. GEDDES:  None from the Government.

24          MR. CANNICK:  One second, please.

25          THE COURT:  Sure.

JURY SELECTION                                    240

```
 1              (Pause.)

 2              MR. CANNICK:  Nothing, Your Honor.

 3              THE COURT:  All right.  I just want to review a

 4   couple of those principles that we talked about in the larger

 5   courtroom.

 6              The first is that Mr. Kelly is presumed to be

 7   innocent, and the Government has to prove his guilt beyond a

 8   reasonable doubt.

 9              Do you promise to follow that principle?

10              THE PROSPECTIVE JUROR:  Yes.

11              THE COURT:  All right.  Obviously, if you are

12   selected as a juror, I'll talk to you more about that.

13              THE PROSPECTIVE JUROR:  Okay.

14              THE COURT:  Okay.  And then, do you also promise

15   that you will follow my instructions on the law?

16              THE PROSPECTIVE JUROR:  Yes.

17              THE COURT:  And in terms of looking things up or

18   researching the case, Googling, and all of that, do you

19   promise not to do any of that?

20              THE PROSPECTIVE JUROR:  Yes.

21              THE COURT:  Okay.

22              And, finally, do you promise that you will give both

23   sides a fair trial?

24              THE PROSPECTIVE JUROR:  Yes.

25              THE COURT:  Okay.
```

JURY SELECTION                                    241

1          Ms. Greene is going to --

2          MR. CANNICK:  Your Honor?

3          THE COURT:  -- take you to the room you are supposed

4   to go to.

5          Sorry?

6          MR. CANNICK:  May we just have a sidebar?

7          THE COURT:  Sure.

8          (Continued on the next page.)

9          (Sidebar conference.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                         242

1          (Sidebar conference held on the record out of the

2    hearing of the prospective juror.)

3          MR. CANNICK:  He has some family members who are, I

4    think, attorneys, and whether or not that will impact his

5    ability to be fair and impartial, you know, whether anything

6    that he learned from them would impact --

7          THE COURT:  Which family members does he have?

8          MR. CANNICK:  I think his mother and father.

9          MS. GEDDES:  His parents own a matrimonial law firm.

10         THE COURT:  Okay.  I was getting it mixed up with

11   that other juror.

12         Okay.  Off the record.

13         (Discussion was had off the record.)

14         (Sidebar end.)

15         (Continued on the next page.)

16

17

18

19

20

21

22

23

24

25

JURY SELECTION                                    243

1            (In open court.)

2            THE COURT:  One last thing that I forgot to ask you

3    about is your parents are both lawyers; aren't they?

4            THE PROSPECTIVE JUROR:  Yeah.

5            THE COURT:  Do you have any interest ever in doing

6    that?

7            THE PROSPECTIVE JUROR:  No.

8            THE COURT:  Okay.

9            Anything about the fact that -- they have a

10   matrimonial practice; is that right?

11           THE PROSPECTIVE JUROR:  Yes.

12           THE COURT:  Anything about the nature of their work

13   or their practice that would make it hard for you to be fair

14   and impartial in this case?

15           THE PROSPECTIVE JUROR:  No.

16           THE COURT:  Do you talk to them about the law ever?

17           THE PROSPECTIVE JUROR:  Just stuff that they're

18   working on, like, whatever they're doing, but nothing -- I'm

19   not interested in law, so...

20           THE COURT:  Okay.  All right.

21           Now Ms. Greene will direct you to the next room.

22           (The prospective juror exits.)

23           (The prospective juror approaches.)

24           THE COURT:  This is Juror Number 171.

25           Good morning.

JURY SELECTION                                    244

```
 1              How are you?

 2              THE PROSPECTIVE JUROR:  I'm good.

 3              How are you?

 4              THE COURT:  Good.

 5              I'm going to ask you some additional questions about

 6    your questionnaire.  Before I do that, I'm just going to ask

 7    you about the list of names on that piece of paper.  Those are

 8    people who might testify or whose names might be mentioned.

 9              Do you recognize any of those names?

10              THE PROSPECTIVE JUROR:  No.

11              THE COURT:  Okay.  So you are currently a YMCA

12    counselor; is that right?

13              THE PROSPECTIVE JUROR:  Yes.

14              THE COURT:  How long have you had that job?

15              THE PROSPECTIVE JUROR:  Three years.

16              THE COURT:  Okay.  And in your spare time, you like

17    to go to the gym; right?

18              THE PROSPECTIVE JUROR:  Correct.

19              THE COURT:  Anything else?

20              THE PROSPECTIVE JUROR:  I like to do boxing and make

21    You Tube videos and make music.

22              THE COURT:  Okay.  In connection with this case, you

23    said that you have heard some things about it.

24              One of the things that you were asked is what your

25    impression of Mr. Kelly was, and you said that people tend to
```

JURY SELECTION                                          245

1    have their reasons on what they did.

2             What did you mean by that?

3             THE PROSPECTIVE JUROR:  In the way I mean that in

4    life, people make choices, and they could be either good or

5    bad in a certain way.

6             THE COURT:  Okay.  So that means that you -- and you

7    indicated that you had a neutral -- go ahead.

8             THE PROSPECTIVE JUROR:  Yeah, as you said, I'm

9    neutral in most things, because unless I hear a side of the

10   story, I tend to stay neutral at most times.

11            THE COURT:  If you are selected as a juror in this

12   case, do you promise that you will base your decision only on

13   the evidence that you hear during the course of the trial?

14            THE PROSPECTIVE JUROR:  Yeah.

15            THE COURT:  Now, I think you said you want to hear

16   people's side of the story.  As I said in the larger

17   courtroom, in a criminal case, a defendant doesn't have to put

18   on a case.  That's because it's the prosecution that has the

19   burden of proof, and that's not something you can hold against

20   the defendant if he decides not to testify or to put on a

21   case.

22            Can you follow that rule?

23            THE PROSPECTIVE JUROR:  Yeah.

24            THE COURT:  Okay.  Any problem with that?

25            THE PROSPECTIVE JUROR:  No.

JURY SELECTION                                    246

1              THE COURT:  Okay.

2              Now, you have gone to jury duty in two cases; once

3    in state court and another time in federal court.

4              Is this your third time?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Have you ever been selected to be on a

7    jury?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  You've just gone through the process?

10             THE PROSPECTIVE JUROR:  Yeah.

11             THE COURT:  I'm just curious.  This is your third

12   time in how many years?

13             THE PROSPECTIVE JUROR:  I would say within a three-

14   to four-year span.

15             THE COURT:  They keep getting you.

16             THE PROSPECTIVE JUROR:  Yeah.

17             THE COURT:  Now, in this case, you are going to hear

18   testimony and exhibits that relate to sexual activity between

19   people of the same sex.

20             Anything about that kind of evidence that would make

21   it hard for you to be fair and impartial?

22             THE PROSPECTIVE JUROR:  No.

23             THE COURT:  All right.

24             Let me just check with the lawyers to see if they

25   have any additional questions for you.

*Denise Parisi, RPR, CRR*
*Official Court Reporter*

JURY SELECTION                                    247

1          MR. CANNICK:  Yes, Your Honor.

2          (Pause.)

3          MR. CANNICK:  Your Honor, we don't.

4          MS. GEDDES:  Your Honor, did you do the list?  I

5    apologize if I missed it.

6          THE COURT:  Yes.

7          Okay.  I'm just going to review with you a couple of

8    those very important principles that we talked about in the

9    larger room.

10          The first has to do with the presumption of

11    innocence; that Mr. Kelly is presumed to be innocent, and the

12    Government has the burden of proving guilt beyond a reasonable

13    doubt.  If you are chosen to be a juror, this is something I

14    will talk to you about in more detail at the appropriate time,

15    but is that a principle of law that you promise to follow?

16          THE PROSPECTIVE JUROR:  Yeah, I follow.

17          THE COURT:   I didn't hear what you said.

18          THE PROSPECTIVE JUROR:  I said, "Yeah, I follow."

19          THE COURT:  Do you also promise that you will follow

20    my instructions on the law?

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  And, as I said before, there is to be no

23    researching of the case or Googling anybody or looking

24    anything up on the internet.

25          Is that something that you promise to follow?

JURY SELECTION                                    248

```
 1              THE PROSPECTIVE JUROR:  Yes.  But I also -- I think

 2    even before he -- the case or anything or anything -- any of

 3    this happened --

 4              THE COURT:  Yes.

 5              THE PROSPECTIVE JUROR:  -- I mean, I did hear of

 6    R. Kelly before -- even before all this happened.

 7              THE COURT:  Right.

 8              THE PROSPECTIVE JUROR:  I think he's, like, a music

 9    artist.  I think I did hear some of his music.

10              THE COURT:  Right.  I think you said that in your

11    questionnaire.

12              THE PROSPECTIVE JUROR:  Oh.

13              THE COURT:  Yes.  It's just that now that you are in

14    this situation during jury selection -- this is true in any

15    case -- that you can't do research about the case, or about

16    the lawyers, or anybody involved in the case.  And sometimes

17    it's, sort of, tempting to try to find things out about the

18    case, but you just can't do it, and I just want to make sure

19    that you can promise that you won't do that.

20              THE PROSPECTIVE JUROR:  Yeah.

21              THE COURT:  Okay.  Good.

22         Finally, do you promise that if you are selected as

23    a juror in this case that you will give both sides a fair

24    trial?

25              THE PROSPECTIVE JUROR:  Yeah.
```

GA0576

JURY SELECTION                                    249

1                THE COURT:  Okay.  All right.

2           Thank you so much.

3           Go with Ms. Greene.

4           (The prospective juror exits.)

5           (The prospective juror approaches.)

6           THE COURT:  This is Juror 174.

7           THE PROSPECTIVE JUROR:  Good morning.

8           THE COURT:  Good morning.

9           Well, first of all, congratulations.  Fifty-year --

10          THE PROSPECTIVE JUROR:  I know.

11          THE COURT:  -- wedding anniversary.

12          So when is your trip planned?

13          THE PROSPECTIVE JUROR:  The first week in September.

14          THE COURT:  I see.

15          Well, let me just check with counsel here.

16          (Pause.)

17          THE COURT:  We are going to excuse you.

18          THE PROSPECTIVE JUROR:  Thank you.  I appreciate it.

19          THE COURT:  You cannot miss a 50th wedding

20   anniversary trip, so congratulations to you.  Have a great

21   trip.

22          THE PROSPECTIVE JUROR:  Thank you, all.

23          (The prospective juror exits.)

24          (The prospective juror approaches.)

25          THE COURT:  This is Juror Number 175.

1          Good morning.

2          THE PROSPECTIVE JUROR:  Good morning.

3          THE COURT:  How are you doing?

4          THE PROSPECTIVE JUROR:  Good.

5          How are you?

6          THE COURT:  Good.

7          So I'm going to ask you to make use of your

8   microphone so we can all hear you.

9          I've reviewed your questionnaire, and I just have a

10  few additional questions for you.

11         The first thing, I would like you to just take a

12  look at the piece of paper.  That's just a list of people who

13  may testify or whose names might be mentioned during the

14  course of the trial.

15         Do you know any of those people, or are the names

16  familiar to you at all?

17         THE PROSPECTIVE JUROR:  No.

18         THE COURT:   Okay.

19         I would like to ask you about your job.

20         You are a program analyst and you troubleshoot

21  acquisition programs.

22         Don't tell us where you work, but what does that

23  involve?

24         THE PROSPECTIVE JUROR:  So that involves a program

25  where -- what we use to do contracts.  So, basically, when

JURY SELECTION                                251

1   somebody is encountering an issue with the acquisition program

2   itself.  So when they're having issues with their contracts,

3   things like accounting, line items from the contract, I would

4   help them troubleshoot that.

5              THE COURT:  Okay.

6              And do you have a background in accounting?

7              THE PROSPECTIVE JUROR:  No.  I have a background

8   with computer information systems, so that's why I do that.

9              THE COURT:  I see.  Okay.

10             And you do some technological things in your spare

11  time, it looks like.  But what else do you like to do in your

12  spare time?

13             THE PROSPECTIVE JUROR:  I like sports.  I go to a

14  lot of sporting events.

15             THE COURT:  Okay.  And you've also got four

16  children.  I imagine they keep you slightly busy; is that

17  right?

18             THE PROSPECTIVE JUROR:  Playing sports, yeah.

19             THE COURT:  Okay.  All right.

20             You also wrote that you have heard some things about

21  this case and that you know about some of Mr. Kelly's music.

22  To the extent that you've heard any allegations or anything

23  like that, are you able to put that aside if you are selected

24  as a juror in this case and just listen to the evidence?

25             THE PROSPECTIVE JUROR:  Yes.

JURY SELECTION                                    252

1          THE COURT:  Do you have any feelings -- one way or

2    another, positive or negative -- about Mr. Kelly?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  Okay.  As I said before, if you are

5    selected as a juror in the case, you decide the case based on

6    the evidence, not about things that are, you know, being said

7    online, or in the news, or anything like that, okay?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  During the course of this case, you will

10   hear evidence about testimony or exhibits that relate to

11   sexual activity between people of the same sex.

12          Is there anything about that kind of evidence that

13   makes you think you couldn't be fair and impartial?

14          THE PROSPECTIVE JUROR:  No.

15          THE COURT:  Okay.  Let me see if the lawyers have

16   any additional questions for you.

17          (Pause.)

18          (Continued on the following page.)

19

20

21

22

23

24

25

JURY SELECTION                              253

1            MS. GEDDES:  No, your Honor.

2            MR. CANNICK:  No, your Honor.

3            THE COURT:  All right.  I also just want to go over

4    some of the principles that we touched on in the other -- in

5    the larger courtroom.

6            The first is the presumption of innocence that

7    Mr. Kelly is presumed innocent and it is the Government that

8    has the burden of proving guilt beyond a reasonable doubt.  If

9    you're chosen has as a juror, that's something that I'll

10   explain to you in detail at the appropriate time but can you

11   follow that principle of law?

12           THE PROSPECTIVE JUROR:  Yes.

13           THE COURT:  And do you also promise that you'll

14   follow my instructions on the law?

15           THE PROSPECTIVE JUROR:  Yes.

16           THE COURT:  As I said before, in any case but also

17   in this case, you're not permitted to look anything up on the

18   internet or do any research.

19           Do you promise to follow that instruction?

20           THE PROSPECTIVE JUROR:  Yes.

21           THE COURT:  And finally, do you promise that if

22   you're selected as a juror in this case that you will be fair

23   and impartial to both sides?

24           THE PROSPECTIVE JUROR:  Yes.

25           THE COURT:  Okay.  Thank you so much.  Ms. Greene is

GA0581

JURY SELECTION                                                    254

 1    going to direct you to where you have to go next.

 2                (The prospective juror exits from the courtroom.)

 3                (The prospective juror enters the courtroom.)

 4                THE COURT:  This is Juror 176; is that right?

 5                THE PROSPECTIVE JUROR:  Yes.

 6                THE COURT:  You can remove your mask if you'd like.

 7                THE PROSPECTIVE JUROR:  That's okay.

 8                THE COURT:  Okay.  So I just want to ask you on your

 9    questionnaire.  You said that you were -- that you can't

10    understand all the law terms because English is your second

11    language.  I just wanted to ask you:  Have you been able to

12    understand everything that's happened so far?

13                THE PROSPECTIVE JUROR:  Yes, I guess so.

14                THE COURT:  That doesn't sound like you're positive.

15    Is there something you're concerned about?

16                THE PROSPECTIVE JUROR:  Yes.  Like I said, English

17    is my second language.  There's a lot of law terms or anything

18    that I don't understand.

19                THE COURT:  All right.  Well, this is a situation

20    where I can't really tell you what to do.  You tell me if

21    you're having trouble understanding what's going on, is that

22    what the situation is?

23                THE PROSPECTIVE JUROR:  Yes.  Yes.  The question

24    here that some terms on the paper on the question that I don't

25    understand that I have to guess that's why I put down that

JURY SELECTION                                      255

1    sentence because I did not understand all the questions on the

2    paper.  Some of them.  Some of the words.

3             THE COURT:  Okay.  Well, I don't want you to be

4    uncomfortable so I'm going to excuse you from this case, okay?

5             THE PROSPECTIVE JUROR:  Okay.

6             THE COURT:  All right.  Go with Ms.  Greene, all

7    right.  Thank you so much for filling out the questionnaire.

8             (The prospective juror exits from the courtroom.)

9             (The prospective juror enters the courtroom.)

10            THE COURT:  And this is Juror No. 177?

11            COURTROOM DEPUTY:  Have a seat and you can take off

12   your mask.

13            THE COURT:  Good morning.

14            THE PROSPECTIVE JUROR:  Good morning.

15            THE COURT:  How are you doing?

16            THE PROSPECTIVE JUROR:  Fine, thanks.

17            THE COURT:  Good.  So my first question is whether

18   your employer will pay you if you're selected as a juror in

19   this case?

20            THE PROSPECTIVE JUROR:  Today is my last day of paid

21   jury duty.

22            THE COURT:  I see.  So we would be getting testimony

23   on August 18th and then go for about four weeks.  If you

24   weren't paid during that time, would than a hardship for you?

25            THE PROSPECTIVE JUROR:  It would not.

GA0583

JURY SELECTION                                      256

1          THE COURT:  It would not?

2          THE PROSPECTIVE JUROR:  It would not.

3          THE COURT:  So you're willing to serve even if you

4    don't get paid?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Thank you so much.

7          First of all, let me just ask you about the piece of

8    paper that you got there that's just a list of people who

9    might testify or whose names might be mentioned.  Any of those

10   familiar to you?

11         THE PROSPECTIVE JUROR:  No.

12         THE COURT:  Okay.  Now, how long have you -- did you

13   train as a nurse?

14         THE PROSPECTIVE JUROR:  I did.

15         THE COURT:  How long have you been a nurse?

16         THE PROSPECTIVE JUROR:  31 years.

17         THE COURT:  Okay.  You spent -- you do a lot of

18   church activities; is that right?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Anything else that you do in your spare

21   time?

22         THE PROSPECTIVE JUROR:  I walk for exercise.  Two of

23   my children are grown and out of the house but I love to spend

24   time with my kids.

25         THE COURT:  Great.  In connection with your Bible

1   studies, do your -- some people have religious beliefs that

2   telling them they can't sit in judgment of other people.  Is

3   that the case for you?

4           THE PROSPECTIVE JUROR:  No.

5           THE COURT:  Okay.  And your husband was a police

6   officer for --

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  -- six years?

9           THE PROSPECTIVE JUROR:  Yeah, I think so.

10          THE COURT:  In the City?

11          THE PROSPECTIVE JUROR:  No, he was a police officer

12  in a couple of towns on Long Island.

13          THE COURT:  Okay.  And I note that in some of your

14  responses that, you know, you've had a lot of people, friends

15  and family members, who are members of law enforcement?

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  Obviously, you know, if there are people

18  from law enforcement that testify, you have to evaluate them

19  as individuals and not give them any more credit just because

20  they happen to work for law enforcement.

21          Can you do that?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Okay.  And your husband was attacked at

24  work; is that right?  How is he doing?

25          THE PROSPECTIVE JUROR:  He will have permanent

JURY SELECTION                          258

1    damage from what happened to him, but he's back -- been back

2    at work since ten days after the incident.

3              THE COURT:  Oh.  Sorry to hear that.

4              THE PROSPECTIVE JUROR:  Thank you.

5              THE COURT:  Is that a case that's pending?

6              THE PROSPECTIVE JUROR:  It is.

7              THE COURT:  And do you know what the status of that

8    is?

9              THE PROSPECTIVE JUROR:  He just was contacted two

10   weeks ago and his case was assigned to a new ADA.  And so, we

11   feel confident that it's moving forward now.

12             THE COURT:  Okay.  Anything about that circumstance

13   that would make it hard for you to be fair and impartial in

14   this case?

15             THE PROSPECTIVE JUROR:  I don't think so.  It's not

16   the same sort of circumstances as what happened to my husband.

17             THE COURT:  Okay.  And you will be able to put that

18   aside and listen to the evidence in this case?

19             THE PROSPECTIVE JUROR:  I think so.

20             THE COURT:  Any hesitation about that?

21             THE PROSPECTIVE JUROR:  No.

22             THE COURT:  Okay.  The only reason I ask is we're

23   sort of particular about this, and if you have any hesitation

24   at all, let me know.  And I'll just tell you my corny example

25   of what I'm referring to is that if you were to ask a pilot of

JURY SELECTION                                     259

1    a plane whether she thought she could land the plane safely.

2    And she said, I think so, you probably wouldn't feel all that

3    great about getting on the plane.  So this is the same thing

4    here.  This is a situation where you have to be just confident

5    that you can give both sides a fair trial.

6              Any hesitation about that?

7              THE PROSPECTIVE JUROR:  No.

8              THE COURT:  Okay.  Thank you so much and thank you

9    for listening to my corny example.

10             The other thing, and I think that you have

11   had -- you've heard something about the case.  That you've

12   seen some press coverage of the case and heard some things

13   about the allegations.  And I want to make sure that you can

14   put aside anything that you might have heard about the case

15   and base your decisions solely on any evidence that you would

16   during the course of the trial.

17             Are you able to do that?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  All right.  The other thing, during the

20   course of this case, is that you'll hear evidence in the form

21   of testimony or exhibits that has to do with sexual contact

22   among individuals of the same sex.  Anything about that

23   circumstance that makes it hard for you to be fair and

24   impartial?

25             THE PROSPECTIVE JUROR:  No.

GA0587

1            THE COURT:  Okay.  Let me see if the lawyers have

2   any additional questions.

3            MS. GEDDES:  No, your Honor.

4            THE COURT:  Mr. Cannick?

5            MR. CANNICK:  May I approach?

6            (Continued on the next page.)

7            (Sidebar conference.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                              261

1              (Sidebar conference held on the record in the

2       presence of the Court and counsel, out of the hearing of the

3       prospective juror.)

4              MR. CANNICK:  Your Honor, Question No.  66, her

5       response is that she was very pro police, has a number of

6       police officers in her family.  Could you probe a bit further

7       in terms of whether or not notwithstanding that relationship

8       she could be fair and impartial here, and would her pro police

9       mindset cause her to root for police or be more pro police?

10             THE COURT:  Didn't I ask her that?

11             MR. CANNICK:  I don't think you did.

12             MS. GEDDES:  I don't think so.

13             MR. CANNICK:  I will look further.

14             THE COURT:  I didn't say, Do you root for them?

15             MR. CANNICK:  Close.  Could you ask that very

16      specific question, could you root for them?

17             THE COURT:  No.

18             MR. CANNICK:  And then 62.  She commented on the

19      Jeffrey Epstein trial -- situation -- and she was disappointed

20      that it did not go to trial.  Why was she disappointed?

21             THE COURT:  I bet I know.

22             MR. CANNICK:  I think I know as well.

23             (Sidebar discussion concludes.)

24             (Continued on the next page.)

25

JURY SELECTION                                    262

1           (In open court.)

2           THE COURT:  All right.  Just a couple of more

3  questions.

4           I asked you some questions about this, but I just

5  neglected to ask you about one of your answers to your

6  questions was which was that you said that you were very pro

7  police since you got so many family members and friends who

8  are in law enforcement.

9           Does that feeling, it's related to the question I

10  asked you before, but does that feeling make you think that

11  you would just automatically assume that the officer is more

12  likely to be telling the truth than a person who wasn't a

13  police officer?

14           THE PROSPECTIVE JUROR:  No.

15           THE COURT:  Okay.  And then the other thing that I

16  neglected to ask you that your father-in-law who was also a

17  police officer; is that right?

18           THE PROSPECTIVE JUROR:  Yes.

19           THE COURT:  He was convicted some time ago of

20  bribery.

21           Anything about that circumstance that makes it hard

22  for you to be fair and impartial?

23           THE PROSPECTIVE JUROR:  No.

24           THE COURT:  Okay.  Then one other thing that you

25  noted in your questionnaire was that you had watched a

JURY SELECTION                               263

1   documentary about Jeffrey Epstein and that you were

2   disappointed that he never went to trial.  Why was that?

3                  THE PROSPECTIVE JUROR:  Almost like it was an easy

4   way out for him that he didn't have to respond to, you know,

5   what he had been accused of and there was no -- none of that

6   was, I guess, brought to light for his -- the people that

7   accused him of things.

8                  THE COURT:  Okay.  Do your feelings about that

9   situation have any -- do you have similar feelings about this

10  case?

11                 THE PROSPECTIVE JUROR:  I think it's good it's

12  coming to trial.  I think that's what's necessary.

13                 THE COURT:  And do you agree that, at a trial, the

14  fact that someone's accused of a crime does not mean the

15  person is guilty of the crime?

16                 THE PROSPECTIVE JUROR:  I understand that.

17                 THE COURT:  And that even though the crimes, the

18  allegations, are serious, we don't convict people without due

19  process and without a fair trial?

20                 THE PROSPECTIVE JUROR:  Yes.

21                 THE COURT:  Obviously, if a juror were to come into

22  a case with preconceived notions about whether or not a

23  defendant was guilty, that would be profoundly unfair.  And

24  can you put aside any feelings that you might have about that?

25                 Let me say it a different way.  Do you have a

JURY SELECTION                                     264

1    feeling going into this that Mr. Kelly is probably guilty

2    because of the allegations?

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  Okay.  Can you promise that you will

5    base your decision only on the evidence and not on any of

6    these other things that we've discussed?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  Okay.  I just want to review some of the

9    important principles that we discussed in the ceremonial

10   courtroom and this is related to what we were just talking

11   about and that's the presumption of innocence, and this is one

12   the foundations of our criminal justice system.

13             Mr. Kelly is presumed innocent and the Government

14   has the burden of proving his guilt beyond a reasonable doubt.

15   I will instruct you on that principles if you're selected as a

16   juror in this case, but is that a principle that you promise

17   that you will follow?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  And do you also promise that you will

20   follow all of my instructions on the law?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  I've also directed that nobody can do

23   any research on the case or look anything up, Google anybody,

24   anything like that.  Do you also promise that you'll follow

25   that instruction?

JURY SELECTION                              265

 1           THE PROSPECTIVE JUROR:  Yes.

 2           THE COURT:  And finally, if you are selected as a

 3   juror in this case, do you promise that you will be fair and

 4   impartial to both sides?

 5           THE PROSPECTIVE JUROR:  Yes.

 6           THE COURT:  Okay.  Thank you so much.  Go with

 7   Ms.  Greene.

 8           (The prospective juror exits from the courtroom.)

 9           THE COURT:  Does anybody need a break?  Everybody

10   good?  Okay.  Can.

11           MR. CANNICK:  How many do we have now.

12           MR. FARINELLA:  We have 32.

13           MS. CRUZ MELENDEZ:  34.

14           THE COURT:  I will check with Ms.  Greene.  I

15   haven't been keeping track, quite frankly.  I think we should

16   qualify more than our minimum number for a variety of reasons.

17   I'm not going to be swearing them until the 18th just because

18   you never know, so I'd like to have a few others on hand just

19   in case.

20           (The prospective juror enters the courtroom.)

21           THE COURT:  And this is Juror No. 179.

22           Good morning.

23           THE PROSPECTIVE JUROR:  Good morning.

24           THE COURT:  How are you doing?

25           THE PROSPECTIVE JUROR:  I'm well.  Thank you.

JURY SELECTION                                              266

1          THE COURT:  I'm going to go over some of the things

2   in your questionnaire.

3          The first thing I'd like you to do is look at that

4   list of names and tell me if you're familiar with any of them?

5          THE PROSPECTIVE JUROR:  I'm not.

6          THE COURT:  Those are just people whose names will

7   either be mentioned or who may testify during the course of

8   the trial.

9          Okay.  Thank you.

10         You are in qualitative research on education in

11  developing countries.  Don't tell us where you work or

12  anything like that but what does that work entail?

13         THE PROSPECTIVE JUROR:  It usually entails

14  contracting with UNICEF or USAID and conducting a study on

15  whether their programs in developing countries are working.

16  We work with refugees a lot.

17         THE COURT:  Do you travel as part of that?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  As part of that?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  Job.  Excuse me.  And I just want to

22  will you be -- will your employer pay you?

23         THE PROSPECTIVE JUROR:  Yes.

24         THE COURT:  For jury duty.  Okay.

25         You indicated in your questionnaire that you had

1   some -- had heard something about this case, and it doesn't

2   seem like you heard a whole lot about the case, but at one

3   point you said that it seemed like there are a lot of people

4   that are accusing him which usually doesn't bode too well.

5           As I said in the larger courtroom, if you're

6   selected as a juror in this case, the defendant is presumed to

7   be innocent.

8           THE PROSPECTIVE JUROR:  Right.

9           THE COURT:  And you'll have to base your

10  determination on the evidence that you hear in court, not on

11  things that you hear out -- from whether it's social media or

12  the news or anything like that.

13          Would you be able to put aside anything that you

14  might have heard before if you're selected as a juror in this

15  case, and follow that presumption of innocence and give

16  Mr. Kelly a fair trial?

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  Okay.  Any hesitation about that?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  You also have some friends who are

21  public defenders and some friends who are assistant district

22  attorneys?

23          THE PROSPECTIVE JUROR:  One friend.  Not that many.

24  And another who works in the office.

25          THE COURT:  Oh, I see.  Have you watched the show

JURY SELECTION                                              268

1    Philly D.A.?

2              THE PROSPECTIVE JUROR:  I did not know it existed.

3              THE COURT:  Okay.  So anything about those

4    relationships that would make it hard for you to be fair and

5    impartial?

6              THE PROSPECTIVE JUROR:  Not that I know of.

7              THE COURT:  Okay.  I don't know if there's something

8    that you've heard from any of them about the nature of their

9    work that would have an impact on you if you were selected as

10   a juror?

11             THE PROSPECTIVE JUROR:  I don't think so, no.

12             THE COURT:  Any hesitation about that?

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  Okay.  During the course of this trial,

15   you will hear testimony and see exhibits that have to do with

16   sexual activity among people of the same sex.  Is there

17   anything about that evidence that you believe would affect

18   your ability to be fair and impartial?

19             THE PROSPECTIVE JUROR:  No.

20             THE COURT:  Okay.  Let me check with the lawyers to

21   see if there are any additional questions they want me to put

22   it you?

23             MS. GEDDES:  No.

24             MR. CANNICK:  Just one second.

25             THE COURT:  Sure.

GA0596

1        MR. CANNICK:  Yes.

2        (Continued on the next page.)

3        (Sidebar conference.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                           270

1          (Sidebar conference held on the record in the

2    presence of the Court and counsel, out of the hearing of the

3    prospective juror.)

4          MR. CANNICK:  In her response to question 46, she

5    indicated that there's been harassment, I guess sexual

6    harassment, throughout the years.  Can you just ask if she was

7    a victim or someone else and the nature of the harassment.

8          THE COURT:  I should have brought the question over.

9    What does it say?

10         MR. CANNICK:  I'm going to challenge her.  Have

11   you --

12         THE COURT:  Oh.  Okay.  I'll ask her.

13         (Sidebar discussion concludes.)

14         (Continued on the next page.)

15

16

17

18

19

20

21

22

23

24

25

JURY SELECTION                                    271

```
 1                (In open court.)

 2                THE COURT:  Let me just ask you one other question.

 3      The questionnaire asks whether you or anyone close to you has

 4      been the victim of sexual harassment and you said,

 5      "Harassment.  Various times throughout the years."

 6                What do you mean by that?

 7                THE PROSPECTIVE JUROR:  I mean, that walking down

 8      the street there are generally some people who occasionally

 9      say crude remarks that I've been subject to.

10                THE COURT:  Okay.  Anything about that circumstance

11      that would affect your ability to be fair and impartial?

12                THE PROSPECTIVE JUROR:  No.

13                THE COURT:  Okay.  I do want to just review with

14      you, I alluded to it a moment ago, a couple of just important

15      principles.  The first is the presumption of innocence?

16                THE PROSPECTIVE JUROR:  Right.

17                THE COURT:  I will give you detailed instructions on

18      that, that Mr. Kelly's presumed to be innocent and the

19      Government has the burden of proof beyond a reasonable doubt.

20                But do you promise that you'll follow that

21      principle?

22                THE PROSPECTIVE JUROR:  Yes.

23                THE COURT:  Do you also promise that you'll follow

24      all of my instructions on the law?

25                THE PROSPECTIVE JUROR:  Yes.
```

JURY SELECTION                                          272

1          THE COURT:  And do you also promise to follow that

2    direction that I've given that nobody is to be looking up

3    anything about the case?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Okay.  And finally, if you're selected

6    as a juror in this case, do you promise to be fair and

7    impartial to both sides?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  All right.  Thank you so much.  Please

10   go with Ms. Greene.

11         (The prospective juror exits from the courtroom.)

12         MR. FARINELLA:  Your Honor, can I take a short break

13   just to use the restroom.

14         THE COURT:  Sure.  Donna, let's take ten minutes or

15   so before the next juror.

16         (A recess in the proceedings was taken.)

17         (Defendant exits from courtroom at 11: 44a.m.)

18         (A recess in the proceedings was taken.)

19         COURTROOM DEPUTY:  All rise.

20         THE COURT:  Everybody can sit down.

21         (Defendant enters the courtroom at 11:53 a.m.)

22         THE COURT:  We have 34 that are qualified.  I think

23   it makes sense to shoot for around 44, 45.  I think that

24   should cover us unless you think we should qualify more.

25         MS. GEDDES:  Your Honor, I think we are waiting on

JURY SELECTION                                      273

1    five jurors to let us know if either their school will be an

2    issue or they'll be paid by their employer.

3              Have we heard back from any of those jurors?

4              THE COURT:  Can you check on that?  There were some

5    jurors that were, you know, that were going to check to see if

6    they got paid.  Not the guy who was going to get his kitchen

7    remodeled.  I can find out.

8              COURTROOM DEPUTY:  Are you ready for 182.

9              (The prospective juror enters the courtroom.)

10             COURTROOM DEPUTY:  Have a seat.

11             THE COURT:  This is Juror 182.  Good morning.  How

12   are you doing?

13             THE PROSPECTIVE JUROR:  Good morning.

14             THE COURT:  My first question to you is you wrote in

15   your questionnaire that you're not certain whether your

16   employer will pay you.  Do you know the answer to that

17   question?

18             THE PROSPECTIVE JUROR:  I do not.  I'm pretty sure

19   they won't.

20             THE COURT:  Okay.  And then if you were -- we're

21   going to start the taking of evidence on the 18th and it'll be

22   about four weeks.  If you were to go without being paid for

23   four weeks would that pose a hardship to you?

24             THE PROSPECTIVE JUROR:  It would, but if I'm allowed

25   to -- I work nights, so if I'm allowed to continue working it

JURY SELECTION                                    274

1   wouldn't be a problem.

2           THE COURT:  Yeah.  I mean, we go from 9:30 to 5:00,

3   5:30.  So if you can stay awake during the day after work at

4   night that's fine.  That wouldn't be a problem?

5           THE PROSPECTIVE JUROR:  Yeah, I would still be able

6   to work Friday, Saturday, Sunday and then some weeknights

7   would be fine.

8           THE COURT:  Now, you -- and you're working at more

9   than one job; is that right?

10          THE PROSPECTIVE JUROR:  I also freelance for two

11  different theaters.  I'm helping them find an event ticketing

12  software system.

13          THE COURT:  Okay.  Now, you wrote in your

14  questionnaire that you had heard some things about Mr. Kelly

15  and I just wanted to talk to you a little bit about some of

16  that.

17          The first thing, as I said before, if you're

18  selected as a juror in this case, you can't permit anything

19  that you might have heard it influence you in reaching a

20  decision.

21          Would you be able to put aside those things that

22  you'd heard before?

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  Okay.  Because as I said, just because

25  something's reported in the news doesn't make it true and

JURY SELECTION                                      275

1    Mr. Kelly's presumed to be innocent.  And that means that you

2    can't come into the case thinking, you know, that just because

3    he's charged with this or that because somebody said something

4    about it in the news that assume that he's guilty do you

5    promise that you wouldn't do that?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  And then the other thing that you said

8    that you -- you had friends who were in manipulative

9    relationships and that was in connection with your impression

10   of Mr. Kelly.

11             Well, why don't you tell me what you meant by that?

12             THE PROSPECTIVE JUROR:  Do you remember what the

13   question was?

14             THE COURT:  I didn't give you much of a context,

15   sorry about that.

16             The question asked you, "From what you've seen,

17   read, or heard, do you have a general impression of the

18   defendant?"  You said it was somewhat negative.  The answer

19   was, "I had friends in manipulative relationships."

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  "If it's true that he had a relationship

22   with younger women, that would not make me respect him."

23             THE PROSPECTIVE JUROR:  Yes.  I've had friends who I

24   felt were taken advantage of by people who seemed more

25   experienced or had, like, clout in our theater department or

JURY SELECTION                                      276

1    something along those lines.  And I just felt like they didn't

2    necessarily think things through and allowed themselves to be

3    more careless with their, I guess, hearts and bodies.  And it

4    just made me really dislike the people that they were with in

5    those relationships.

6              THE COURT:  Well, and this is sort of related to

7    what I said before.  You know just because somebody says

8    something happened doesn't make it so.  So that's the first

9    thing that happened so to the extent that you heard that there

10   was -- anything about any types of relationships, as I said,

11   that doesn't make it true.

12             But do any of the feelings that you've expressed

13   make you feel that you couldn't be fair and impartial to both

14   sides in this case?

15             THE PROSPECTIVE JUROR:  I don't believe so.

16             THE COURT:  Okay.  Any hesitation about that?

17             THE PROSPECTIVE JUROR:  No.

18             THE COURT:  Okay.  And this is, you know, these

19   questions really go to the core of what it means to be a fair

20   juror.  And so, if you do have any hesitation about it you

21   have to let me know, okay?  All right.  So even as we're

22   talking about there's something that comes up, be sure to let

23   me know.

24             Now, you said you had an uncle who was in the New

25   York City Police Department quite some time ago but had

JURY SELECTION                                    277

1    retired.  Anything about that relationship that would affect

2    your ability to be fair and impartial?

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  Okay.  And your mother had an experience

5    at the workplace with a boss, as you described in the

6    questionnaire, I won't repeat the what the word is, but the

7    way he behaved toward her was harassing?

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  And you said she didn't talk any more

10   about that.  Any reason why that experience or your mom's

11   experience would affect your ability to be fair and impartial

12   in this case?

13             THE PROSPECTIVE JUROR:  I don't believe so.

14             THE COURT:  Okay.  And again, the same question do

15   you have any hesitation about that?

16             THE PROSPECTIVE JUROR:  No.

17             THE COURT:  Okay.  And you had some grand jury

18   service; is that right?

19             THE PROSPECTIVE JUROR:  That's correct, yes.

20             THE COURT:  Obviously, that process is much

21   different than a trial process.  You were in the state grand

22   jury?

23             THE PROSPECTIVE JUROR:  I think it was Westchester

24   County Grand Jury.

25             THE COURT:  Okay.

JURY SELECTION                                        278

1          THE PROSPECTIVE JUROR:  And also county civil trial.

2          THE COURT:  Starting with the grand jury process.

3   In the state court system, you head all kinds of cases; is

4   that right?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  And the standard of proof is much

7   different than it is in a regular trial.  So you understand,

8   obviously, the difference between those two proceedings.  And

9   then you had some civil jury experience as well.

10          Anything about that experience that makes you think

11   you couldn't serve as a fair juror in this case?

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  Okay.  Just with respect to the Me Too

14   Movement, you wrote in your questionnaire that you had

15   commented on Twitter or retweeted support for people who had

16   come forward and said that they had been assaulted or

17   harassed.

18          Do you know, first of all, about how many times you

19   made those kinds of commends?

20          THE PROSPECTIVE JUROR:  I don't know how many.  I

21   would guess it's pretty often.

22          THE COURT:  Okay.  Did you make any of those in

23   connection -- you referred to the Harvey Weinstein case and

24   the Bill Cosby case.

25          Did you make particular comments about those cases?

JURY SELECTION                                     279

1          THE PROSPECTIVE JUROR:  I likely retweeted

2     something.  I don't tend to tweet a huge amount.

3          THE COURT:  Aside from Twitter, any other kinds of

4     social media that you would have commented on any of these

5     cases?

6          THE PROSPECTIVE JUROR:  I might have liked a

7     Facebook post or an Instagram but not a comment.

8          THE COURT:  I mean, obviously, you know, without

9     knowing a lot about either of those cases, obviously, there

10    are some features that could be described as similar to this

11    case.  Do you think your feelings about those cases would have

12    any impact on your conduct as a juror in this case?

13          I mean, for example, you know, one of the -- at

14    least as I understand it -- one of the features of the Me Too

15    Movement is that one of the features -- a lot of people who

16    follow the Me Too Movement express the view that women are to

17    be believed when they make statements about what's happened to

18    them.  Obviously, in this case, you may hear evidence from

19    women who describe things that they say happened to them.

20          First of all, do you ascribe to that belief that

21    women are to be believed when they make -- that all women are

22    to be believed when they make these statements or allegations?

23          THE PROSPECTIVE JUROR:  All women a hundred percent?

24    No.  But generally I do.

25          THE COURT:  Okay.

JURY SELECTION                                    280

1      THE PROSPECTIVE JUROR:  Only because I think women

2 have historically not been believed as much as they should

3 have.

4      THE COURT:  Okay.  And obviously, in a criminal

5 case, where you're going to have women who may be describing

6 such things, it would be, again, just antithetical to a fair

7 trial to have somebody believe that the person -- before the

8 person says anything that the person automatically has a

9 higher level of credibility because it's a woman who is

10 describing being the victim of a sex crime?

11      THE PROSPECTIVE JUROR:  I wouldn't believe that she

12 would have a higher credibility.

13      THE COURT:  You can put aside those general feelings

14 about -- well, let me make sure that I'm right.  You said

15 generally you don't believe a hundred percent every person who

16 says that, but as a general matter, you have a feeling about

17 that.  And just, you know, if you can just explain to me how

18 that sort of general feeling would not be the same feeling

19 that you would have in this trial?

20      THE PROSPECTIVE JUROR:  Yeah.  So the way I think

21 about it is I don't know what happened in this case.  The way

22 that I'm sort of thinking about it in my brain is that there

23 is a very small percentage statistically of people who report

24 an assault who are lying about it.  I feel like that's a

25 statistic that I read.  So just from, like, a pure statistics

GA0608

JURY SELECTION                                    281

1   perspective, I wouldn't be surprised if the outcome was one

2   way or another.  But I'm not saying I know what it is in this

3   particular case or any case.

4           THE COURT:  Okay.  If you are selected as a juror in

5   this case, you will hear testimony and see exhibits that have

6   to do with sexual activity among individuals of the same sex.

7           Anything about that that makes you think that you

8   couldn't be fair and impartial?

9           THE PROSPECTIVE JUROR:  No.

10          THE COURT:  Let me see if the lawyers have any

11  additional questions they want me to put to the juror.

12          MS. GEDDES:  No, your Honor.

13          MR. CANNICK:  May we approach?

14          THE COURT:  Sure.

15          (Sidebar conference.)

16          (Continued on the next page.)

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                    282

1          (Sidebar conference held on the record in the

2    presence of the Court and counsel, out of the hearing of the

3    prospective juror.)

4          MR. CANNICK:  Do you want to entertain cause

5    arguments now or later on?

6          THE COURT:  So, I'm sorry, I'm a fairly practical

7    person and I think, I mean, I suppose you could split hairs on

8    whether this is a cause challenge or not.  If someone were to

9    make the argument to me at this moment, I would probably grant

10   the cause challenge.  I don't think it's as clear as the one

11   yesterday, but I do think and, you know, we can do cause

12   challenges at a later time and I think people can formulate

13   their opinions.  I'm happy to hear that, but I will give you

14   my general observation about this that, you know, if you had a

15   juror who said put it in another context everybody from this

16   category, you know, except for a small statistical group is

17   likely to do X, you would have some hesitations about that.

18          And I think that if we are fulfilling our

19   obligations to guarantee a fair trial, we have to think long

20   and hard about putting somebody who expresses these opinions.

21   I mean, it's an argument that we can have later rather than

22   now, but just thinking down the road for the larger picture,

23   my practical approach to these things is, A, why risk it?  And

24   B, I'm not sure it's entirely fair.  So I'm not going to do

25   anything about it now, but it's something that you can give

SIDEBAR CONFERENCE                    283

1  some thought to.  And if, not that my experience is anything,

2  if I had been a prosecutor in this case I would agree that

3  it's a cause challenge.  But that's because, you know, that's

4  just what I would do.  But I'm willing to be educated.  I'm

5  just saying that I think I don't know why you would take the

6  risk that's my person view.  But I think what we'll do is just

7  table all of that.

8          MR. CANNICK:  Okay.

9          THE COURT:  And that's why we're also selecting some

10  extra folks.

11          MR. CANNICK:  Okay.

12          (Sidebar discussion concludes.)

13          (Continued on the next page.)

14

15

16

17

18

19

20

21

22

23

24

25

JURY SELECTION                                          284

```
 1                (In open court.)

 2                MS. GEDDES:  Your Honor, did you ask about the list

 3      of individuals.

 4                THE COURT:  Not yet.

 5                MS. GEDDES:  Thank you.

 6                THE COURT:  Did I ask that now?  I don't remember.

 7      Okay.

 8                That's just a list of people that whose names might

 9      be mentioned or who may testify and the questions really is

10      just are you familiar with any of them?

11                THE PROSPECTIVE JUROR:  I am not.

12                THE COURT:  The last thing I'd like to do is to go

13      over with you a couple of important and basic principles of

14      criminal law and get your assurance that you can follow them.

15                The first is that we discussed before that basic

16      principle of criminal law which is the presumption of

17      innocence that someone who is accused a crime is presumed to

18      be innocent.  And the Government has the burden of proof

19      beyond a reasonable doubt.  And that applies to Mr. Kelly and

20      to anybody who is accused of a crime.

21                Do you promise that you will follow that principle?

22                THE PROSPECTIVE JUROR:  Yes.

23                THE COURT:  Okay.  And do you also promise that

24      you'll follow all of my instructions on the law?

25                THE PROSPECTIVE JUROR:  Yes.
```

GA0612

JURY SELECTION                                    285

 1              THE COURT:  And in terms of the ban on looking

 2      things up or researching a case or commenting on it, do you

 3      promise that you will follow my direct your attention once

 4      that?

 5              THE PROSPECTIVE JUROR:  Yes.

 6              THE COURT:  And if you are selected as a juror in

 7      this case, do you promise that you will be fair and impartial

 8      to both sides?

 9              THE PROSPECTIVE JUROR:  Yes.

10              THE COURT:  Okay.  Thank you so much.  Ms.  Greene

11      is going to tell you where you should go next.

12              (The prospective juror exits from the courtroom.)

13              (Continued on the next page.)

14

15

16

17

18

19

20

21

22

23

24

25

*Anthony D. Frisolone, FAPR,  RDR, CRR, CRI, CSR*
*Official Court Reporter*

JURY SELECTION                                286

1           (Prospective Juror enters the courtroom.)

2           THE COURT:  And this is Juror Number 184.

3           Good afternoon.

4           THE PROSPECTIVE JUROR:  Good afternoon.

5           THE COURT:  How are you doing?

6           THE PROSPECTIVE JUROR:  Not too bad.

7           THE COURT:  Good.  Good.

8           So I've gone through your questionnaire.  I'm going

9    to ask you just a few questions about that, but let's start

10   with that piece of paper that you have there.

11          That's just a list of names of who might be

12   mentioned during the course of the trial or who may testify.

13          Do you know any of those people or are the names

14   familiar to you?

15          THE PROSPECTIVE JUROR:  No, they are not.

16          THE COURT:  All right.

17          And you are an equipment operator and a mechanic.

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  How long have you had that job?  They're

20   two jobs, right?

21          THE PROSPECTIVE JUROR:  Well, it's one job.

22          THE COURT:  Okay.

23          THE PROSPECTIVE JUROR:  Depends what day of the

24   week.

25          THE COURT:  Okay.  And don't tell us where you work,

JURY SELECTION                                    287

1    but what kind of a place do you work for?

2              THE PROSPECTIVE JUROR:  It's a small business doing

3    basically house foundations and drainage.

4              THE COURT:  Okay.  And you also said in your spare

5    time that you are in historical truck clubs.

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  What's that?

8              THE PROSPECTIVE JUROR:  I have an old Mack truck

9    from the '20s.

10             THE COURT:  Does it still drive?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Okay.  And I guess there are clubs where

13   people share their interest?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  What else do you like to do in your

16   spare time?

17             THE PROSPECTIVE JUROR:  Mostly fixing things.

18             THE COURT:  All right.

19             THE PROSPECTIVE JUROR:  Not much spare time.  I work

20   six days a week.

21             THE COURT:  Oh, my gosh.  Okay.

22             And do you -- I just want to -- don't know if I made

23   a note here.  Do you know if your employer will pay you for

24   jury service?

25             THE PROSPECTIVE JUROR:  Most likely, yes.

GA0615

1          THE COURT:  Any concern about that?

2          THE PROSPECTIVE JUROR:  Not really.

3          THE COURT:  A little bit?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  I just want to make sure.

6          And you have some friends and a brother in-law who

7   are New York City police officers; is that right?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Were they still working for the NYPD?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Okay.  And anything about those

12   friendships or the relationship with your brother in-law that

13   would affect your ability to be fair and impartial?

14          THE PROSPECTIVE JUROR:  No.

15          THE COURT:  Okay.  Do you talk to them about their

16   work?

17          THE PROSPECTIVE JUROR:  Not really.  Doesn't pique

18   my interest.

19          THE COURT:  Okay.

20          If you're selected as a juror in this case, you will

21   hear evidence having to do with sexual contact among people

22   who are of the same sex.

23          Anything about that kind of evidence that would make

24   it hard for you to be fair and impartial?

25          THE PROSPECTIVE JUROR:  No.

JURY SELECTION                                    289

1          THE COURT:  Okay.  Let me just see from the lawyers

2    if they have any questions for you.

3          MS. GEDDES:  No.

4          MR. CANNICK:  No.

5          THE COURT:  No?  Okay.

6          So we talked in the ceremonial courtroom about some

7    of the important principles that apply in every criminal case.

8    One of those is it the presumption of innocence.  And like

9    every defendant in a criminal case, Mr. Kelly's presumed to be

10   innocent, and the government has the burden of proof beyond a

11   reasonable doubt.

12         If you're selected as a juror, of course, I'll give

13   you instructions on what that means.

14         But do you promise that if you're selected that you

15   will follow that principle?

16         THE PROSPECTIVE JUROR:  We're good.

17         THE COURT:  And do you also promise that you will

18   follow all of my instructions on the law?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Do you promise that you won't look

21   anything up on the internet or do any research of your own

22   about the case?

23         THE PROSPECTIVE JUROR:  Yes.

24         THE COURT:  And if you're selected as a juror, will

25   you give both sides a fair trial?

GA0617

 1              THE PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  Okay.  Thank you so much.  Ms. Greene is

 3   it going to give you directions about where to go.

 4              (Prospective Juror exits the courtroom.)

 5              (Prospective Juror enters the courtroom.)

 6              THE COURT:  And this is Juror 185.

 7         Good afternoon.

 8              THE PROSPECTIVE JUROR:  Good afternoon.

 9              THE COURT:  How are you doing?

10              THE PROSPECTIVE JUROR:  Good.

11              THE COURT:  Good.

12         So I just want to ask you a little bit about your

13   job.

14              You're the head of a quality control unit.  So can

15   you -- don't tell us where you work, but give us a little

16   sense of what it is you do everyday when you go to work?

17              THE PROSPECTIVE JUROR:  So it's basically we conduct

18   quality assurance and quality control of our daily

19   operations --

20              THE COURT:  Uh-huh.

21              THE PROSPECTIVE JUROR:  -- for the team.

22         And periodically we do like a mini project, you

23   know, assigned by our department head.

24              THE COURT:  Okay.  And what's the just general

25   nature --

JURY SELECTION                                    291

1               THE PROSPECTIVE JUROR:  Compliance related.

2               THE COURT:  Compliance?

3               THE PROSPECTIVE JUROR:  Yes.

4               THE COURT:  All right.  And you say you like to

5      travel in your spare time.

6               Is there anything else you like to do?

7               THE PROSPECTIVE JUROR:  Ah, that's pretty much it.

8               So because I mean just, you know, had a new hobby

9      which is, you know, playing with my kid.  I had a newborn

10     three years ago, so pretty much he's occupied all my spare

11     time I have.

12              THE COURT:  It's more than a hobby.

13              And he's a preschooler?

14              THE PROSPECTIVE JUROR:  Yes.

15              THE COURT:  Well, congratulations to you.

16              You said that you've heard something about this case

17     before.  You said that you heard it on the news?

18              THE PROSPECTIVE JUROR:  So actually it's quite

19     interesting.  I was watching Netflix.  You know, I'm a big

20     stand-up comedy fan.

21              So I was watching a comedy show, and one of the

22     comedians, she was actually cracking a joke on this case, and

23     she mentioned the name of Mr. Kelly, you know.  So she

24     mentioned his song, you know, "I Believe I Can Fly", so I

25     actually Googled it afterwards.  And I was read like one of

JURY SELECTION                                           292

1   the articles.  And it pretty much said, you know, the same

2   thing that you said, you know, before, Your Honor, the summary

3   of the case.

4           THE COURT:  I see.  And so the other thing that I

5   said also was that if you're selected as a juror in this case

6   you're going to have to put aside anything that you might have

7   heard about the case and just base your decisions on the

8   evidence that you hear in the case.

9           Do you think that's something you'll be able to do?

10          THE PROSPECTIVE JUROR:  Um, I mean I actually don't

11  have much, you know, knowledge or information before, you

12  know, I got involved into this case.  So I think that's --

13  yeah.

14          THE COURT:  Not a problem for you?

15          THE PROSPECTIVE JUROR:  It shouldn't be a problem.

16          THE COURT:  So it's just that it would be -- it

17  would be unjust to go into a case assuming that somebody who's

18  charged with a crime is guilty, and I want to make sure that

19  you won't do that.

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  Okay.

22          And the other thing that I want to mention to you is

23  that you will hear evidence which includes testimony and

24  exhibits that relate to sexual activity between and among

25  people who are of the same sex.

JURY SELECTION                                    293

1          Anything about that that makes you feel like you

2     couldn't be fair and impartial?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  Okay.  Let me see from the lawyers if

5     they have additional questions for this juror.

6          MS. GEDDES:  Your Honor, I believe this juror raised

7     his hand during...

8          THE PROSPECTIVE JUROR:  Yes, I did.

9          THE COURT:  Oh.  Is that what were you talking

10    about?  Did you look up --

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  I see, that's right.

13         Thank you for reminding me.

14         Did you look it up after you filled out the

15    questionnaire, or before.

16         THE PROSPECTIVE JUROR:  No, this was before I saw

17    the questionnaire.

18         THE COURT:  I see.  And since then you haven't; is

19    that right?

20         THE PROSPECTIVE JUROR:  Um, I think -- because I

21    mentioned this case to my wife, so she actually look it up

22    after I saw the questionnaire again and she sent like another

23    article to me.

24         THE COURT:  I see.  Did it say basically the same

25    thing?

JURY SELECTION                                      294

1             THE PROSPECTIVE JUROR:  It's different.

2             THE COURT:  Okay.  And did it talk about what the

3    allegations were?

4             THE PROSPECTIVE JUROR:  Hm, not really in detail,

5    but I think the article pretty much talked about, you know,

6    there was going to be a trial starting this week, the Monday,

7    so exactly, you know, the day I was here, yesterday, so.  And

8    she's like is that the case that you're going to be involved?

9    Yes.

10            So that's pretty much what the conversation about.

11            THE COURT:  I see.

12            So another one of the -- I understand.  But the same

13   things that I talked to you about before still apply; is that

14   right?  You're not going to go into this with some

15   preconceived notions about Mr. Kelly's guilt; are you?

16            THE PROSPECTIVE JUROR:  No.

17            THE COURT:  And the other thing about being a juror

18   in this case or in any case is, you can't talk about the facts

19   of the case to anybody, and that includes your wife.

20            So if you're selected as a juror in this case, you

21   can tell her what time you got to be here and all of that, but

22   any of us who've had a spouse that's been a juror before, you

23   can't speak to them about it.  So you can't go home and say,

24   "You won't believe that what I heard today in court."

25            So is that something you'll be able to do?

JURY SELECTION                                   295

1              THE PROSPECTIVE JUROR:  That could be the hardest

2     part, because I'm willing to not disclose any information, but

3     she might not be willing to not, you know, asking.

4              THE COURT:  Well, don't answer, okay?  All right.

5     It's one of the harder things I think about being a juror is

6     that, you know, you have to keep it to yourself.

7              But, you know, we're laughing about it, but I'm

8     quite serious about it.

9              THE PROSPECTIVE JUROR:  I understand.

10             THE COURT:  It's -- you can't consult any outside

11    sources during the course of the trial.  Okay?  All right.

12             MR. SCHOLAR:  Your Honor?

13             THE COURT:  Sure.

14             (Continued on the next page.)

15             (Sidebar conference.)

16

17

18

19

20

21

22

23

24

25

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

GA0623

SIDEBAR CONFERENCE                    296

1          (The following occurred at sidebar.)

2          MR. CANNICK:  He had discussions about the case,

3    which he read in the article, and if she refused to talk about

4    the case with him.

5          THE COURT:  Okay.

6          MS. GEDDES:  I would like to make sure that he and

7    his wife can both follow the rules not to -- I mean his wife

8    can't be sending him articles about this case.

9          MR. CANNICK:  He can't.

10          THE COURT:  I don't know that I've ever enjoyed a

11    spouse.

12          MS. GEDDES:  Then he has to agree to not...

13          THE COURT:  I thought I got that out of him.  I just

14    want to make sure.

15          So you want me to ask if she expressed an opinion?

16          MR. CANNICK:  Yes.

17          THE COURT:  Okay.  And just one other thing.  Just

18    to make sure, but husbands and wives don't always have the

19    same opinions.

20          MR. CANNICK:  I know.

21          (End of sidebar conference.)

22          (Continued on the next page.)

23

24

25

1              (In open court.)

2              THE COURT:  So just in connection with your

3      conversation with your wife about the case.

4              Did she express her opinion about the case to you,

5      or did she just ask whether it was the case that you were on?

6              THE PROSPECTIVE JUROR:  Yes, that was pretty much

7      it.

8              THE COURT:  Okay.  Did you -- but did she tell you

9      what she thought about it?

10             THE PROSPECTIVE JUROR:  Um, if I remember correctly

11     because, you know, we're not, um, like a super fan of, you

12     know, the whole like R&B music.  But we both read the article

13     and like do a Wikipedia about Mr. Kelly.  And the only thing

14     we know about him is his song "I Believe I Can Fly".  So I

15     think that's the only thing that, you know, I think she

16     mentioned something like, you know, that was the song, good

17     music.

18             THE COURT:  Okay.  So, you know, I can't order your

19     wife not to speak to you about the case, but she shouldn't,

20     but I can direct you not to -- I mean not to listen to it,

21     it's hard, but you really do have to follow that rule.

22             Can you do that?

23             THE PROSPECTIVE JUROR:  Yeah.

24             THE COURT:  Okay.  Any question about that?

25             THE PROSPECTIVE JUROR:  No.

JURY SELECTION                                    298

1          THE COURT:  No, okay.

2          We talked in the ceremonial courtroom about some

3    important principles of criminal law, and I just want to

4    confirm that you'll follow those.

5          And the first is the presumption of innocence.  That

6    means that Mr. Kelly is presumed to be innocent, and the

7    government has the burden of proving his guilty beyond a

8    reasonable doubt.

9          Do you promise that you'll follow that principle?

10         THE PROSPECTIVE JUROR:  Yes.

11         THE COURT:  All right.  The second question I have

12   is whether you promise that you will follow all of my

13   instructions on the law?

14         THE PROSPECTIVE JUROR:  Yeah.

15         THE COURT:  And do you also promise not to look

16   anything up about the case at all starting now?  That you

17   can't look anything up about the case at all.  You can't

18   research it.  Can't Google any -- any of the participants in

19   the case.  And if your wife sends you something, you can't

20   read it, and you have to tell her you're not going to talk

21   about the case.

22         It's just critically important that you base your

23   verdict only on the evidence that you hear in the courtroom

24   and that you disregard anything you might have heard from any

25   other source.  You promise you can do that?

JURY SELECTION                              299

1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  And if you're selected as a juror in

3    this case, do you promise that you'll be fair and impartial to

4    both sides?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Okay.  Thank you so much.  Ms. Greene is

7    going to direct you where to go next.

8              (Prospective Juror exits the courtroom.)

9              (Prospective Juror enters the courtroom.)

10             THE COURT:  So this is Juror Number 187; is that

11   right?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  How are you doing?

14             THE PROSPECTIVE JUROR:  Pretty good.

15             THE COURT:  Okay.  So we have -- I have reviewed

16   your questionnaire and I have a couple of additional questions

17   for you.

18             The first thing, though, is, has to do with that

19   piece of paper that's in front of you.  That's just some names

20   of people who may testify or whose names may be mentioned

21   during the course of the trial.

22             Do you know any of those people?

23             THE PROSPECTIVE JUROR:  No.

24             THE COURT:  Okay.  And with respect to your

25   questionnaire, you're a cloud strategy manager?

JURY SELECTION                                          300

1          THE PROSPECTIVE JUROR:  Yes, ma'am.

2          THE COURT:  And just tell me what that -- what that

3     involves?  Don't tell us the place that you work, but what do

4     you do?

5          THE PROSPECTIVE JUROR:  Yeah, so we basically do

6     cloud strategy work for enterprises, for companies that kinds

7     of will have data centers.  And we provide strategy and

8     implementation to help them move to the cloud.

9          THE COURT:  Okay.  And you say that you -- you

10    don't -- what do you do in your spare time?  I know you wrote

11    "nothing special," but what do you like to do?

12         THE PROSPECTIVE JUROR:  Cloud strategy consulting

13    has been pretty consuming for my life.  But outside of work, I

14    spend time with my family.  Watch couple, you know, sometimes

15    drama and those things.

16         THE COURT:  Okay.  And if you are selected as a

17    juror in this case, you'll hear some evidence about sexual

18    contact among people who are of the same sex.

19         Anything about that that would affect your ability

20    to be fair and impartial?

21         THE PROSPECTIVE JUROR:  No.

22         THE COURT:  Okay.  Do either lawyers have any

23    questions for this juror?

24         MR. CANNICK:  Yes.

25         THE COURT:  Okay.

SIDEBAR CONFERENCE                    301

1          (The following occurred at sidebar.)

2          MR. CANNICK:  Just following up on the circumstances

3   about the police officer testimony.  If they're trained and

4   familiar with the system in general, if they tell the truth.

5          Just wanted that, just subjectively.

6          THE COURT:  All right, can I just -- how many law

7   enforcement witnesses are going to be calling?  I'm just

8   curious.

9          MS. GEDDES:  Very few.  I mean the case agent will

10   testify about the records, but not direct observations.

11          THE COURT:  Okay.  I'm just curious.

12          (End of sidebar conference.)

13          (Continued on the next page.)

14

15

16

17

18

19

20

21

22

23

24

25

GA0629

JURY SELECTION                                         302

1          (In open court.)

2          THE COURT:  One other question I wanted to ask you

3   has to do with police officer testimony.

4          I don't know to what extent you'll hear from members

5   of law enforcement in this case, but if you do, the rule is

6   that you have to evaluate the testimony of law enforcement

7   witnesses just like you'd evaluate the testimony of another

8   witness.

9          You know, like any other profession, there are

10  police officers and law enforcement that are good.  There are

11  some who are in between.  And there are some who are not good.

12  And if you're selected as a juror, you're going to have to

13  evaluate them as individuals.

14         Are you able to do that?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  And are you -- do you think that just

17  because someone that works for law enforcement that that

18  person automatically is more believable?

19         THE PROSPECTIVE JUROR:  Subjectively, yes.

20         THE COURT:  Okay.  And when you say "subjectively,"

21  what do you mean?

22         THE PROSPECTIVE JUROR:  Just my personal opinion.

23  And I do believe -- well, like you said, some policemans might

24  be bad or good or in between.  But I do believe in general,

25  law enforcements because they get the proper training, then

1    they might just be following the rule better than others.

2              THE COURT:  Okay.  But do you also accept the -- I

3    mean that's the ideal, I guess, but do you accept that there

4    are some officers who don't live up to that ideal?

5              THE PROSPECTIVE JUROR:  Sure.

6              THE COURT:  And what I'm getting at is, you can't

7    assume that just because somebody is involved in law

8    enforcement that they're automatically entitled to more

9    credibility.

10             Do you feel that way?

11             THE PROSPECTIVE JUROR:  Can you repeat that again?

12             THE COURT:  I'm not phrasing it very well.

13             So if some -- if a law enforcement witness comes up

14   and takes the stand, and before the person says anything you

15   think to yourself I know I'm going to believe this person

16   because she works for law enforcement.

17             Do you feel that way?

18             THE PROSPECTIVE JUROR:  I do.

19             THE COURT:  Do you?  Okay.

20             Okay.  Any other questions by -- all right.

21             Why don't you go with Ms. Greene, and she'll show

22   you where to go next, okay?

23             Let me just ask.

24             Can I see the lawyers just briefly over the side?

25   Give me one second.

GA0631

SIDEBAR CONFERENCE                              304

1          (The following occurred at sidebar.)

2          THE COURT:  On a regular case, I would view this as

3    a cause challenge; are you --

4          MR. CANNICK:  Yes, Your Honor, because I don't know

5    what's going to happen during the trial, even though there --

6          THE COURT:  You're not objecting?

7          MS. GEDDES:  No.

8          THE COURT:  All right.

9          (End of sidebar conference.)

10          (Continued on the next page.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JURY SELECTION                                    305

1              (In open court.)

2              THE COURT:  Okay.  So I think I'm going to excuse

3      you from this case.  Nothing to be -- I appreciate your

4      honesty in answering these questions.  I also appreciate

5      you're participating in this process because we can't function

6      if we don't have people who are willing to do that.

7              So I thank you for that, and Ms. Greene is going to

8      tell you where you should go, all right?

9              THE PROSPECTIVE JUROR:  Thank you.

10             THE COURT:  Thank you so much.

11             (Prospective Juror exits the courtroom.)

12             (Prospective Juror enters the courtroom.)

13             THE COURT:  And is this is Juror Number 188.  Good

14     afternoon.

15             THE PROSPECTIVE JUROR:  Good afternoon.

16             THE COURT:  First of all, let me congratulate you on

17     your new job.

18             THE PROSPECTIVE JUROR:  Thank you.

19             THE COURT:  Do you know when you're supposed to

20     start?

21             THE PROSPECTIVE JUROR:  August 23rd.

22             THE COURT:  And what would happen if you didn't go

23     on August 23rd but you were a juror in this case?

24             THE PROSPECTIVE JUROR:  According to what I was

25     told, they wouldn't pay me.  I'm not sure how much time I'm

JURY SELECTION                                    306

1   entitled to, but that's what I was told.

2        THE COURT:  Okay, so do you have any concern that

3   you be put in a bad position at your job or that you won't be

4   paid if you're selected as a jury in this case?

5        THE PROSPECTIVE JUROR:  As far as the pay is

6   concerned, I believe they will.  I'm just not sure for you how

7   long knowing that the case is going to go for four weeks.

8        And other than that, I guess they would understand

9   if I'm chosen.

10       THE COURT:  So is it -- don't tell me where it is,

11  but is it a large place?

12       THE PROSPECTIVE JUROR:  It's a large company.

13       THE COURT:  If you want to double check to be sure,

14  I just don't want to cause you any undue stress in that

15  regard.  But most important, it is a civic duty and so -- so

16  just double check about that and let us know.

17       And so are you going to be doing the same type of

18  work that you currently are doing?

19       THE PROSPECTIVE JUROR:  Yes.

20       THE COURT:  Okay.  And how long have you been doing

21  that?

22       THE PROSPECTIVE JUROR:  I've been in the field for

23  about, I want to say, 11 years.

24       THE COURT:  Okay.  And what do you like to do in

25  your spare time?

JURY SELECTION                                      307

1          THE PROSPECTIVE JUROR:  Well, I have a family and

2     kids.  That's what my spare time usually involves, spending

3     time with them.

4          THE COURT:  Okay.  And you've got a very little one.

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  So not much time just for you, I

7     imagine.

8          THE PROSPECTIVE JUROR:  Not right now.

9          THE COURT:  Okay.

10         And you said you -- in terms of this case, you said

11    that you've heard a little something about it but not much; is

12    that right?

13         THE PROSPECTIVE JUROR:  That's right.

14         THE COURT:  And you don't have any feelings about

15    the case one way or another; is that right?

16         THE PROSPECTIVE JUROR:  I do not.

17         THE COURT:  Okay.  Now there's a piece of paper that

18    you have.  That's just a list of names that might be mentioned

19    or people who might testify at the trial.

20         Do you have any familiarity with any of those

21    people?

22         THE PROSPECTIVE JUROR:  None at all.

23         THE COURT:  Okay.  In this case you'll hear evidence

24    about sexual activity among individuals of the same sex.

25         Anything about that that would affect your ability

GA0635

JURY SELECTION                                                    308

1    to be fair and impartial?

2            THE PROSPECTIVE JUROR:  No.

3            THE COURT:  Okay.

4            Let me see if the lawyers have any questions for

5    this juror.

6            MS. GEDDES:  No, Your Honor.

7            MR. CANNICK:  Yes, Your Honor.

8            THE COURT:  Okay.

9            (Continued on the next page.)

10           (Sidebar conference.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                    309

1              (The following occurred at sidebar.)

2              MR. CANNICK:  Thank you, Your Honor.  I think it was

3     question number 32.  She indicated that she grew up listening

4     to Kelly's music, but she was also -- I'm trying to get the

5     specific question.  He's been known to be involved with

6     minors.  And I just want to go into a little bit for the times

7     or whatever it is that that she's heard about him and minors,

8     could she just leave that out of the courtroom and --

9              THE COURT:  Leave that where?

10             MR. CANNICK:  -- leave that out of the courtroom and

11    out of this process and just focus on whatever transpires

12    here.

13             THE COURT:  Sure.  All right.

14             (End of sidebar conference.)

15             (Continued on the next page.)

16

17

18

19

20

21

22

23

24

25

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

JURY SELECTION                                        310

1          (In open court.)

2          THE COURT:  I just want to go back to that question

3    about knowing things about the case.

4          You said that you've been listening to his music,

5    and -- oh, I see, more familiar than a fan.  You mean you just

6    heard it?

7          THE PROSPECTIVE JUROR:  Yeah, I'm very aware of

8    like -- "I Believe I Can Fly" was the big song growing up, so,

9    yeah.

10          THE COURT:  Okay.  And you said as far as the

11    allegations, you were aware that he's been known to be

12    involved with minors, and you don't have any further

13    knowledge.

14          I just want to, to the extent you've heard anything

15    like that, will you able to put that aside and just judge the

16    case based on the evidence that you hear in the case?

17          THE PROSPECTIVE JUROR:  Absolutely.

18          THE COURT:  Okay.  The other things I want to talk

19    to you about are some of the things we talked about in the

20    larger courtroom.

21          One, is the presumption of innocence.  That

22    Mr. Kelly's presumed to be innocent and that the government

23    has the burden of proving his guilt beyond a reasonable doubt.

24          If you're selected as a juror, and that's something

25    that I'll give you instructions on at the appropriate time,

1    but can I get your assurance that you will follow that

2    principle?

3                THE PROSPECTIVE JUROR:  Yes.

4                THE COURT:  Do you also promise that you'll follow

5    my instruction on the law?

6                THE PROSPECTIVE JUROR:  Yes.

7                THE COURT:  And do you promise that you won't do any

8    kind of independent research or Googling or looking up

9    anything on social media or anywhere else having to do with

10   this case?

11               THE PROSPECTIVE JUROR:  Yes.

12               THE COURT:  And finally, if you're selected as a

13   juror, do you promise that you'll give both sides a fair

14   trial?

15               THE PROSPECTIVE JUROR:  Yes.

16               THE COURT:  All right.  Thank you so much.

17   Ms. Greene is going to take you to your next destination.

18               THE PROSPECTIVE JUROR:  Thank you.

19               (Prospective Juror exits the courtroom.)

20

21               (Continued on the following page.)

22

23

24

25

JURY SELECTION                                     312

```
 1                (The prospective juror approaches.)

 2                THE COURT:  And is this Juror Number 191?

 3                THE PROSPECTIVE JUROR:  (No verbal response.)

 4                THE COURT:  Am I right that this is Juror Number

 5     191?

 6                THE COURTROOM DEPUTY:  Yes.

 7                THE COURT:  All right.  Good afternoon.

 8                THE PROSPECTIVE JUROR:  Good afternoon.

 9                THE COURT:  So I've gone through your questionnaire,

10     and I have a couple of questions for you about it, but there's

11     a list of names that's in front of you, and these are just

12     some people who either may testify or whose names might be

13     mentioned during the course of the trial.

14                Are you familiar with any of those people?

15                THE PROSPECTIVE JUROR:  Yes, I looked at it.  I'm

16     not familiar with any.

17                THE COURT:  Okay.  You've had some experience

18     testifying yourself.

19                Have you ever testified in a criminal case?

20                THE PROSPECTIVE JUROR:  No, I have not.

21                THE COURT:  Just really more as an expert witness

22     in, what, medical malpractice cases and things like that?

23                THE PROSPECTIVE JUROR:  That's correct.

24                THE COURT:  Do you know how many times you've done

25     that?
```

GA0640

JURY SELECTION                          313

```
1            THE PROSPECTIVE JUROR:  Once or twice.

2            THE COURT:  Okay.  And you have relatives or friends

3  -- uncle and father-in-law who were in law enforcement.

4            Are they still?

5            THE PROSPECTIVE JUROR:  They're deceased.

6            THE COURT:  Deceased, okay.

7            Okay.  So anything about those relationships that

8  would make it hard for you to be fair and impartial?

9            THE PROSPECTIVE JUROR:  Not at all.

10           THE COURT:  During the course of this trial, you

11  will hear testimony having to do with sexual relations among

12  individuals of the same sex.

13           Is there any reason that that kind of evidence would

14  affect your ability to be fair and impartial?

15           THE PROSPECTIVE JUROR:  No.

16           THE COURT:  Okay.  Let me see if the lawyers have

17  any questions.  Give me just a moment.

18           (Pause.)

19           THE COURT:  Before we do that, I do have another

20  question.  Sorry, just give me a second.  I forgot that I

21  wanted to ask one additional question.

22           MR. CANNICK:  Sure.

23           THE COURT:  You have been the victim of a crime

24  yourself; is that right?

25           THE PROSPECTIVE JUROR:   That's correct.
```

GA0641

JURY SELECTION                                    314

1              THE COURT:  And did you have to testify in

2      connection with that case?

3              THE PROSPECTIVE JUROR:  I believe I did.

4              THE COURT:  Okay.  How long ago was that?

5              THE PROSPECTIVE JUROR:  About 20 years ago.

6              THE COURT:  I see.

7              And I'm sorry to have to ask you about this.

8              Is there anything about that experience that would

9      make it hard for you to be fair and impartial in this case?

10             THE PROSPECTIVE JUROR:  No, it would not.

11             THE COURT:  Okay.  I'm sorry, let me speak to the

12     lawyers at the side.

13             (Sidebar conference.)

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                    315

1          (Sidebar conference held on the record out of the

2     hearing of the prospective juror.)

3          MS. GEDDES:  Your Honor, I think he skipped a page

4     in the questionnaires, and questions 32 to 36 were not

5     answered.

6          THE COURT:  I didn't even notice.

7          MS. GEDDES:  I just noticed.

8          MR. CANNICK:  And the question, I think, 40 -- 47,

9     he said he, too, was the victim of spousal abuse.

10         THE COURT:  I just asked him about it.

11         MR. CANNICK:  And so -- okay.

12         THE COURT:   That case went to trial.

13         MR. CANNICK:  Okay.

14         THE COURT:  Do you want me to ask any more questions

15    about it?

16         MR. CANNICK:  Yeah, whether having gone to trial --

17    having made the allegation and gone to trial, I know you

18    already said that there's no lingering affect that he could be

19    fair and impartial here, but it just seems to me that if he

20    was the victim, would he sympathize with the victims here?  Or

21    would he believe that since he was a victim and went to trial

22    and the victims are coming here and testifying, would he then,

23    kind of, identify with the victims here?

24         THE COURT:  Okay.

25         What questions did he not answer?

SIDEBAR CONFERENCE                                316

1            MR. CANNICK:  Page 6.

2            MS. GEDDES:  I think it was general impressions of

3       the defendant.

4            MR. CANNICK:  Right.

5            MS. GEDDES:  Whether he posted anything on any

6       blogs.

7            THE COURT:  I think he said he didn't know anything

8       about the defendant.

9            MS. GEDDES:  I agree.  And then there are a couple

10      of other questions after that that are not defendant-related,

11      but honestly it doesn't make a big difference to me or not.

12           MR. CANNICK:  I request that you ask him.

13           Question No. 52, I think he was involved in an FBI

14      investigation.

15           THE COURT:  I think he did one of those background

16      things, you know, when somebody calls --

17           MR. CANNICK:  Yeah, okay.

18           THE COURT:  Off the record.

19           (Discussion held off the record.)

20           MR. CANNICK:  Maybe I was having problems with his

21      handwriting, but did he indicate that he testified as an

22      expert?

23           THE COURT:  He's a doctor, so he testified in

24      medical malpractice, which I asked him about.

25           MR. CANNICK:  Okay.

GA0644

SIDEBAR CONFERENCE                               317

1            One other thing.  I think he served as a grand

2   juror.

3            THE COURT:  I'll look.

4            MS. GEDDES:  As a juror.  Definitely a juror.  I'm

5   not sure if it was grand jury.

6            MR. CANNICK:  Okay.

7            (Sidebar end.)

8            (Continued on the next page.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (In open court.)

 2              THE COURT:  Bear with me for just a second.  I'm

 3    sorry.

 4              On your questionnaire, there were a couple of

 5    questions that you did not answer, and I think it was in

 6    relation to whether you knew anything about the case, which

 7    you said you don't; is that right?

 8              THE PROSPECTIVE JUROR:  That's correct.

 9              THE COURT:  Okay.  And as part of that section of

10    the questionnaire, one of the questions that you were asked is

11    whether you ever posted any opinions online about any kind of

12    a court proceeding.

13              THE PROSPECTIVE JUROR:  No, I haven't.

14              THE COURT:  Okay.

15              And then the other question was whether -- well,

16    Mr. Kelly is somebody who is known publicly because of his

17    position in the music and entertainment business; and I know

18    you are not familiar with him, but is there anything about the

19    fact that he is a public figure or a celebrity that would make

20    it hard for you to be fair?

21              THE PROSPECTIVE JUROR:  No, there's not.

22              THE COURT:  Okay.

23              You served in a grand jury; is that right?

24              THE PROSPECTIVE JUROR:  That's correct.

25              THE COURT:  How long was that?
```

GA0646

JURY SELECTION                                        319

1          THE PROSPECTIVE JUROR:  It was sometime around 1995.

2          THE COURT:  Okay.  So a good little while ago.

3          Did you only listen to evidence in one case, or did

4    you listen to all different kinds of cases?

5          THE PROSPECTIVE JUROR:  I can barely remember it,

6    but to the best of my recollection, it was one case.

7          THE COURT:  One case.

8          And that was the only thing that you heard evidence

9    on; is that right?

10          THE PROSPECTIVE JUROR:  That's right.

11          THE COURT:  Okay.  Anything about that fact that

12   would make it hard for you to be fair and impartial in this

13   case?

14          THE PROSPECTIVE JUROR:  No, there's not.

15          THE COURT:  It's obviously a much different

16   proceeding.

17          And then just let me ask you also, since you have

18   been in the position of having to testify and having been the

19   victim of a crime, obviously there are people who are going to

20   be testifying in this case who will testify that they have

21   been victims of crime.

22          Is there anything about the fact that you went

23   through that experience yourself, do you feel that you will be

24   able to evaluate those people fairly and impartially without

25   sympathizing with them overly -- overly sympathizing with them

JURY SELECTION                                    320

1   because they are testifying as victims of a crime?

2              THE PROSPECTIVE JUROR:  Absolutely.

3              THE COURT:  You will --

4              THE PROSPECTIVE JUROR:  Definitely can be fair and

5   impartial.

6              THE COURT:  Okay.  Okay.

7              The other thing I wanted to talk to you about is

8   just some of those principles we talked about in the

9   ceremonial courtroom, those principles that are basic -- one

10  of the basic principles of criminal law which is the

11  presumption of innocence, and that Mr. Kelly is presumed to be

12  innocent and that the Government has the burden of proof

13  beyond a reasonable doubt.  Obviously, if you are selected as

14  a juror, I will explain that principle in more detail, but if

15  you are selected as a juror in this case, will you follow that

16  principle?

17             THE PROSPECTIVE JUROR:  Yes, I would.

18             THE COURT:  And will you also follow my instructions

19  on the law?

20             THE PROSPECTIVE JUROR:  Yes, I will.

21             THE COURT:  And will you also follow that rule that

22  I've imposed -- it's really the rule in every case, but I want

23  to be careful about it in this case as well -- that you not

24  look anything up on the internet or do any kind of research

25  about the case at all?

GA0648

PROCEEDINGS                                    321

1              THE PROSPECTIVE JUROR:  I will not.

2              THE COURT:  Finally, if you are selected as a juror

3     in this case, do you promise that you will be fair and

4     impartial to both sides?

5              THE PROSPECTIVE JUROR:  Yes, I do.

6              THE COURT:  All right.

7              Thank you so much.

8              Ms. Greene is going to take you to the next place.

9     Okay.  Good.

10             (The prospective juror exits.)

11             THE COURT:  All right.  Ms. Greene tells me that the

12    lunch is here for our jurors, so we'll break at this point

13    until 2:15.  I don't know if we have an exact count of how

14    many we've qualified.

15             MS. GEDDES:  I think we have 39.

16             MR. FARINELLA:  We have 39 including --

17             MS. GEDDES:  Thirty-nine including 182.

18             THE COURT:  And I know that some of those jurors who

19    weren't certain whether or not they may be compensated, I know

20    Ms. Greene left messages or --

21             THE COURTROOM DEPUTY:  Sorry, Judge.  They can't

22    hear you guys upstairs -- I have to pull the mics closer -- in

23    the overflow.

24             THE COURT:  You mean through the whole proceeding?

25             THE COURTROOM DEPUTY:  No, no, no.

GA0649

PROCEEDINGS                                    322

1              THE COURT:  The jurors who said that they wanted to

2    get more information about their jobs and things like that, I

3    know a couple messages have been left or spoken to jurors who

4    are still checking.

5              Do we have anything more definitive on any of that?

6              THE COURTROOM DEPUTY:  We do not.

7              THE COURT:  Okay.  All right.

8              In terms of numbers, are we 39?

9              MR. FARINELLA:  Yes.  That's what we have.

10             THE COURTROOM DEPUTY:  Yes.

11             THE COURT:  Thirty-nine, okay.

12             I think it would probably be prudent to qualify at

13   least ten more.  We have the people that are here, so I would

14   rather have extras than not enough.  I mean, maybe even more

15   than that, but I think we should be prepared to press on for a

16   little while anyway, okay?

17             All right, everybody.  Have a good lunch.

18             (A recess in the proceedings was taken.)

19

20

21

22

23

24

25

JURY SELECTION                                        323

1              A F T E R N O O N   S E S S I O N

2              (Time noted:  2:25 p.m.)

3              (In open court.)

4              THE COURTROOM DEPUTY:  All rise.

5              THE COURT:  Hi.  Everybody can have a seat.

6              (Defendant enters the courtroom.)

7              THE COURT:  So just before we resume, I know the

8    next juror -- I mean, I guess we'll ask him, but I think he's

9    the only doctor at his practice.  We'll see what he has to

10   say, but I'm feeling a dismissal.

11             MR. CANNICK:  I think so.

12             THE COURT:  I mean, should we even --

13             MR. CANNICK:  I don't think so.

14             THE COURT:  What's your view?

15             MS. GEDDES:  Your Honor, I don't have it in front of

16   me, but I --

17             THE COURT:  He's got patients scheduled; he's the

18   only doctor in the practice.

19             MS. GEDDES:  It's fine.  No objection.

20             THE COURT:  All right.  I think we'll skip over him

21   to 199.

22             (The prospective juror approaches.)

23             THE COURT:  And this is Juror Number 199.

24             Good afternoon.

25             THE PROSPECTIVE JUROR:  Hi.

GA0651

JURY SELECTION                                              324

```
 1              THE COURT:  How are you doing?

 2              THE PROSPECTIVE JUROR:  Good.

 3              THE COURT:  Good.

 4         All right.  I've been through your questionnaire.  I

 5    just have a couple of additional questions for you.  One of

 6    them has to do with that piece of paper that you've got there.

 7    That's just a list of names of people who may testify or whose

 8    names might be mentioned during the trial, and my question is

 9    whether you're familiar with any of those people.

10              THE PROSPECTIVE JUROR:  Nope.

11              THE COURT:  Okay.

12         And you are currently a manager at a fast food

13    place, but also a preschool teacher; is that right?

14              THE PROSPECTIVE JUROR:  I'm preschool, not

15    currently.  I can sub, and I'm on the list, but since COVID

16    started, we haven't had the attendance --

17              THE COURT:  Okay.

18              THE PROSPECTIVE JUROR:  -- so I'm not doing that

19    right now.

20              THE COURT:  Okay.

21         And how long were you a preschool teacher?

22              THE PROSPECTIVE JUROR:  Three years.

23              THE COURT:  Okay.  And you said that you've -- I

24    think it's your aunt who is a lawyer?

25              THE PROSPECTIVE JUROR:  Yeah.
```

GA0652

JURY SELECTION                                              325

```
 1                THE COURT:  What kind of law does she practice?

 2                Do you know?

 3                THE PROSPECTIVE JUROR:  I think it's corporate.  I

 4      think she worked with Verizon at one point.

 5                THE COURT:  It's not something you discuss with her?

 6                THE PROSPECTIVE JUROR:  No.

 7                THE COURT:  Okay.  And you also said with respect to

 8      the question having to do with the Me Too movement, you said

 9      you've read people's posts on Facebook?

10                THE PROSPECTIVE JUROR:  Sometimes if something

11      catches my eye, like, when I'm just scrolling through

12      Facebook.  Other than that, I haven't really.

13                THE COURT:  You haven't really followed it?

14                THE PROSPECTIVE JUROR:  No.

15                THE COURT:  Okay.  And other than reading about it

16      on Facebook, have you had any other kinds of connections with

17      it?

18                THE PROSPECTIVE JUROR:  No.

19                THE COURT:  Okay.

20                And during the course of this trial, you will hear

21      some evidence relating to sexual activity between people who

22      are the same sex.  Is there anything about that that would

23      make it difficult for you to be fair and impartial?

24                THE PROSPECTIVE JUROR:  Nope.

25                THE COURT:  Okay.
```

*Denise Parisi, RPR, CRR*
*Official Court Reporter*

GA0653

1          Let me see if the lawyers have any questions for

2   this juror.

3              MR. CANNICK:  One second.

4              THE COURT:  Sure.

5              (Pause.)

6              MR. CANNICK:  Yes.

7              (Sidebar.)

8              (Continued on next page.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                    327

1              (Sidebar conference held on the record out of the

2    hearing of the prospective juror.)

3              MR. CANNICK:  The response to your question

4    regarding law enforcement, she said her grandfather was a

5    police officer.  If you can just explore that a little bit in

6    terms of giving them undue credit.

7              THE COURT:  Okay.

8              MR. CANNICK:  And then there was a response to

9    Number 64 where she was a prior juror in a federal --

10             THE COURT:  Oh, I meant to ask her about that.

11   Sorry about that.

12             (Sidebar end.)

13             (Continued on next page.)

14

15

16

17

18

19

20

21

22

23

24

25

JURY SELECTION                                              328

 1                    (In open court.)

 2                    THE COURT:  So I forgot to ask you about your prior

 3   jury service.

 4                    Was that here in this courthouse or out in Central

 5   Islip?

 6                    THE PROSPECTIVE JUROR:  Here.

 7                    THE COURT:  And how long ago was that?

 8                    THE PROSPECTIVE JUROR:  Probably about six, seven

 9   years ago, I think.  I don't remember exactly.

10                    THE COURT:  Okay.  And some of the charges look like

11   they're somewhat similar to the charges in this case.

12                    Anything about that trial that would affect your

13   ability to be fair and impartial in this case?

14                    THE PROSPECTIVE JUROR:  No.  I don't really remember

15   too much about it.

16                    THE COURT:  Okay.  I'm pretty sure I wasn't the

17   judge.

18                    Also, since whatever -- I mean, maybe this is not

19   relevant since you don't remember much about it, but obviously

20   to the extent you got instructions on the law in that case,

21   you will just put that aside, this is a different case.

22                    THE PROSPECTIVE JUROR:  Mm-hmm.

23                    THE COURT:  Okay.  Great.

24                    And then I also see that your grandfather was a

25   police officer.

JURY SELECTION        329

1        Was that in New York City, or was that out on Long

2  Island?

3        THE PROSPECTIVE JUROR:  It was on Long Island, but I

4  also never actually met him.  He died before I was born.

5        THE COURT:  Oh, I see.  Okay.  Okay.

6        All right.  Now, some of the principles that we

7  talked about in the larger courtroom, I just want to go over

8  it with you.

9        The first is that Mr. Kelly is presumed to be

10  innocent, and it's the Government that has the burden to prove

11  his guilt beyond a reasonable doubt.  If you are selected as a

12  juror, I will give you further instructions on that concept,

13  but can you promise that you will follow the law on the

14  presumption of innocence?

15        THE PROSPECTIVE JUROR:  Yes.

16        THE COURT:  And will you follow all of my

17  instructions on the law?

18        THE PROSPECTIVE JUROR:  Yes.

19        THE COURT:  And, also, as I told you earlier this

20  morning, there's to be no researching or looking anything up

21  about the case at all or, obviously, commenting on it on

22  social media and things like that.

23        Do you promise me that you will follow that

24  instruction?

25        THE PROSPECTIVE JUROR:  Yes.

GA0657

JURY SELECTION                                    330

```
 1              THE COURT:  And if you are selected as a juror in

 2    this case, do you promise that you will be fair and impartial

 3    to both sides?

 4              THE PROSPECTIVE JUROR:  Yes.

 5              THE COURT:  All right.

 6              Thank you so much.

 7              Ms. Greene will give you some further directions.

 8              (The prospective juror exits.)

 9              (The prospective juror approaches.)

10              THE COURT:  All right.  This is Juror Number 200.

11              Good afternoon.

12              How are you doing?

13              THE PROSPECTIVE JUROR:  I'm doing fine.

14              How are you?

15              THE COURT:  Good.  Fine, thank you.

16              So I've gone through your questionnaire, and I have

17    a couple of additional questions for you.  I'm just going to

18    start with that piece of paper that has some names on it -- is

19    it working?

20              THE PROSPECTIVE JUROR:  Yeah.

21              THE COURT:  -- and those are just people who might

22    testify or whose names might be mentioned during the course of

23    the trial.

24              Any of those names familiar to you?

25              THE PROSPECTIVE JUROR:  No.
```

JURY SELECTION                              331

```
 1              THE COURT:  Okay.  And you are doing some seasonal

 2   work, and you're retired from your position as a financial

 3   analyst; is that right?

 4              THE PROSPECTIVE JUROR:  Correct.

 5              THE COURT:  How long did you have that job?

 6              THE PROSPECTIVE JUROR:  The financial analyst?

 7              THE COURT:  Yes.

 8              THE PROSPECTIVE JUROR:  Twenty-eight years.

 9              THE COURT:  And then one of the things that you do

10   in your spare time is coach junior football; is that right?

11              THE PROSPECTIVE JUROR:  That's correct.

12              THE COURT:  How old are those children?

13              THE PROSPECTIVE JUROR:  Well, our -- our town has a

14   5- to 12-year-old program, so...

15              THE COURT:  All right.

16              What else do you like to do in your spare time?

17              THE PROSPECTIVE JUROR:  Well, I'm out in the

18   backyard a lot, play a little golf.

19              THE COURT:  Retirement is good?

20              THE PROSPECTIVE JUROR:  Retirement is good.

21              THE COURT:  Now, I see that you've got some family

22   members who are in law enforcement as well as a friend.

23   You've got a nephew who is a police officer; is that NYPD?

24              THE PROSPECTIVE JUROR:  No.

25              THE COURT:  Out in Long Island?
```

JURY SELECTION                                    332

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Okay.  And another friend who is also an

3  officer; is that right?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  And anything about those relationships

6  that makes you think you couldn't be fair and impartial in

7  this case?

8          THE PROSPECTIVE JUROR:  No, not at all.

9          THE COURT:  Okay.  And then your niece is a DEA

10 agent; is that right?

11         THE PROSPECTIVE JUROR:  Well, when I -- when I

12 filled it out, I went to the person as I was leaving, I said,

13 I'm not really sure if she's going from DEA to something else

14 to something else, but --

15         THE COURT:  Okay.

16         THE PROSPECTIVE JUROR:  -- and she said it didn't

17 make any difference.

18         THE COURT:  Okay.  And I take it that there's

19 nothing about that relationship that would affect your ability

20 to be fair and impartial?

21         THE PROSPECTIVE JUROR:  No, not at all.

22         THE COURT:  And you spent some time on a grand jury.

23 Was that in state court?

24         THE PROSPECTIVE JUROR:  No.  It was here.

25         THE COURT:  In this building?

1              THE PROSPECTIVE JUROR:  I'm not sure it was this

2     building; it was a long time ago.

3              THE COURT:  I see.

4              THE PROSPECTIVE JUROR:  Probably in the late '70s,

5     if you know anything about the nursing home scandals --

6              THE COURT:  Yes.

7              THE PROSPECTIVE JUROR:  -- back then.  I was on that

8     grand jury.

9              THE COURT:  Obviously that's a little while ago.

10             THE PROSPECTIVE JUROR:  It's a while ago, yes.

11             THE COURT:  Anything about that experience that

12    would make it hard for you to be fair and impartial in this

13    case?

14             THE PROSPECTIVE JUROR:  No, not at all.

15             THE COURT:  All right.

16             You will hear some evidence in this case having to

17    do with sexual activity between people of the same sex.

18             Anything about that fact that would make it hard for

19    you to be fair and impartial?

20             THE PROSPECTIVE JUROR:  No.

21             THE COURT:  Do either of the lawyers have any

22    questions for this juror?

23             MS. GEDDES:  No, Judge.

24             THE COURT:  And none from you, Mr. Cannick?

25             MR. CANNICK:  No.

GA0661

JURY SELECTION                              334

1          THE COURT:  Thank you so much.  Ms. Greene will give

2   you some additional directions about where to go, okay?

3          THE PROSPECTIVE JUROR:  Okay.  Thank you.

4          THE COURT:  Thanks a lot.

5          (The prospective juror exits.)

6          (The prospective juror approaches.)

7          THE COURT:  This is Juror Number 201.

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Thank you so much.

10          THE PROSPECTIVE JUROR:  You're welcome.

11          THE COURT:  So good afternoon to you.

12          THE PROSPECTIVE JUROR:  Good afternoon.

13          THE COURT:  I just have some additional questions in

14   addition to the questionnaire that you filled out.

15          The first has to do with that piece of paper.  Those

16   are names of people whose names might come up during the

17   trial, perhaps they will testify.

18          Any of those names familiar to you?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  Okay.  And you wrote in your

21   questionnaire that -- I think it was your family -- your

22   parents -- or is it your in-laws who had the store in

23   Chinatown?

24          THE PROSPECTIVE JUROR:  Yes.  It's in-laws.

25          THE COURT:  In-laws, okay.

1          You said they were robbed multiple times; is that

2    right?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  And was one of them stabbed?

5          THE PROSPECTIVE JUROR:  Well, it's cut, cut.

6    Robbery involved a knife --

7          THE COURT:  Okay.

8          THE PROSPECTIVE JUROR:  -- and so they, kind of,

9    like -- it's a struggle, and so my mother-in-law was cut in

10   the arm.

11         THE COURT:  Okay.  I'm sorry to hear that.

12         THE PROSPECTIVE JUROR:  No problem.

13         THE COURT:  Nobody was ever arrested for any of

14   those; is that right?

15         THE PROSPECTIVE JUROR:  No.  They never really

16   reported to the police.

17         THE COURT:  I see.

18         THE PROSPECTIVE JUROR:  Yeah, it's 30-some years

19   ago, so they just, like, try to -- not life-threatening, so

20   they just, like, let it go because they been seeing those

21   robbery many, many times already.  So, yeah, they, kind of,

22   like, just deal with it and let it go.

23         THE COURT:  I see.

24         Is there anything about the fact that your in-laws

25   had those experiences that would make it hard for you to be

JURY SELECTION                                          336

1   fair and impartial in this case?

2            THE PROSPECTIVE JUROR:  I don't believe so.

3            THE COURT:  Obviously, it's very different, but I

4   just want to make sure that you won't hold whatever happened

5   to your in-laws against the defendant in this case.

6            THE PROSPECTIVE JUROR:  Well, I don't think they are

7   related in any way, so...

8            THE COURT:  Okay.  So you can put that aside; is

9   that right?

10           THE PROSPECTIVE JUROR:  Yes.

11           THE COURT:  During the course of the trial, you will

12  hear some evidence having to do with sexual activity among

13  people who are of the same sex.

14           Is there anything about that that would make it hard

15  for you to be fair and impartial?

16           THE PROSPECTIVE JUROR:  I don't think so.

17           THE COURT:  Okay.  And when you say you don't think

18  so, can you be positive that that won't be a difficulty for

19  you?

20           THE PROSPECTIVE JUROR:  Well, personally, I do not

21  believe in same-sex sexual activities, but I don't hold

22  grudges or have any, like, negative opinion about them because

23  I know everyone is different.

24           THE COURT:  Okay.

25           THE PROSPECTIVE JUROR:  So, to me, I don't think

JURY SELECTION                                    337

1   that will affect me, but it's just personally, I will not --

2   yeah.

3            THE COURT:  All right.  Let me just ask you a

4   slightly different way.

5            You know, just in general, if you were to, you know,

6   come into a trial and have certain feelings about -- I mean,

7   everybody has personal feelings and opinions about things.

8   The key is whether they will affect you in assessing the case;

9   and my question to you is, you have these personal beliefs, is

10  that something that would cause you to favor one side or the

11  other?

12           THE PROSPECTIVE JUROR:  I don't think it will affect

13  me to favor one side or the other.

14           THE COURT:  Okay.  And can you be positive about

15  that?

16           THE PROSPECTIVE JUROR:  Yes.

17           THE COURT:  Okay.  Let me see if either side has any

18  additional questions for this juror.

19           MR. CANNICK:  Nothing for the defense.

20           THE COURT:  All right.  I want to review a couple of

21  other things we talked about earlier this morning, the

22  presumption of innocence; that Mr. Kelly is presumed to be

23  innocent, and the Government has to prove his guilt beyond a

24  reasonable doubt.  That's something that I will, of course,

25  explain in much more detail if you are selected as a juror,

GA0665

1    but I want to make sure that that's a principle that you can

2    follow.

3              THE PROSPECTIVE JUROR:  Yes, absolutely.

4              THE COURT:  All right.  And then, also, do you

5    promise that you will follow all of my instructions on the

6    law?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  And then, of course, one of those

9    instructions is that you not do any research on the case or

10   look anything up.

11             Do you promise you won't do that?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Finally, if you are selected as the

14   juror in this case, do you promise that you will be fair and

15   impartial to both sides?

16             THE PROSPECTIVE JUROR:  Yes, I will do my best.

17             THE COURT:  All right.  Well, will you --

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Okay.  The reason I'm just making

20   positive is because we have to be absolutely certain that --

21   in every case -- that a juror can commit to be absolutely fair

22   and impartial to both sides.

23             Can you do that?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  Okay.  Thank you so much.

JURY SELECTION                                    339

1              THE PROSPECTIVE JUROR:  I just want to bring up one

2    thing.  When you mentioned doing research, but I did not

3    research the case, but I did research -- searched up the name

4    of the defendant.

5              THE COURT:  Yes.

6              THE PROSPECTIVE JUROR:  Because it sounds familiar,

7    so, yeah, so -- but I didn't research anything regarding the

8    case.

9              THE COURT:  So when you say you looked up his name,

10   what did you do, Google it?

11             THE PROSPECTIVE JUROR:  I went to You Tube and found

12   out that he was a singer, and he has a song that he sing

13   that's one of my favorite.

14             THE COURT:  Which song is that?

15             THE PROSPECTIVE JUROR:  It's "I Believe I Can Fly."

16             THE COURT:  Did you do anything other than listen to

17   the music?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  Okay.  All right.

20             Why don't you go with Ms. Greene, okay, and she'll

21   tell you where to go next.

22             (The prospective juror exits.)

23             (The prospective juror approaches.)

24             THE COURT:  And this is Juror Number 202.

25             Good afternoon.

*Denise Parisi, RPR, CRR*
*Official Court Reporter*

JURY SELECTION                                          340

1                   THE PROSPECTIVE JUROR:  Good afternoon.

2                   THE COURT:  I don't want to ask you about that paper

3       just yet, I want to ask you something else.

4                   You have told us that you've got plans at the end of

5       the month, you've taken off some time from work so you can be

6       with your family; is that right?

7                   THE PROSPECTIVE JUROR:  Yes.

8                   THE COURT:  Do you have people coming in from out of

9       town?

10                  THE PROSPECTIVE JUROR:  They're coming from out of

11      state.

12                  THE COURT:  I see.

13                  So that's August 25th and 26th, so that's going to

14      be while the trial is going on.  Is that something that you

15      can reschedule, or have you made special plans --

16                  THE PROSPECTIVE JUROR:  Actually, my grandfather is

17      going to be coming, so it's going to be hard to rearrange.

18                  THE COURT:  Okay.  I see.

19                  So I don't want to get -- and neither do the

20      parties -- want to interfere with your time with your family,

21      so I'm going to excuse you, okay?

22                  THE PROSPECTIVE JUROR:  All right.

23                  THE COURT:  Okay.  Enjoy your time with your family.

24                  THE PROSPECTIVE JUROR:  Thank you, Your Honor.

25                  (The prospective juror exits.)

JURY SELECTION                                    341

```
 1              (The prospective juror approaches.)

 2              THE COURT:  So this is Juror Number 206.

 3              First of all, good afternoon.

 4              THE PROSPECTIVE JUROR:  Good afternoon.  Sorry.

 5              THE COURT:  That's all right.

 6              My first question to you is that you wrote on your

 7     questionnaire that you weren't certain about whether you would

 8     be paid --

 9              THE PROSPECTIVE JUROR:  I've checked with them since

10     then, and I will be.

11              THE COURT:  Okay.  So that's good to know.

12              All right.  Now you've got that piece of paper.

13     That's just some names of some people who might testify or who

14     might be mentioned; and the question is, are you familiar with

15     any of them?

16              THE PROSPECTIVE JUROR:  Absolutely not.

17              THE COURT:  You also said you like to knit in your

18     spare time.

19              THE PROSPECTIVE JUROR:  Yes.

20              THE COURT:  Any other things that you like to do

21     when you've got some free time?

22              THE PROSPECTIVE JUROR:  I'm boring.  I knit, I

23     crochet, I read, I spin -- not on a bicycle -- I spin wool

24     into yarn.

25              THE COURT:  Oh, really, that doesn't sound boring.
```

JURY SELECTION                                              342

1   That sounds very nice.

2           You also said that you read a little bit about the

3   case having to do with something that happened a while ago.

4           Is there anything that you've read or heard about

5   the case that would affect your ability to be fair and

6   impartial in this case?

7           THE PROSPECTIVE JUROR:  No.  I really haven't heard

8   much of anything about it except what I wrote down.  I don't

9   do news very much and I don't read newspapers.

10          THE COURT:  To the extent that you heard anything,

11  would you be able to put that aside if you're selected as a

12  juror in this case?

13          THE PROSPECTIVE JUROR:  Absolutely.

14          THE COURT:  Now, you are going to hear evidence

15  during the course of the case that involves testimony and some

16  exhibits that relate to sexual activity among people of the

17  same sex.

18          Anything about that that would make it hard for you

19  to be fair and impartial?

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  Okay.

22          All right.  Do any of the lawyers have any questions

23  for this juror?

24          MS. GEDDES:  No, Your Honor.

25          MR. CANNICK:  No, Your Honor.

GA0670

JURY SELECTION                                    343

 1          THE COURT:  All right.

 2          Just a couple of more questions for you really just

 3  to review a couple of things.  We talked about this in the

 4  ceremonial courtroom, but this is just a reminder that

 5  Mr. Kelly is presumed to be innocent and it's the Government

 6  that has the burden of proving his guilt beyond a reasonable

 7  doubt.  That's a basic principle of criminal law.  I will give

 8  you some more instruction on that if you are selected as a

 9  juror, but can you promise me that you will follow that

10  principle?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Will you also promise to follow all of

13  my instructions on the law?

14          THE PROSPECTIVE JUROR:  Yes.

15          THE COURT:  And I know you don't watch the news very

16  much or anything like that.

17          Do you also promise not to do any research on the

18  case?

19          THE PROSPECTIVE JUROR:  Oh, no, not at all.  As soon

20  as I got the questionnaire, I just stopped doing it, going in

21  on anything.  I don't want to be at all -- you know, I don't

22  want to hear anything about it.

23          THE COURT:  Okay.  Well that's a good way to be.

24          And then, finally, if you are selected as a juror in

25  this case, do you promise that you will be fair and impartial

GA0671

1   to both sides.

2           THE PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Okay.

4           Ms. Greene is going to take you to where it is you

5   are supposed to go.

6           Thank you so much.

7           THE PROSPECTIVE JUROR:  Thank you.

8           (The prospective juror exits.)

9           MR. CANNICK:  Your Honor, wait.  Before we get

10  another prospective juror, can we approach?

11          THE COURT:  Sure.

12          (Sidebar.)

13          (Continued on next page.)

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                    345

1          (Sidebar conference held on the record out of the

2     hearing of the prospective juror.)

3          MR. CANNICK:  My client -- we got some

4     information -- and I don't know if the Court has any control

5     over this, but it's coming from the overflow room that, I

6     guess they see my client on video, and they're reporting that

7     he is -- firstly, they are reporting about his posture and

8     then -- which we have no problems with, but they are reporting

9     that he is writing and taking notes, and it strikes them as

10    being odd and somewhat disingenuous since he's supposedly

11    illiterate.  We are just concerned of how -- the image that

12    might be being portrayed by the media about my client at this

13    juncture.  I don't know if you have any control over anything

14    that they write.

15         THE COURT:  I don't have any control over what your

16    client is doing.  I mean --

17         MR. CANNICK:  He's trying to take notes the best way

18    he can.

19         THE COURT:  That's fine, but, I mean, I don't know

20    what you would suggest that I do.

21         MR. CANNICK:  I'm just --

22         THE COURT:  I know, but there's really nothing I can

23    do about it.  I mean, we have the overflow room, you know, so

24    that the public can have access, and part of that is seeing

25    the defendant.  I mean, I'm not sure how deeply we have to go

GA0673

SIDEBAR CONFERENCE                              346

1    into this, but I've been struck that throughout the course of

2    the trial people are constantly reminding me that he can't

3    read and write, which is fine.

4              MR. CANNICK:  Right.  He really can't.

5              THE COURT:  I believe it.  Why do people keep

6    telling me this?  Or do I not need to know?

7              MR. CANNICK:  I don't think you need to know.

8              THE COURT:  Okay.  All right.

9              MR. CANNICK:  What I would like -- I just want an

10   opportunity before you start questioning another juror so I

11   can let him know what my impressions are and -- because I

12   don't think that it's something that I -- I think amplifying

13   it would cause even greater harm to him, so --

14             THE COURT:  I mean, I guess I'm still a little bit

15   confused.  A, there's nothing I can do --

16             MR. CANNICK:  Right.

17             THE COURT:  Do you want to speak to him right now?

18             MR. CANNICK:  Yes, I'm going to speak to him right

19   now --

20             THE COURT:  Sure.

21             MR. CANNICK:  -- and just let him know that --

22             THE COURT:  Stop writing.

23             MR. CANNICK:  No -- if you were to mention it, then

24   they would report that he's concerned about it, and it would

25   get even more attraction.

SIDEBAR CONFERENCE                    347

1          THE COURT:  I mean, he is sitting here in court.

2          MR. CANNICK:  Court TV.

3          THE COURT:  Who is --

4          MR. CANNICK:  People are texting.

5          THE COURT:  Texting who?

6          MR. CANNICK:  The attorneys.

7          THE COURT:  Okay.

8          MR. CANNICK:  Because Court TV just reported on it,

9   and someone sent a message to us.

10         THE COURT:  I mean, my advice, for whatever it's

11  worth, having done this a few times before, is don't pay it

12  any mind.

13         MR. CANNICK:  I know.

14         THE COURT:  It's a fruitless pursuit, but I don't

15  really understand what you're asking me to do.  I can't do

16  anything.  Stop reporting.

17         MS. GEDDES:  Do you want just a minute?

18         MR. CANNICK:  Yes.  Could we?

19         THE COURT:  What?

20         MS. GEDDES:  I think he just wants a minute --

21         THE COURT:  Sorry.

22         MS. GEDDES:  He wants to talk to his client for a

23  minute before we -- I think we're done.

24         THE COURT:  Oh, we're done, okay.

25         (Sidebar end.)  (Continued on following page.)

JURY SELECTION                                      348

1           (In open court.)

2           THE COURT:  We'll be right with you.  Okay?

3           MR. CANNICK:  Thank you, your Honor.

4           THE COURT:  Okay.  This is Juror No. 210; is that

5    right?

6           THE PROSPECTIVE JUROR:  Yes.

7           THE COURT:  Good afternoon?

8           THE PROSPECTIVE JUROR:  Good afternoon.

9           THE COURT:  How are you doing?

10          THE PROSPECTIVE JUROR:  I'm fine.

11          THE COURT:  Good.  So I'm going to ask you just a

12   couple of different questions about your questionnaire.

13   There's also -- let's just start with the piece of paper

14   that's in front of you.

15          That's just a couple of names a few names of people

16   who may testify or who may be mentioned during the course of

17   the trial.

18          Are you familiar with any of those people?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  Okay.  And you have been a juror before;

21   is that right?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  How long ago was that?

24          THE PROSPECTIVE JUROR:  I think around five or six

25   years ago.

JURY SELECTION                                          349

```
 1                THE COURT:  In state court?

 2                THE PROSPECTIVE JUROR:  Yes.

 3                THE COURT:  And anything about that experience that

 4     makes you think that you can be fair and impartial in this

 5     case?

 6                THE PROSPECTIVE JUROR:  No.

 7                THE COURT:  Okay.  And tell me a little bit -- don't

 8     tell me where you work -- but you are a team leader in a call

 9     center; is that right?

10                THE PROSPECTIVE JUROR:  Yes.

11                THE COURT:  And what does that involve?  What do you

12     do?

13                THE PROSPECTIVE JUROR:  I usually work with death

14     benefits.  I am helping beneficiaries with death benefit

15     questions.

16                THE COURT:  Death benefit questions?

17                THE PROSPECTIVE JUROR:  Yes.

18                THE COURT:  In your spare time, you play some chess?

19                THE PROSPECTIVE JUROR:  Yes.

20                THE COURT:  What else do you like to do in your

21     spare time?

22                THE PROSPECTIVE JUROR:  I am usually, like, family

23     man.  I have a daughter she's 22 and we spend a lot of time

24     with my daughter.

25                THE COURT:  I see.  Okay.  She's in graduate school?
```

JURY SELECTION                                          350

1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  Okay.  Now, during the course of the

3     trial, you will hear evidence about sexual activity between

4     people of the same sex.  Anything about that that would cause

5     you to -- that would make you unable to be fair and impartial?

6              THE PROSPECTIVE JUROR:  No.

7              THE COURT:  Okay.  Do either of the lawyers have any

8     questions for this gentleman?

9              MR. CANNICK:  One second, please, your Honor.

10             THE COURT:  While you're waiting, I do have an

11    additional question for you.

12             With respect to police officers and people who are

13    in law enforcement.  The rule is that we evaluate police

14    officers just like we evaluate any other witness.  I know that

15    you indicated in your questionnaire that you believe police

16    officers have to follow the rule of law in their profession.

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  Which is true.  Do you believe that

19    police officers are more likely to be truthful than other

20    people?

21             THE PROSPECTIVE JUROR:  I just believe that they

22    will be under oath.  But because of their profession they have

23    more, like, experience with crime and more observance than

24    regular people.

25             THE COURT:  But in terms of whether or not somebody

JURY SELECTION                           351

```
 1   who is in law enforcement would be more or less likely to lie

 2   than someone else?

 3            THE PROSPECTIVE JUROR:  No.

 4            THE COURT:  Do you have an opinion about that?

 5            THE PROSPECTIVE JUROR:  No.

 6            THE COURT:  So you don't think that police

 7   officers --

 8            THE PROSPECTIVE JUROR:  No, I don't believe that

 9   they will lie more than any other people.

10            THE COURT:  Or less?

11            THE PROSPECTIVE JUROR:  Or less, yes.

12            THE COURT:  So let me just make sure I understand,

13   I'm sorry.

14            So police officers and law enforcement officers come

15   in all shapes and sizes just like any other profession, there

16   are good ones and bad ones about some that fall this between.

17            My question to you, is, do you assume that somebody

18   works in law enforcement that that person is more likely to

19   tell the truth?

20            THE PROSPECTIVE JUROR:  Not really.

21            THE COURT:  Not really?

22            THE PROSPECTIVE JUROR:  Equal.  Some police officers

23   will tell the truth, some will not.  So based on the evidence,

24   I will make a decision.

25            THE COURT:  I see.  Okay.  Now, do either side have
```

GA0679

JURY SELECTION                                              352

1    any additional questions for this gentleman?

2              MR. CANNICK:  No, your Honor.

3              THE COURT:  Okay.  I just want to review a couple of

4    things with you before we send you to your next destination

5    and that is starting with the presumption of innocence; that

6    Mr. Kelly is presumed to be innocent, and it is the Government

7    that has the burden to prove him guilty beyond a reasonable

8    doubt it's one shouldn't basic principles of our criminal law.

9    I'll give you more instructions with that if you were selected

10   as a juror, but do you promise that you will follow that

11   principle?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  And do you also promise that you will

14   follow all of my instructions on the law?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  And one of those instruction social

17   security that you do not do any research or look or do any

18   kind of search about information about the trial.

19             Do you promise that you will follow that

20   instruction?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  And finally, if you are selected as a

23   juror, do you promise to be fair and impartial to both sides?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  All right.  Thank you so much.

GA0680

JURY SELECTION                                    353

1    Ms.  Greene is going to give you directions about where to go.

2                (The prospective juror exits from the courtroom.)

3                (The prospective juror enters the courtroom.)

4                THE COURT:  Just follow Ms.  Greene.

5                COURTROOM DEPUTY:  Have a seat in the first chair.

6                THE COURT:  This is Juror No. 216.  Good afternoon.

7                THE PROSPECTIVE JUROR:  Good afternoon.

8                THE COURT:  How are you doing?

9                THE PROSPECTIVE JUROR:  I'm good.

10               THE COURT:  I'm just going to ask you a couple of

11   questions about your questionnaire.

12               And are you currently working at net now?

13               THE PROSPECTIVE JUROR:  I'm retired.

14               THE COURT:  I was working is that?

15               THE PROSPECTIVE JUROR:  I was working part time.

16               THE COURT:  Is that when you were the security

17   guard?

18               THE PROSPECTIVE JUROR:  Yes.

19               THE COURT:  What do you like to do in your spare

20   time?

21               THE PROSPECTIVE JUROR:  I'm helping my grandchildren

22   right now.

23               THE COURT:  How many do you have?

24               THE PROSPECTIVE JUROR:  Five.

25               THE COURT:  Okay.  All different ages?

GA0681

JURY SELECTION                                            354

```
 1              THE PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  I see.  I see.  Anything else you like

 3   to do in your spare time?

 4              THE PROSPECTIVE JUROR:  Travel, you know, COVID shut

 5   everything down, so it's like trying to reinvent myself,

 6   reboot myself.

 7              THE COURT:  I see.  You got two children.  What do

 8   they do for a living?

 9              THE PROSPECTIVE JUROR:  My daughter works for HR and

10   my son he's an entrepreneur.

11              THE COURT:  I see?

12              THE PROSPECTIVE JUROR:  He's a bouncer in clubs like

13   that.

14              THE COURT:  Okay.  You wrote in your questionnaire

15   that you know something about the case and that you wrote that

16   you had heard that Mr. Kelly was engaging in illegal sexual

17   activity with a minor and that allegations have come up about

18   him in the past.

19              Obviously, if you were a juror in this case you

20   would have to disregard all of those things that you might

21   have heard.

22              Is that something that you're capable of doing?

23              THE PROSPECTIVE JUROR:  Yes.

24              THE COURT:  Okay.  And that's because, you know, we

25   don't -- it wouldn't be fair to assume walking in without
```

JURY SELECTION                                      355

1   hearing any evidence that a person was guilty of something

2   just based on something that you either read or you heard.

3            So can you put those things aside?

4            THE PROSPECTIVE JUROR:  Yes.

5            THE COURT:  Okay.  Now, you've got a piece of paper

6   that has some names on it.  Those are people who might help or

7   whose names might be mentioned during the trial.  Any of those

8   names look familiar to you?

9            THE PROSPECTIVE JUROR:  No, they don't.

10           THE COURT:  Okay.  Now, you also wrote in your

11  questionnaire that you've got a friend or family member who

12  was detained in prison.  How long ago did that happen?

13           THE PROSPECTIVE JUROR:  About three years ago.

14           THE COURT:  Okay.  And that sounds like, from the

15  way you've written it in the questionnaire, that the person

16  was arrested for nothing; is that right?

17           THE PROSPECTIVE JUROR:  I think it's nothing, but

18  yeah.

19           THE COURT:  Okay.  Does that experience or having

20  known somebody who's gone through something like that, would

21  that affect your ability to be fair and impartial in this

22  case?

23           THE PROSPECTIVE JUROR:  It shouldn't affect me, no.

24           THE COURT:  Okay.  Are you sure about that?

25           THE PROSPECTIVE JUROR:  Yeah.  From the instructions

JURY SELECTION                                               356

1  that you gave us earlier, you know, you got to follow what's

2  put before us.

3            THE COURT:  That's right.  But part of this process

4  is just making sure that, you know, all of us have experiences

5  in our lives that shape us and that we hold certain feelings

6  and beliefs and the part of this process is to make sure that

7  whatever those beliefs or feelings are that they won't

8  influence you in your determination about the evidence in this

9  case?

10           THE PROSPECTIVE JUROR:  Right.

11           THE COURT:  Is that something you're comfortable

12  doing?

13           THE PROSPECTIVE JUROR:  Yes.

14           THE COURT:  Okay.  You've been a juror before; is

15  that right?

16           THE PROSPECTIVE JUROR:  Yes.

17           THE COURT:  How long ago was that?

18           THE PROSPECTIVE JUROR:  I can't even remember.  It

19  was civil.

20           THE COURT:  Okay.  But you reached a verdict?

21           THE PROSPECTIVE JUROR:  Yes, ma'am.

22           THE COURT:  Okay.  Do either lawyers have any

23  additional questions for this juror?

24           MR. CANNICK:  No, your Honor.

25           MS. GEDDES:  No, your Honor.

1          THE COURT:  All right.  I'm just going to review

2     some those principles that we discussed, or some of those

3     things that we discussed.  You know what, I don't think I

4     actually asked the additional questions, so I'm sorry.

5          You're going do hear evidence in this case that has

6     to do with sexual activity between people of the same sex.

7          Anything about that circumstance that would make it

8     hard for you to be fair and impartial?

9          THE PROSPECTIVE JUROR:  No.

10          THE COURT:  Okay.  As I said before, Mr. Kelly is

11     presumed to be innocent and the Government has to prove his

12     guilt beyond a reasonable doubt.  That's a consent that I'll

13     talk to you about in more detail if you were selected as a

14     juror.

15          But is that a principle that you promise to follow?

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  And will you also promise to follow my

18     instructions on the law?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  And one of those instructions is not to

21     look up anything about the case?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  You promise you won't do that?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Okay.  And if you're selected as a

GA0685

JURY SELECTION                                          358

1  juror, will you be fair and impartial to both sides?

2               THE PROSPECTIVE JUROR:  Yes.

3               THE COURT:  All right.  Thank you so much.

4  Ms.  Greene is going to direct you.

5               (The prospective juror exits from the courtroom.)

6               (The prospective juror enters the courtroom.)

7               THE COURT:  This is Juror No. 218.  Good afternoon.

8               THE PROSPECTIVE JUROR:  Good afternoon.

9               THE COURT:  How are you doing?

10              THE PROSPECTIVE JUROR:  I'm doing great.  Thank you

11 for asking.

12              THE COURT:  Good.  I'm just going to ask you a

13 couple of questions about your questionnaire.

14              Before I do that, there's a list of names on that

15 piece of paper.  Those are people whose names might be

16 mentioned or who might testify.

17              Do any of those names look familiar to you?

18              THE PROSPECTIVE JUROR:  Not at all.

19              THE COURT:  Okay.  You're a private client banker;

20 is that right?

21              THE PROSPECTIVE JUROR:  That's correct.

22              THE COURT:  How long have you done that job?

23              THE PROSPECTIVE JUROR:  The job?  12 years with the

24 company.

25              THE COURT:  Okay.  And what does that involve?

JURY SELECTION                                     359

1          THE PROSPECTIVE JUROR:  Opening bank accounts,

2  managing a portfolio of clients with over $150,000 just to

3  open an account, refer to a specialist for mortgage.  Things

4  like that.

5          THE COURT:  And I was going to ask you what are the

6  things you do in your spare time but I see you have a very

7  little baby; is that right?

8          THE PROSPECTIVE JUROR:  Yes, that's correct.

9          THE COURT:  And so, that probably takes up a lot of

10  your time?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  And you've got a third grader, too?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Right.  Anything else that when you do

15  have spare time that you like to do?

16          THE PROSPECTIVE JUROR:  Not at all.  I just spend

17  time with them.

18          THE COURT:  Okay.  And you told us that you had an I

19  guess a brother-in-law who was convicted of narcotics-related

20  offense; is that right?

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  And your sister was initially accused in

23  participating in that?

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  But there were no charges against her?

GA0687

JURY SELECTION                                           360

1            THE PROSPECTIVE JUROR:  Dismissed, yes.

2            THE COURT:  Anything about that experience that

3    would make it hard for you to be fair and impartial?

4            THE PROSPECTIVE JUROR:  Not at all.

5            THE COURT:  All right.  And you have a sister-in-law

6    who is a lawyer; is that right?

7            THE PROSPECTIVE JUROR:  Yes.

8            THE COURT:  And where is she a lawyer?

9            THE PROSPECTIVE JUROR:  Paris.

10           THE COURT:  Sounds nice.  In France, right?

11           THE PROSPECTIVE JUROR:  Yes.

12           THE COURT:  Do you know what kind of law that she

13   practices?

14           THE PROSPECTIVE JUROR:  Contracts.

15           THE COURT:  Okay.  And you have a cousin who is a

16   judge of criminal cases?

17           THE PROSPECTIVE JUROR:  Yes.

18           THE COURT:  That's not here in the United States?

19           THE PROSPECTIVE JUROR:  No, it's overseas.

20           THE COURT:  I see.  Okay.  Now, during the course of

21   this trial, you will hear evidence of sexual contact between

22   people of the same sex.  Anything about that that would make

23   it hard for you to be fair and impartial?

24           THE PROSPECTIVE JUROR:   Not at all.

25           THE COURT:  Okay.  Any questions for this juror.

JURY SELECTION                                    361

1           MR. CANNICK:  No.

2           THE COURT:  So just before we -- before I let you

3     go, I do want to just remind you of some important principles.

4     The first is that Mr. Kelly is presumed to be innocent and the

5     Government has to prove his guilt beyond a reasonable doubt.

6     If you're selected as a juror, do you promise that you will

7     follow that rule?

8           THE PROSPECTIVE JUROR:  Of course.

9           THE COURT:  And you also will -- do you also promise

10    that you'll follow all of my instructions on the law?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  And I've also directed that nobody do

13    any research about the case or anything like that.  Do you

14    promise to follow that direction?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  And if you are selected as a juror in

17    this case, do you promise that you'll give both sides a fair

18    trial?

19          THE PROSPECTIVE JUROR:  Of course.

20          THE COURT:  Okay.  All right.  Thank you so much?

21          THE PROSPECTIVE JUROR:  Thank you for your time.

22          THE COURT:  Ms.  Greene will show you where to go

23    next.

24          (The prospective juror exits from the courtroom.)

25          (The prospective juror enters the courtroom.)

JURY SELECTION                                    362

1          COURTROOM DEPUTY:  Have a seat in the first chair.

2    You can take off your mask if you would like.

3          THE COURT:  So this is Juror No. 228.  Can you just

4    bear with me just a second.  I've got so many pieces of paper

5    up here I've got to find the right one.

6          I have to apologize to you.  We're going to take

7    just a little break so I can get the right paperwork, okay?

8    All right.  So we'll see you in just a few minutes, okay?

9          I think Ms.  Greene will take you back to where you

10   were.

11         (The prospective juror exits from the courtroom.)

12         THE COURT:  All right.  So what a great time for a

13   break.  We're going to be about ten minutes and then we'll

14   resume.

15         MR. CANNICK:  Do you know what number where we are.

16         THE COURT:  46, I think.

17         MR. CANNICK:  We have 46.

18         MS. GEDDES:  Yes.  Okay.  What's the target.

19         THE COURT:  Well, sorry.  I think we're shooting for

20   49.  I don't know what responses we've got on maybe that's

21   something that we can check during the break to see if we hear

22   back from the jurors.  I want to make sure we have a cushion.

23   All right.  We'll be back with you in just a few minutes.

24         (Defendant exits from courtroom.)

25         (A recess in the proceedings was taken.)

JURY SELECTION                                363

```
 1                 (Defendant enters the courtroom.)

 2                 THE COURT:  Just before we continue, Juror No. 228

 3    is very concerned about the long commute and I'm not sure that

 4    it is worth our time.  She seems like she's very nervous and

 5    afraid, and so, I think she's also got a wedding coming up, so

 6    I think it probably makes more sense to excuse her.

 7                 Do both sides agree with that?

 8                 MR. FARINELLA:  This is juror 228, your Honor?

 9                 THE COURT:  Yes.

10                 MS. GEDDES:  No objection by the Government.

11                 MS. BLANK BECKER:  We do not, Judge, thank you.

12                 THE COURT:  So we'll excuse Juror No. 228.

13                 So we're going to move on to Juror No. 233.

14                 (A brief pause in the proceedings was held.)

15                 (The prospective juror enters the courtroom.)

16                 THE COURT:  This is Juror No. 233.  Good afternoon?

17                 THE PROSPECTIVE JUROR:  Good afternoon.

18                 THE COURT:  The first thing I want to ask you, has

19    it to do with your work travel?  You have something scheduled,

20    it sounds like, well, you tell me.  If we start testimony on

21    August 18th and the trial runs about four weeks, is that

22    something that you're going to be able to do?

23                 THE PROSPECTIVE JUROR:  It would be a hardship for

24    my co-workers.

25                 THE COURT:  I see?
```

GA0691

JURY SELECTION                                    364

1          THE PROSPECTIVE JUROR:  The trip is the middle of

2     September would be my first trip.  I'm forgetting the exact

3     date because I don't have any calendar.

4          THE COURT:  But is that something that would be a

5     hardship for you?

6          THE PROSPECTIVE JUROR:  I'll say a hardship for my

7     co-workers.

8          THE COURT:  You also said in your questionnaire that

9     you were not certain whether you would be compensated for jury

10    duty?

11         THE PROSPECTIVE JUROR:  I confirmed I would.

12         THE COURT:  You would be.  Okay.  So I'm just trying

13    to assess here.  I mean, if this were to run, well, I'd say

14    you're saying the middle of September.  If the case were to

15    run into the time that you're supposed to be traveling, is

16    that something that you're willing to live with?

17         THE PROSPECTIVE JUROR:  Again, I'd feel terrible for

18    my co-workers.  I work in a large company but a small team and

19    there's only five of us.  One will be going out on maternity

20    in that amount of time as well and one has just started this

21    week.

22         THE COURT:  I see.

23         THE PROSPECTIVE JUROR:  So we're a small team.

24         THE COURT:  Okay.  The thing about jury duty it's

25    usually inconvenient for someone, so I'm going to ask you to

Anthony D. Frisolone, FAPR,  RDR, CRR, CRI, CSR
Official Court Reporter

GA0692

1   persist, if you will.  Okay?  I'm going to ask you to stay

2   with us, okay?

3            THE PROSPECTIVE JUROR:  Okay.

4            THE COURT:  Well, I mean, as I say, if this is going

5   to be distracting you so much that you can't be fair during

6   the trial that's one thing.

7            Are you telling me that?

8            THE PROSPECTIVE JUROR:  I think I could be fair.

9   Again, I would just feel bad for my co-workers.

10           THE COURT:  Okay.  All right.  So you do -- you

11  manage events; is that right?

12           THE PROSPECTIVE JUROR:  Yes.  It goes by a few

13  different names.  I do logistics and events.  They're

14  different now.

15           THE COURT:  I bet.  And don't tell us what the

16  place -- what the name of the place is, but what kind of an

17  organization is it?

18           THE PROSPECTIVE JUROR:  It kind of covers a number

19  of things, but I -- it's a large company and my work I work

20  for the executives and it spans both corporate and

21  philanthropic.

22           THE COURT:  I see.  And you said that you've gotten

23  some information about this case and that because of what

24  you've read, you said it has skewed negatively and that causes

25  you to have a negative, a somewhat negative, impression about

GA0693

JURY SELECTION                                    366

1    Mr. Kelly.

2              My question to you, whether if you are selected as a

3    juror in this case, you could put aside any things you might

4    have heard about the case or impressions that you might have

5    formed based on what you read.

6              Do you think you can put it aside?  Any hesitation

7    about that?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  Okay.  Now, you also wrote that you

10   posted some, I don't know in what form, but you posted some

11   opinions having to do with Supreme Court appointments and

12   cases.  Is that related to the confirmation of a particular

13   justice?

14             THE PROSPECTIVE JUROR:  More for the death of a

15   particular justice.

16             THE COURT:  I see.  But, I mean, I don't think we

17   have to be secretive.  You're talking about Justice Ginsburg?

18             THE PROSPECTIVE JUROR:  I was.

19             THE COURT:  And just expressing --

20             THE PROSPECTIVE JUROR:  She was a hero of mine, so

21   related to that.

22             THE COURT:  And you also, in connection with your

23   work, you work with some security people who are retired

24   police officers, and that some are current police officers as

25   well; is that right?

GA0694

JURY SELECTION                                                    367

```
 1                THE PROSPECTIVE JUROR:  I think I wrote I believe
 2      that they're all retired now, but one or two might still have
 3      be kind of transitional at this point.
 4                THE COURT:  Anything about that?  The fact that you
 5      work for people who used to work for the police department.
 6      Anything about that that would make you feel that you couldn't
 7      be fair and impartial in this case?
 8                THE PROSPECTIVE JUROR:  No.
 9                THE COURT:  Okay.  Now, during the course of this
10      trial, you will hear evidence and perhaps exhibits related to
11      sexual conduct among people who are the same sex.
12                Any problem listening to testimony like that?
13                THE PROSPECTIVE JUROR:  No.
14                THE COURT:  Okay.  There's also a list of names in
15      front of you and those are just some additional names in
16      addition to those names on the questionnaire and people whose
17      names might be mentioned or who might testify during the
18      course of the trial.
19                Are any of those names familiar to you?
20                THE PROSPECTIVE JUROR:  No.
21                THE COURT:  Okay.  Let me just check with the
22      lawyers to see if they have any additional questions.
23                MS. GEDDES:  (Nodding).
24                MR. CANNICK:  May we, your Honor?
25                THE COURT:  I think I heard it so I can ask the
```

GA0695

JURY SELECTION                                              368

1   question.

2              I think I also indicated on your questionnaire that

3   you know some people who have been assistant district

4   attorneys before?

5              THE PROSPECTIVE JUROR:  I don't know that they're

6   assistant district attorneys but have worked in the Brooklyn

7   D.A.'s office.

8              THE COURT:  In the Brooklyn D.A.'s office.  You just

9   don't know what capacity?

10             THE PROSPECTIVE JUROR:  I really wish I did.

11             THE COURT:  It doesn't actually matter.  The

12  question is whether or not there's anything about those

13  relationships that would make it hard for you to be fair and

14  impartial?

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  All right.  Anything else from either

17  side?

18             MS. GEDDES:  (Nodding).

19             THE COURT:  Okay.  I just want to go over a couple

20  of additional things.

21             One of them is the presumption of innocence which we

22  talked about earlier this morning.  That's a basic principle

23  of criminal law and that Mr. Kelly is presumed to be innocent,

24  and the Government has the burden do prove his guilt beyond a

25  reasonable doubt.

JURY SELECTION                                      369

```
 1              If you become a juror in the case, this is something

 2    that I will talk to you about in more detail.

 3              Do you promise that you will follow this rule of

 4    law?

 5              THE PROSPECTIVE JUROR:  I promise.

 6              THE COURT:  And do you also promise that you will

 7    follow my instructions on the law?

 8              THE PROSPECTIVE JUROR:  I promise.

 9              THE COURT:  And one of those instructions is that

10    you can't do any research on the case.

11              Do you promise that you'll follow that instruction?

12              THE PROSPECTIVE JUROR:  I promise as well.

13              THE COURT:  And if you are selected as a juror in

14    this case, do you promise to be fair and impartial to both

15    sides?

16              THE PROSPECTIVE JUROR:  Yes, I do.

17              THE COURT:  All right.  Ms.  Greene is going to give

18    you some additional direction.

19                   (The prospective juror exits from the courtroom.)

20                   (Continued on the next page.)

21

22

23

24

25
```

JURY SELECTION                                    370

1          THE COURT:  I just want to see the lawyers at the

2    side for just a moment.

3              (Continued on the next page.)

4              (Sidebar conference.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                          371

1           (The following occurred at sidebar.)

2           THE COURT:  So with respect to this group of jurors,

3    I sort of changed my plans, because the marshals want to be

4    able to give them some instructions.

5           So what we're going to do is I'm going to have all

6    of the qualified jurors brought back to the ceremonial

7    courtroom, and I'm going to give them just a few final

8    instructions.

9           We'll bring them back tomorrow and we'll swear --

10   and we'll to do the picking and the swearing tomorrow.

11          MS. GEDDES:  Okay.

12          THE COURT:  This way if there's somebody who decides

13   they are having surgery or something like that, we can find

14   out.  But my plan is just to tell them it's show time.

15          So that's what I'm going to do.  So we won't be

16   doing selections today, we'll do them tomorrow.

17          MR. CANNICK:  Okay.

18          MS. GEDDES:  Okay.

19          MR. CANNICK:  Your Honor, just another question, it

20   may be a premature question, but the jury selection, are you

21   going to put them in the wheel and fill the box?

22          THE COURT:  No, it's going to be in the order that

23   they were.

24          MR. CANNICK:  Okay.

25          THE COURT:  So they were -- the jury clerks did the

SIDEBAR CONFERENCE                        372

1   assignment for everybody.  And I always have to look down, but

2   I have to see what order it is.  It goes like 3, 2.

3              MR. CANNICK:  Yes.  Yes, okay, just want to be sure.

4              (End of sidebar conference.)

5              (Continued on the next page.)

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

JURY SELECTION                                      373

1          (In open court.)

2          (Prospective Juror enters the courtroom.)

3          THE COURT:  Good afternoon.  How are you doing?

4          THE PROSPECTIVE JUROR:  Fine.

5          THE COURT:  This is Juror Number 248.

6          You are retired now; is that right?

7          THE PROSPECTIVE JUROR:  That's correct.

8          THE COURT:  And how long have you been retired?

9          THE PROSPECTIVE JUROR:  Well, the last -- let me see

10  19 -- it was just ten years, really.  I had a small two-month

11  gig back in 2014, and I didn't put that on the survey because

12  it was just a two-month thing that didn't work out, so my real

13  last job was in 2011.

14          THE COURT:  And you were in operations you said.  So

15  what did that entail?

16          THE PROSPECTIVE JUROR:  I was vice president

17  operations for software implementation for a direct marketing

18  firm.

19          And we implemented a new software, SOX compliant

20  software system, because it was a publicly-held company.

21          THE COURT:  Okay.

22          THE PROSPECTIVE JUROR:  And I had to train -- I had

23  to implement the entire system, migrate the old data from the

24  old system, and train the entire staff.

25          THE COURT:  I see.  Okay.  And now I -- you knew

JURY SELECTION                                374

1   Rosemary Clooney.  And so you collect her rare performances,

2   is that right, in your spare time?

3              THE PROSPECTIVE JUROR:  That's right.

4              THE COURT:  What else do you do in your spare time?

5              THE PROSPECTIVE JUROR:  I do a little eBay, very

6   little.

7              THE COURT:  What does that mean, like selling

8   things?

9              THE PROSPECTIVE JUROR:  Yeah, selling things that I

10  get at book fairs and things like that.  And I just recently

11  rescued a little cat.

12             THE COURT:  Okay.

13             THE PROSPECTIVE JUROR:  That I am caring for.  And

14  he's a nice guy and he deserves a good life.

15             THE COURT:  Okay.  All right.

16             Now you did say that you had heard something having

17  to do with this case on the news and -- but you haven't been

18  following it.

19             I think I spoke a little bit about this in the

20  ceremonial courtroom, but obviously if you're selected as a

21  juror in this case, you will have to put anything aside that

22  you might have heard and focus only on the evidence that you

23  hear in the case.

24             Can you do that?  Can you put aside any of those

25  things that you might have heard about the case?

GA0702

JURY SELECTION                                      375

```
 1              THE PROSPECTIVE JUROR:  Yes, your Honor.

 2              THE COURT:  Okay.  And then you had some family

 3   members with some pretty frightening experiences, it looks

 4   like.  A long tie ago, though.

 5              THE PROSPECTIVE JUROR:  Yes.

 6              THE COURT:  But your uncle was robbed at gunpoint

 7   and pistol-whipped.

 8              THE PROSPECTIVE JUROR:  Yes, he was.

 9              THE COURT:  And you said that the experience made

10   you more vigilant, more -- I guess paying more attention to

11   your surroundings.

12              Anything about that experience that would make it

13   hard for you to be fair and impartial in this case?

14              THE PROSPECTIVE JUROR:  No.

15              THE COURT:  Okay.  And then your brother was

16   involved in quite a frightening incident.

17              THE PROSPECTIVE JUROR:  By the way, Judge, I

18   mentioned -- I think that I put New York State DO, it's the

19   USDO.

20              THE COURT:  You wrote that.

21              THE PROSPECTIVE JUROR:  Oh, I did?

22              THE COURT:  Yes.

23              And so obviously that was, I'm sure, a frightening

24   experience for you and for him.

25              THE PROSPECTIVE JUROR:  And for my family members,
```

JURY SELECTION                                              376

1    too.

2              THE COURT:  I'm sure.

3              THE PROSPECTIVE JUROR:  We heard about it on the

4    news, and my mom got a call frantically because he hadn't come

5    home from work yet.  It happened on the mezzanine level when

6    you come in.  And he's up on the whatever floor, but it just

7    happens that that person who did the shooting, it was an

8    inter -- from what my brother told me, it was an interagency

9    case that he was resolving.  So this person had been an

10   employee of the government.

11             THE COURT:  I see.

12             THE PROSPECTIVE JUROR:  It was an inter kind of

13   case.  You see what I wrote he shot -- he was shooting.  I

14   think they ended up -- it was on the news, it was big.  The

15   officers, the court officers, ended up neutralizing him.

16             THE COURT:  They shot him, right?

17             THE PROSPECTIVE JUROR:  Yeah.

18             THE COURT:  Okay.

19             And anything about that experience that would make

20   it hard for you to be fair and impartial in this case?

21             THE PROSPECTIVE JUROR:  No, not at all.

22             THE COURT:  Okay.  This is sort of a related

23   question.

24             You, in answer to the questions about whether police

25   officers are more likely to tell the truth, you said you think

LINDA D. DANELCZYK, RPR, CSR, CCR
Official Court Reporter

JURY SELECTION                                            377

1   they have a higher degree because they're sworn -- a higher

2   degree of credibility -- or they may have a higher degree of

3   credibility because they're sworn to uphold the law.

4           You also said that you'll follow the Court's

5   instructions on this subject, and that one of those

6   instructions is that people in law enforcement aren't more or

7   less believable than anybody else.

8           So my question to you is whether your sort of

9   general feeling that they may have a higher degree of

10  credibility, does that mean that you would assume, as soon as

11  somebody walked into the courtroom, that if the person were a

12  member of law enforcement that you would automatically think

13  that person was more believable?

14          THE PROSPECTIVE JUROR:  You used the word

15  "automatically".  No.  It's just -- it's more of a cultural

16  thing.

17          As little children growing up we're told, you know,

18  if you see something bad go to a police.

19          THE COURT:  Can you use your microphone?

20          THE PROSPECTIVE JUROR:  Go to a police officer, tell

21  a law enforcement officer.

22          And I think there's a certain enculturation,

23  indoctrination as a society, but we've also seen, most

24  recently with other cases that had national coverage, that

25  that's not always the case as it relates to some police or law

JURY SELECTION                                    378

1   enforcement.

2           I was -- the first question I guess was more of --

3   of how -- what our -- what our society -- we were

4   enculturated.

5           THE COURT:  I see, okay.

6           You've got a list of names there.

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  And those are just some people whose

9   names might be mentioned during the course of the trial in

10  addition to that list from the questionnaire.

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Do you know any of those people or are

13  the names familiar?

14          THE PROSPECTIVE JUROR:  I do not.

15          THE COURT:  Okay.  And you will hear during the

16  course of the trial evidence regarding contact -- sexual

17  contact between people of the same sex.

18          Anything about that that's a problem for you?

19          THE PROSPECTIVE JUROR:  No.  Not at all.

20          THE COURT:  All right.  And let me just see if the

21  lawyers have any questions.

22          MR. CANNICK:  No.

23          MS. GEDDES:  No, Your Honor.

24          THE COURT:  Okay.  So just finally, I want to remind

25  you of a couple of important things.

JURY SELECTION                                    379

1          First is, Mr. Kelly's presumed to be innocent and

2     the government has the responsibility to prove his guilt

3     beyond a reasonable doubt.  That's their burden.  If you're

4     selected as a juror, I'll obviously give you some more

5     instructions on that principle.

6          But do you promise that you will follow that law?

7          THE PROSPECTIVE JUROR:  Yes, I do.

8          THE COURT:  And do you also promise that you will

9     follow all of my instructions on the law?

10         THE PROSPECTIVE JUROR:  Yes.

11         THE COURT:  And one of those instructions that I've

12    already given is that there's not to be any research or

13    looking anything up about the case.

14         Will you follow that directive?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  And finally, if you're selected as a

17    jury, do you promise that you'll give both sides a fair trial?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  Thank you so much.

20         THE PROSPECTIVE JUROR:  Your Honor, there's

21    something I need to speak with you about or and I can say it

22    here.  It's nothing confidential.  May I say it?  Since I

23    filled out -- since I filled out the survey two weeks ago, the

24    circumstances, as it relates to my mother, have changed.

25         THE COURT:  Oh, I see.

JURY SELECTION                                        380

1              THE PROSPECTIVE JUROR:  She's 85.  Thank God she's

2      still with us.  She is kind of frail and has four preexisting

3      conditions for COVID.  And now with the Delta variant, I

4      really kind have to be her primary caretaker.  Because my

5      older brother, who I mentioned there, is starting cancer

6      treatment on -- for prostate cancer on Thursday.  He has

7      radiation for 25 days.  So he won't be able to help out and

8      she is really quarantining now.

9              THE COURT:  So this is a real hardship for you.

10             THE PROSPECTIVE JUROR:  Yes.

11             THE COURT:  All right.  Well, I'm so sorry to hear

12     all of that, but we'll excuse you, okay?  All right.

13             THE PROSPECTIVE JUROR:  Thank you.

14             THE COURT:  I'm still going to have Ms. Greene

15     direct you where to go, okay?

16             THE PROSPECTIVE JUROR:  Thank you, Your Honor.

17             (Prospective Juror exits the courtroom.)

18             (Prospective Juror enters the courtroom.)

19             THE COURT:  All right, this is Juror Number 252.

20             Good afternoon.

21             THE PROSPECTIVE JUROR:  Good afternoon, Your Honor.

22             THE COURT:  How are you doing?

23             THE PROSPECTIVE JUROR:  I'm fine.

24             THE COURT:  Good.

25             So I've gone through your questionnaire.  I just

GA0708

JURY SELECTION                                    381

1   have a few additional questions for you.

2           You're not working at the moment; is that right?

3           THE PROSPECTIVE JUROR:  Yes, that's correct.

4           THE COURT:  You're actively looking for a job now?

5           THE PROSPECTIVE JUROR:  I am.

6           THE COURT:  Let's hold the microphone.  I just want

7   to make sure everybody can hear you.

8           THE PROSPECTIVE JUROR:  I am.

9           THE COURT:  And what kind of work are you looking to

10  do?

11          THE PROSPECTIVE JUROR:  In administration, business

12  administration.

13          THE COURT:  I see.  And this trial's going to be

14  about four weeks.  Is that going to interfere with your job

15  search?

16          THE PROSPECTIVE JUROR:  I don't believe so.

17          THE COURT:  Okay.  So was that the kind of work that

18  you did previously?

19          THE PROSPECTIVE JUROR:  I was an assistant physical

20  director.

21          THE COURT:  I see.  I think you've been a juror

22  before; is that right?

23          THE PROSPECTIVE JUROR:  That is correct.

24          THE COURT:  How long was that?

25          THE PROSPECTIVE JUROR:  In my mid-20s.

GA0709

JURY SELECTION                                    382

```
 1              THE COURT:  Okay.  So --

 2              THE PROSPECTIVE JUROR:  Twenty-five years ago.

 3              THE COURT:  -- some time ago.

 4              And anything about that experience that would make

 5     it hard for you to serve in this case?

 6              THE PROSPECTIVE JUROR:  No.

 7              THE COURT:  Okay.  Now, I think there's a piece of

 8     paper there that has a list of names.  Those are people who

 9     might testify or whose names might be mentioned during the

10     course of the trial.

11              Any of those look familiar to you?

12              THE PROSPECTIVE JUROR:  They do not.

13              THE COURT:  Okay.  You'll also hear during the

14     course of this trial testimony about sexual contact between

15     people who are of the same sex.

16              Anything about that that would pose a problem for

17     you?

18              THE PROSPECTIVE JUROR:  No.

19              THE COURT:  Okay.  Let me see from the lawyers if

20     they have any additional questions for you.

21              MR. CANNICK:  Nothing, Your Honor.

22              THE COURT:  Anything from the government?

23              MS. GEDDES:  No.

24              THE COURT:  All right, just a few things to --

25     before we finish up.
```

JURY SELECTION                                              383

1          I just want to remind you of the principle that we

2   discussed this morning which has to do with the presumption of

3   innocence.

4          Mr. Kelly's presumed to be innocent, and the

5   government has to prove his guilt beyond a reasonable doubt.

6   If you're selected as a juror, I will give you more

7   instructions on that.  But my question to you is whether you

8   will follow that principle of law?

9          THE PROSPECTIVE JUROR:  Yes, I will.

10          THE COURT:  And will you follow all of my

11   instructions on the law?

12          THE PROSPECTIVE JUROR:  Yes, I will.

13          THE COURT:  And one of those instructions is that

14   you do not do any research on the case.

15          Will you follow that instruction?

16          THE PROSPECTIVE JUROR:  Yes, I will.

17          THE COURT:  And finally, if you're selected as a

18   juror in this case, do you promise that you will be fair and

19   impartial to both sides?

20          THE PROSPECTIVE JUROR:  Yes, I will.

21          THE COURT:  All right.  Thank you so much.

22          Ms. Greene is going to show you where to go next.

23          (Prospective Juror exits the courtroom.)

24          (Prospective Juror enters the courtroom.)

25          THE COURT:  This is Juror Number 260.

JURY SELECTION                                384

1              Correct me if I'm wrong.  Were you one of the people

2    who said you looked something up on the internet?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Okay.  Just tell me what it was.

5              THE PROSPECTIVE JUROR:  Um --

6              THE COURT:  First of all, good afternoon.

7              THE PROSPECTIVE JUROR:  Hi.

8              It was the racketeering.  It kind of went down a

9    rabbit hole.

10             THE COURT:  I see.  And what was in the rabbit hole?

11             THE PROSPECTIVE JUROR:  There were other -- like I

12   tend to try to stay on just like that in chains.  But it kind

13   of, at some point with certain cases, I try not to -- I was at

14   work, so I really tried not to read too much into anything,

15   you know, corporate stuff going.

16             THE COURT:  And judges don't want you Googling when

17   you're part of a jury panel.  But I'm glad you told me.  So

18   why don't we start with that.

19             You indicated that you had heard something having to

20   do with the case.

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Did you watch an interview?

23             THE PROSPECTIVE JUROR:  Yes.  Yesterday morning, as

24   I was getting ready --

25             THE COURT:  Yes.

JURY SELECTION                                                  385

1              THE PROSPECTIVE JUROR:  -- at our home, so my mom

2    had the news on, and I was getting dressed and I saw the story

3    about it on the news yesterday morning.

4              THE COURT:  Okay, so that's --

5              THE PROSPECTIVE JUROR:  Uh-huh.

6              THE COURT:  And what was the nature of the story?

7              THE PROSPECTIVE JUROR:  That they were talking to

8    jurors.  And then they did talk to somebody.  I want to say --

9    I only have -- I believe it was possibly a witness, but I only

10   half listened to it.

11             THE COURT:  Okay.

12             THE PROSPECTIVE JUROR:  I was getting dressed as the

13   story was on in the background.

14             THE COURT:  I see.

15             So the thing about all of this coverage and articles

16   and things about any case is, some of it may not be true.  And

17   more important, it's -- we were talking about somebody, we

18   were talking about criminal charges at a trial.  The trial is

19   the place where those decisions are made, and jurors in a

20   criminal case base their decision on the evidence that they

21   hear in the courtroom.

22             And that's why it's so critical because -- that's

23   why it's so critical to a fair trial that you not look things

24   up on the internet.  And you not try to do research on the

25   law.

JURY SELECTION                              386

1          I'm not scolding you.  I'm just telling you that

2     it's -- that I have no idea what you looked at, but I'm going

3     to assume that it might be not correct.  But even if it

4     were -- even if it were, it's -- it's why we tell jurors not

5     to look things up.

6          So if you are selected as a juror, you will not be

7     permitted to do that.  Can you make that promise?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Okay.  And you have an uncle who is a

10    lawyer and a cousin who's a lawyer, right?

11         THE PROSPECTIVE JUROR:  Uh-huh, yes.

12         THE COURT:  Do you ever talk to them about their

13    work?

14         THE PROSPECTIVE JUROR:  My uncle's brought it up

15    like during the holidays.  But I don't see him on a normal

16    basis, so not in a while.

17         THE COURT:  And if you are -- oh, do you have that

18    sheet of paper?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Those are names of people who might be

21    mentioned during the trial or who might testify.

22         Are those names familiar to you?

23         THE PROSPECTIVE JUROR:  No, ma'am.

24         THE COURT:  Okay.  And if you -- you will hear

25    during the trial testimony about sexual contact among people

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

JURY SELECTION                                      387

1    who are of the same sex.

2             Any problem being fair and impartial in a case where

3    you might hear testimony like that?

4             THE PROSPECTIVE JUROR:  No.

5             THE COURT:  Okay.  And let me just check with the

6    lawyers.

7             Do you have any additional questions for this juror?

8             MR. CANNICK:  One second.

9             THE COURT:  Actually, can I -- I want to see the

10   lawyers over at the side just for a minute.

11            (Continued on the next page.)

12            (Sidebar conference.)

13

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                              388

```
 1              (The following occurred at sidebar.)

 2              THE COURT:  I don't know whether it's putting into

 3    this now, but I don't think this lady is going to follow

 4    anyone's instruction on the law.

 5              MR. CANNICK:  That's the impression I get.

 6              THE COURT:  And I --

 7              MS. GEDDES:  We don't object.

 8              THE COURT:  I think I'm going to excuse her.  I

 9    think.  All right?

10              MR. CANNICK:  Beyond what we -- I don't know if we

11    can control it, but the last thing is whether or not witness'

12    behavior --

13              MS. GEDDES:  All I can say is, we're not finding

14    anybody talking to the media.

15              MR. CANNICK:  There again.

16              MS. GEDDES:  If there was a means for me to control

17    it, trust me, I would.

18              MR. CANNICK:  I'm glad there are.

19              THE COURT:  I don't miss those days.

20              MR. CANNICK:  I'm glad there are.

21              Give me something to cross-examine about.

22              (End of sidebar conference.)

23              (Continued on the next page.)

24

25
```

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

JURY SELECTION                                389

1           (In open court.)

2           THE COURT:  All right.  I think we are going to

3    excuse you from this case, all right?  I really do appreciate

4    all the time you took filling out the questionnaire.  It's

5    hard for us to function if we can't get people like you who

6    are willing to participate.

7           So thank you so much for that.  Ms. Greene is going

8    to tell you where you should go.  Okay?

9           THE PROSPECTIVE JUROR:  Thank you.

10           (Prospective Juror exits the courtroom.)

11           (Prospective Juror enters the courtroom.)

12           THE COURT:  Okay, this is Juror Number 266.  Good

13    afternoon.

14           THE PROSPECTIVE JUROR:  Good afternoon, Your Honor.

15           THE COURT:  I think since you've got that sheet of

16    paper, I'm going to start with that.

17           That's just some additional names in addition to

18    that list you looked at in connection with the questionnaire.

19    And those people may testify or you may hear their names

20    during the course of the trial.

21           Any of those look familiar to you?

22           THE PROSPECTIVE JUROR:  No, they do not.

23           THE COURT:  Okay.  So turning to your questionnaire.

24    You are -- you're looking for work at the time right now; is

25    that right?

JURY SELECTION                                      390

1          THE PROSPECTIVE JUROR:  Yes.  I'm taking online

2   course work to get into a new career.  New career path.

3          THE COURT:  What would you like to do?

4          THE PROSPECTIVE JUROR:  I'm working towards

5   front-end web development.  So designing websites and along

6   those lines.

7          THE COURT:  I see.  And so would any of your course

8   work or looking for a job interfere with your ability to serve

9   as a juror on a case of this length?

10          THE PROSPECTIVE JUROR:  No, it would not.

11          THE COURT:  Okay.  And before -- your previous work

12   was computer-related also, but it was an IT professional?

13          THE PROSPECTIVE JUROR:  Correct.  So it was more

14   dealing with the hardware as opposed to the software problems.

15          THE COURT:  I see.  I see.  And in your spare time

16   one of the things you do is volunteer at a local soup kitchen;

17   is that true?

18          THE PROSPECTIVE JUROR:  Yes.  So we have St. Vincent

19   de Paul.  It's like a charity that was run through my old high

20   school.  And we used to do work with them.

21          And so you go down there, help feed them or donate

22   clothing, and just help them with just the -- whatever they

23   needed you to do.

24          THE COURT:  Okay.  And what else do you like to do

25   in your spare time?

JURY SELECTION                              391

1          THE PROSPECTIVE JUROR:  Studying a lot has been

2     taking up a lot of my time.  I play soccer with my friends a

3     little bit, but -- and spend time with my dog and my fiancé.

4          THE COURT:  Okay.  When are you planning to get

5     married?

6          THE PROSPECTIVE JUROR:  Next August.

7          THE COURT:  Congratulations.

8          THE PROSPECTIVE JUROR:  Thank you.

9          THE COURT:  Now you said that you have -- had

10    some -- heard some information having to do with this case; is

11    that correct?

12         THE PROSPECTIVE JUROR:  Correct.  I've seen the

13    internet videos and stuff.  I believe it was the Gayle King

14    video.  But other than that, I haven't seen much.

15         THE COURT:  Okay.

16         THE PROSPECTIVE JUROR:  I am aware that there is a

17    special on Netflix, but I never had watched it.  So I don't

18    know what it -- that video or documentary pertains to

19    specifically or anything along those lines.

20         THE COURT:  Okay.  And you said that you used to

21    enjoy Mr. Kelly's music but the allegations turned you off to

22    the music; is that right?

23         THE PROSPECTIVE JUROR:  Correct.  I mean, um, with

24    the allegations, you're not sure what the inspiration is

25    behind the music.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

JURY SELECTION                              392

1          THE COURT:  I see.  So I think I mentioned this when

2    we met together in the large courtroom.  But to the extent

3    that you have heard or read other things, you really have to

4    put them aside if you're going to be a juror in this case.

5          THE PROSPECTIVE JUROR:  Understood.

6          THE COURT:  You know, allegations are allegations.

7    As I said this morning, they're just accusations.  We have

8    trials to determine whether those allegations have been

9    proved, and so it would be wrong to assume that Mr. Kelly is

10   guilty simply because he's had those charges brought against

11   him.

12         THE PROSPECTIVE JUROR:  Absolutely.  That is more is

13   my -- me as a personal.  But when I'm sitting up there doing

14   my civic duty, I understand you have to be impartial in

15   whatever's brought ahead by the state or government.

16         THE COURT:  The government.  I mean it has to be --

17   you have to be -- you can't come in with any preconceived

18   notions.

19         Are you able to do that?

20         THE PROSPECTIVE JUROR:  Yes, I would be able to.

21         THE COURT:  Okay.  And you -- just in connection

22   with the testimony of witnesses who might be employed as law

23   enforcement officers, you said you would hope that an

24   officer's oath would compel him or her to be more truthful.

25         I just want to -- I think the other thing that you

JURY SELECTION                                              393

1   said you could follow my instruction that members of law

2   enforcement aren't more or less believable just because they

3   are law enforcement officers, and that -- and I just want to

4   make sure that I understand.

5           Are you just expressing your hope that people would

6   be more truthful, or do you think that just because somebody

7   has that position, that that person is more likely to be

8   truthful?

9           THE PROSPECTIVE JUROR:  I don't believe that the

10  oath forces them.  It's more of a hope that they would hold up

11  their oath not necessarily, oh, he's a police officer, he's a

12  hundred percent telling the truth.

13          THE COURT:  Okay.

14          THE PROSPECTIVE JUROR:  I don't think anyone's -- I

15  think it's more of a belief that...

16          THE COURT:  Okay.  So just -- I'm not trying to -- I

17  just want to make sure that I understand.

18          THE PROSPECTIVE JUROR:  No, of course.

19          THE COURT:  So if a police officer or an agent or a

20  law enforcement official were to testify, would you give that

21  person an extra degree of credibility just because of the

22  person's position?

23          THE PROSPECTIVE JUROR:  Um, I don't know if you mean

24  just because they're a police officer, but if they have

25  things -- in their past, if they have shown that they have

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

JURY SELECTION                                    394

1   been more truthful or, or honest, I think that would come into

2   account.  But I think when you're on the stand, I mean people

3   commit perjury, I assume.

4              THE COURT:  Well, that's the question.

5              You know, you're going to ask be -- to evaluate all

6   of the witnesses as individuals.  And like every other

7   profession, law enforcement professions have people that are

8   good, good employees, good officers.  There are officers who

9   are bad.  And there are some that fall in between.  And my

10  question to you is whether you accept that principle that you

11  can't give them additional credence just because they happen

12  to work for law enforcement.

13             THE PROSPECTIVE JUROR:  Right, you're not getting

14  bonus points as a police officer.

15             THE COURT:  Exactly.

16             THE PROSPECTIVE JUROR:  I would not give someone a

17  higher -- like a -- certain things, I wouldn't say that

18  they're -- I'm not sure the wording exactly, but I wouldn't

19  give them bonus point for just having a badge.  I would listen

20  to their testimony and listen to what they had to say.

21

22             (Continued on the following page.)

23

24

25

1          THE COURT:  Okay.  Just one other thing I wanted to

2     ask you about on the questionnaire.  You were asked whether or

3     not you would respect the views of other jurors even if they

4     were different -- even if they believed differently than you

5     did, and you said that everybody is entitled to an opinion,

6     and it's not up to you to change that opinion, that's for the

7     Court.

8          I just want to -- this is an instruction that I

9     would give you if you're selected as a juror.  Part of the

10    deliberation process is sharing your views and trying to

11    persuade people to see things the way you see it --

12         THE PROSPECTIVE JUROR:  Okay.

13         THE COURT:  -- if both of you disagree, but

14    obviously to do that with respect --

15         THE PROSPECTIVE JUROR:  Right.

16         THE COURT:  -- with everyone's opinion, and I just

17    wanted to point that out.

18         Is that something that you are capable of doing?

19         THE PROSPECTIVE JUROR:  Yes.  Absolutely.  It was

20    more of, like, I can't, like, pin you down and tell you what

21    needs to -- the outcome.  I'm not going to try to push my

22    ideas onto somebody else.  I mean, like, we can communicate

23    and talk, but in order -- I'm not going to force anybody to

24    change --

25         THE COURT:  Okay.  I think I understand.

JURY SELECTION                                          396

1          I'm just going to ask the parties, I can't remember

2    if I asked -- did not ask it?  Okay.

3          So you will hear testimony having to do with sexual

4    contact among people that are of the same sex.

5          Anything about that that would cause a problem for

6    you?

7                THE PROSPECTIVE JUROR:  No.

8                THE COURT:  Okay.

9                THE PROSPECTIVE JUROR:  No.

10               THE COURT:  All right.

11               Do the lawyers have questions?

12               (Sidebar.)

13               (Continued on next page.)

14

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                    397

1              (Sidebar conference held on the record out of the

2    hearing of the prospective juror.)

3              MR. CANNICK:  Your Honor, would the Court be able to

4    explore his response on 46?  He says, "in today's world."  I

5    think that answer suggests that when he hears from a female

6    victim, he's going to give them more credence because he

7    believes that every one of them has been subjected to

8    harassment.

9              THE COURT:  I mean, I take this more as sort of a

10   truism that is a very common experience.  I'm happy to ask

11   him, but -- I'm happy to ask him.

12             MR. CANNICK:  You would make my life easier if you

13   do.

14             MS. GEDDES:  Can I ask one question?  Can you ask

15   him if his arrest would affect his ability to be fair and

16   impartial?

17             THE COURT:  Yes.  I hate embarrassing people about

18   stuff like that, so I'm going to do it in a very general term.

19             MS. GEDDES:  That's okay.

20             (Sidebar end.)

21             (Continued on following page.)

22

23

24

25

*Denise Parisi, RPR, CRR*
*Official Court Reporter*

JURY SELECTION                                      398

1          (In open court.)

2          THE COURT:  Okay.  Just a couple more questions.

3          You were asked on the questionnaire questions about

4    the Me Too movement, and you responded that you -- let's see,

5    where did I -- sorry.  Forty-six, is that what it is?

6    Forty-six.  You responded -- I mean, to the effect that it's

7    hard to meet any woman who hasn't been the victim of some kind

8    of a harassment.

9          THE PROSPECTIVE JUROR:  Yes.  In my experience, a

10   lot of the women that I've come across, whether it's just

11   harassment, cat calling on the street, or worse, I feel that a

12   lot of women, unfortunately, have had some sort of sexual

13   harassment confrontation.

14         THE COURT:  Okay.  Just related to that question,

15   you know, you will hear undoubtedly in this case from female

16   witnesses who will describe allegations of sexual assault.

17   Just given what you know from your female acquaintances, would

18   you give extra credence to a woman who made those accusations

19   or who made that testimony?

20         THE PROSPECTIVE JUROR:  Extra credence?

21         THE COURT:  Yes.

22         THE PROSPECTIVE JUROR:  No.  I would take their --

23   whatever their testimony was, that would be their testimony.

24   I wouldn't give any added value.

25         THE COURT:  Okay.

JURY SELECTION                                          399

1       And then is there anything about any of your prior

2   interactions or prior experiences with law enforcement that

3   would make it hard for you to be fair and impartial in this

4   case?

5       THE PROSPECTIVE JUROR:  Not in any -- I don't see

6   where that would be an issue.

7       THE COURT:  Okay.  The other thing I just want to

8   speak with you about is the principle of the presumption of

9   innocence; and, as I think I described earlier, Mr. Kelly is

10  presumed to be innocent unless and until the Government proves

11  his guilt beyond a reasonable doubt.  That's a basic principle

12  of criminal law, and I will give you more instructions on it

13  if you are selected as a juror.

14      Can you follow that principle?

15      THE PROSPECTIVE JUROR:  Absolutely.

16      THE COURT:  Do you also promise that you will follow

17  all of my instructions on the law?

18      THE PROSPECTIVE JUROR:  Yes, I will, Your Honor.

19      THE COURT:  One of those instructions is that you

20  can't look anything up about the case or conduct any of your

21  own research.  You will follow that directive?

22      THE PROSPECTIVE JUROR:  A hundred percent, yes.

23      THE COURT:  And, finally, if you are selected as a

24  juror in this case, do you promise that you will be fair and

25  impartial to both sides?

JURY SELECTION                                      400

1           THE PROSPECTIVE JUROR:  I will.

2           THE COURT:  Okay.  Thank you so much.

3           Ms. Greene is going to give you further directions

4    about where to go.

5           THE PROSPECTIVE JUROR:  Thank you, Your Honor.

6           THE COURT:  Thank you.

7           (The prospective juror exits.)

8           (The prospective juror approaches.)

9           THE COURT:  This is Juror Number 269.

10          Good afternoon.

11          THE PROSPECTIVE JUROR:  Is this working?

12          THE COURT:  I hope so.

13          THE PROSPECTIVE JUROR:  Okay.

14          THE COURTROOM DEPUTY:  It's on?

15          THE PROSPECTIVE JUROR:  It's on.  Hello?

16          THE COURT:  It sounds like it works.

17          How are you doing?

18          THE PROSPECTIVE JUROR:  Fine.

19          THE COURT:  Let's use the microphone.  I want to

20   make sure everybody can hear you.

21          So I've gone through your questionnaire, and I just

22   have a couple of additional questions for you.

23          THE PROSPECTIVE JUROR:  Okay.

24          THE COURT:  You are currently working as a

25   sanitation worker?

GA0728

JURY SELECTION                                              401

```
 1                THE PROSPECTIVE JUROR:  Correct.

 2                THE COURT:  And also a router.

 3                THE PROSPECTIVE JUROR:  Yes.

 4                THE COURT:  What does that mean?

 5                THE PROSPECTIVE JUROR:  I work for a company that

 6      does routing for routes that have to go out into the fields.

 7                THE COURT:  Can you just tap on that microphone?

 8      Okay.  Good, good, good.

 9                What do you like to do in your spare time?

10                THE PROSPECTIVE JUROR:  Read, and I am a sports

11      fanatic.

12                THE COURT:  A what?  Sports fanatic?

13                THE PROSPECTIVE JUROR:  Yeah.

14                THE COURT:  Anything in particular?

15                THE PROSPECTIVE JUROR:  Basketball, primarily;

16      baseball; cricket.

17                THE COURT:  Okay.  And do you have one child in high

18      school and one child in college?

19                THE PROSPECTIVE JUROR:  Correct.

20                THE COURT:  You said that the case sounds familiar

21      to you.  Do you know anything about this case at all?

22                THE PROSPECTIVE JUROR:  No.

23                THE COURT:  Okay.  It just rang a bell for you

24      somehow?

25                THE PROSPECTIVE JUROR:  Yes.
```

JURY SELECTION                                402

1          THE COURT:  Did you hear anything in particular
2     about it?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  Okay.  And you have been a juror before
5     in a civil case; is that right?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  How long ago was that?

8          THE PROSPECTIVE JUROR:  Give or take probably seven
9     to ten years.

10         THE COURT:  I see.

11         THE PROSPECTIVE JUROR:  I don't know if that's
12    exactly the correct date, but it's around that time.

13         THE COURT:  Okay.  I think there should be a piece
14    of paper there that's got some names on it.  Those are people
15    who may testify or whose names might be mentioned during the
16    course of the trial.

17         Are any of those familiar to you?

18         THE PROSPECTIVE JUROR:  No.

19         THE COURT:  Okay.  And you will hear during the
20    course of the trial that -- about testimony having to do with
21    sexual contact between people who are of the same sex.

22         Anything about that that causes you any difficulty?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  Okay.  Let me just see if either counsel
25    has any questions.

JURY SELECTION                                    403

1               (Pause.)

2               THE COURT:  Okay.  Just a few more things to go

3     over.

4               THE PROSPECTIVE JUROR:  Okay.

5               THE COURT:  One very important principle of criminal

6     law is the presumption of innocence; and Mr. Kelly is presumed

7     to be innocent, and the Government has the burden of proving

8     his guilt beyond a reasonable doubt.  I will give you more

9     instructions on that principle if you are selected as a juror

10    in this case, but my question to you is whether you can follow

11    that law.

12              THE PROSPECTIVE JUROR:  Yes.

13              THE COURT:  And do you promise that you will follow

14    all of my instructions on the law?

15              THE PROSPECTIVE JUROR:  Correct.

16              THE COURT:  And one of those instructions is that

17    you are not permitted to do any research at all about the

18    case, look anything up, anything like that.

19              Can you follow that instruction?

20              THE PROSPECTIVE JUROR:  Yes.

21              THE COURT:  And, finally, if you are selected as a

22    juror in this case, do you promise that you will be fair and

23    impartial to both sides?

24              THE PROSPECTIVE JUROR:  Yes.

25              THE COURT:  All right.

1          Thank you so much.

2          Ms. Greene is going to direct you to where you're

3    supposed to go, all right?

4          THE PROSPECTIVE JUROR:  Okay.

5          (The prospective juror exits.)

6          THE COURT:  So this is 50 qualified jurors.  I think

7    the next thing that we should do is have those jurors brought

8    to the ceremonial courtroom, and I'm going to give them some

9    general instructions and remind them that once they're

10   selected, that's it.  Unfortunately, it's been, I'm sure, any

11   trial lawyer's experience that sometimes jurors are selected

12   and they forgot that they have either a trip or, you know,

13   brain surgery coming up, so hopefully -- we'll swear them

14   tomorrow after you all make your selections, which will happen

15   also tomorrow.  So I think right now we'll just take whatever

16   time we have for you to get set up in the ceremonial

17   courtroom, I will give them those instructions, and then

18   tomorrow you will exercise your challenges in the morning,

19   okay?

20         MS. GEDDES:  Your Honor, could you also let the

21   jurors know that the parties are not permitted to speak with

22   them and that we're not being rude by not interacting with

23   them?

24         THE COURT:  Oh, sure.  That's usually an instruction

25   I give.  Yes, I will give that instruction.

GA0732

JURY SELECTION                                                405

1          MS. GEDDES:  Thank you.

2          (Defendant exits the courtroom.)

3          MS. GEDDES:  Judge, are the jurors going to be,

4   like, reordered so that the number of folks who came today who

5   weren't here yesterday will go back to their original place?

6          THE COURT:  I don't know.  I think that makes sense

7   in terms of the --

8          MS. GEDDES:  We'll go in order.

9          THE COURT:  That's the way it's done.  It makes

10  sense to me.  Does anybody have any -- well, I don't care if

11  you have an objection to it.  We'll just do it that way.  They

12  were randomly assigned the numbers, so I think it makes the

13  most sense to stick with that.

14         MS. GEDDES:  And then for peremptories tomorrow,

15  will you just remind me, they get three and then --

16         MR. CANNICK:  You get two.

17         THE COURT:  It's a total of ten and six.

18         MR. CANNICK:  Ten and six, yes.

19         THE COURT:  Well, I am going to have to -- round one

20  would be two for the Government, one for the defense, but I

21  just need to check my chart every time, so I will let you know

22  tomorrow.  It's the same way we always do it.

23         MS. GEDDES:  I never know.

24         Thank you, Judge.

25         THE COURT:  It's too much math for me right now.

JURY SELECTION                                    406

1    All right.

2              (A recess in the proceedings was taken.)

3              THE COURTROOM DEPUTY:  All rise.

4              THE COURT:  All right.  Everybody can sit down.

5              (Defendant enters the courtroom.)

6              THE COURT:  All right.  So we are going to bring in

7    this group of 50, and I will just remind them that the

8    selections are going to be made tomorrow, and so once those

9    selections are made, they're jurors.  I'm going to give them

10   just the standard reminders.  I will also tell them the

11   lawyers are not permitted to speak with them at all.  And so,

12   I mean, I hope that we don't get somebody who bails on us at

13   the last minute, but that's what my plan is, to tell them that

14   there's no turning back if they're picked tomorrow.  So we'll

15   do that, and then tomorrow we'll go through the process of

16   exercising challenges.

17             THE CLERK:  All rise.  Jury entering.

18             (Prospective jurors enter.)

19             THE COURT:  Okay.  Everybody can have a seat.

20             All right, jurors.  Good afternoon.

21             THE JURY:  Good afternoon.

22             THE COURT:  I just want to give you a little

23   overview about what is happening next.

24             Tomorrow the lawyers are going to be making their

25   selections for jurors.  Once those selections are made, if you

 1   are selected, you are on the jury, and so you will be with us

 2   for the duration, and there will be no turning back.

 3           So sometimes people sit through this process and

 4   they say, I didn't think I was going to get picked.  Assume

 5   that you are going to get picked, and I told you about that

 6   schedule, so that will happen tomorrow, so we'll go through

 7   the process tomorrow, and I'm going to give you some

 8   directions for what to do tonight.

 9           First of all, do not look up anything having to do

10   with this case.  No news reports, no Googling.  Even if you

11   just think you want to Google some of the participants, do not

12   do it.  Do not permit anybody to talk to you about the case,

13   and if somebody tries to approach you about the case or to

14   talk to you about the case, you must report that to me.

15           You are also not to speak to anybody about the case.

16   That includes people at home.  Obviously, you can tell them

17   what the schedule is, but you can't speak about the case.

18           You also can't speak about the case with one

19   another, which I think is a little bit harder because it's the

20   only experience that you're sharing, but you can't speak about

21   the case.  Just don't talk about it.  Think of something else

22   to talk about.

23           I should also tell you that the lawyers in this case

24   are not permitted to speak with you at all, even if it's just

25   to say hello, so please don't think that they're being rude if

GA0735

1  they don't greet you if they see you in the hallway.  That's

2  true throughout the entire case.

3          So, just to sum up, we're not going to look anything

4  up about the case.  We're not going to speak to anyone about

5  the case.  If somebody tries to speak to you about the case,

6  that's something that you need to report to me, or if somebody

7  tries to influence you in any way, shape, or form.  Assume

8  that you are going to be picked, and we will see you tomorrow.

9  Have a great night, okay?  9:30.

10         (Prospective jurors exit.)

11         THE COURT:  So one of the jurors told Ms. Greene

12  that I didn't ask her about her travel plans, and she's got

13  travel plans -- when does she have them?

14         THE COURTROOM DEPUTY:  September.

15         THE COURT:  -- sometime in September.  I mean, we

16  can find out from her when those are and see if they're

17  changeable.

18         What number is the juror?

19         THE COURTROOM DEPUTY:  Eleven.

20         THE COURT:  I mean, if I overlooked something on the

21  questionnaire --

22         MS. GEDDES:  Is she still here?  Can we find out the

23  dates.

24         THE COURTROOM DEPUTY:  She's still here.

25         THE COURT:  Did we talk to her about it?

JURY SELECTION                                    409

1          MS. CRUZ MELENDEZ:  We did.  Oh, about the dates?

2    No, I don't think so.

3          THE COURT:  I mean during the questioning, did she

4    raise it?

5          MS. SHIHATA:  No.

6          THE COURT:  Let's bring her in.

7          (The prospective juror approaches.)

8          THE COURT:  I'm just trying to think, do we have a

9    microphone?

10         Everybody can have a seat.

11         THE COURTROOM DEPUTY:  I do not have a microphone.

12         THE COURT:  Do any of those work?  Oh, good.

13         All right.  So this is Juror Number 11.

14         You said you have travel plans?

15         THE PROSPECTIVE JUROR:  Yeah.  I have a trip planned

16   from September 2nd to the 8th.  I have air travel.

17         THE COURT:  Okay.  And that's not something that you

18   can change?

19         THE PROSPECTIVE JUROR:  It would be possible I could

20   change.  I did look up the -- there is insurance for the

21   flight, and I haven't looked into the Airbnb to see if that

22   would be -- like what the process would be for that, but I

23   just wanted to -- I didn't know what the process was or the

24   policy.  I just wanted to ask around, and they told me that I

25   should let you know.

JURY SELECTION                                                410

```
 1              THE COURT:  I'm glad you did.

 2              So if you could change that, that would be great.

 3    And can you let us know tomorrow?

 4              THE PROSPECTIVE JUROR:  You want me to cancel the

 5    trip ahead of time?

 6              THE COURT:  Oh, I see what you're saying.  Well,

 7    let's -- I see.  You may not be picked, right.

 8              THE PROSPECTIVE JUROR:  Yes.

 9              THE COURT:  Excellent point.

10              So I guess what we would just need is your

11    insurance, and if you are picked, then you would cancel the

12    trip.

13              THE PROSPECTIVE JUROR:  Yeah, I mean, I would have

14    to.

15              THE COURT:  Okay.  All right.  Well, thanks for

16    letting us know.

17              THE PROSPECTIVE JUROR:  Sure thing.

18              THE COURT:  And we'll see you tomorrow.

19              Thank you so much.

20              THE PROSPECTIVE JUROR:  Thank you.

21              (The prospective juror exits.)

22              THE COURT:  All right.  Everybody can have a seat.

23              Anything else anybody wants to raise?

24              MR. FARINELLA:  Yes, Your Honor.

25              Your Honor, just with regard to the uncharged acts,
```

JURY SELECTION                                           411

1   the Government did respond and I guess -- the Government has

2   responded --

3              THE COURT:   You know what, is it easier if you just

4   sit around on the other side?

5              MR. FARINELLA:   Sure.

6              THE COURT:   I just want to make sure everybody can

7   hear you, and I don't want you to be uncomfortable when you're

8   making the argument.

9              MR. FARINELLA:   So, Your Honor, I've conferred with

10  the Government, and the uncharged act reply was due today from

11  defense counsel; so, like I said, I've conferred with the

12  Government and they've agreed to allow me to file that

13  tomorrow.

14             THE COURT:   Sure.

15             MR. FARINELLA:   I'm just asking if the Court would

16  permit the reply to be filed tomorrow?

17             THE COURT:   Sure.   That's fine.

18             Anything else?

19             Okay.   I'll see everybody tomorrow.

20                      *    *    *    *    *

21             (Proceedings adjourned at 5:04 p.m. to resume on

22  August 11, 2021 at 9:30 a.m.)

23

24

25

GA0739

412

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------x
                                        19-CR-286(AMD)
3   UNITED STATES OF AMERICA,
                                        United States Courthouse
4           Plaintiff,                  Brooklyn, New York

5           -against-                   August 11, 2021
                                        9:30 a.m.
6   ROBERT KELLY,

7           Defendant.
    ------------------------------x
8
            TRANSCRIPT OF CRIMINAL CAUSE FOR JURY SELECTION
9               BEFORE THE HONORABLE ANN M. DONNELLY
                    UNITED STATES DISTRICT JUDGE
10

11  APPEARANCES

12  For the Government:      UNITED STATES ATTORNEY'S OFFICE
                            Eastern District of New York
13                          271 Cadman Plaza East
                            Brooklyn, New York 11201
14                          BY:  ELIZABETH GEDDES, ESQ.
                                 MARIA CRUZ MELENDEZ, ESQ.
15                               NADIA SHIHATA, ESQ.
                            Assistant United States Attorneys
16
    For the Defendant:      THE C.H. SCHOLAR LAW FIRM PLLC
17                          225 Broadway - Suite 225
                            New York, New York 10007
18                          BY:  CALVIN HAROLD SCHOLAR, ESQ.

19                          THE LAW OFFICE OF THOMAS A. FARINELLA
                            260 Madison Avenue - 8th Floor
20                          New York, New York 10016
                            BY:  THOMAS A. FARINELLA, ESQ.
21
                            AIELLO & CANNICK
22                          69-06 Grand Avenue
                            Maspeth, New York 11378
23                          BY:  DEVEREAUX LEON CANNICK, ESQ.

24

25

413

1   APPEARANCES (CONTINUED)

2   Attorney for:         BLANK LAW, PC
                        444 South Washington Avenue
3                       Royal Oak, Michigan 48067
                        BY:  NICOLE BLANK BECKER, ESQ.

4

5   Court Reporter:        LINDA D. DANELCZYK, RPR, CSR, CCR
                        Phone:  718-613-2330
6                       Fax:    718-804-2712
                        Email:  LindaDan226@gmail.com

7

8   Proceedings recorded by mechanical stenography.  Transcript
   produced by computer-aided transcription.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JURY SELECTION                                    414

```
 1                THE COURTROOM DEPUTY:  All rise.

 2                THE COURT:  Everybody can sit down.

 3                (Defendant enters the courtroom.)

 4                THE COURT:  Okay, good morning, everyone.  I think

 5     all our jurors are here.

 6                THE COURTROOM DEPUTY:  We're missing two jurors.

 7                THE COURT:  So apparently two of the jurors had some

 8     kind of an issue.  I don't know what it is.

 9                (Discussion was had off the record.)

10                THE COURT:  All right, so there is -- Juror

11     Number 11 apparently has looked up the defendant last night,

12     apparently was very anxious.  I'll bring them all out.

13                That's 166.  I think that might be the intern.

14                THE COURTROOM DEPUTY:  Yes, it is.

15                THE COURT:  He's got plane tickets also.

16                And then 233 has also become very anxious.

17                So we'll speak to the three of them individually

18     just to see, but I predict they won't be on your list.

19                So let's bring them up.

20                (Pause in the proceedings.)

21                (Prospective Juror enters the courtroom.)

22                THE COURT:  So this is Juror Number 11?

23                THE PROSPECTIVE JUROR:  Yes.

24                THE COURT:  Okay.  So I'm told that you have a

25     couple of things you want to tell us.
```

GA0742

JURY SELECTION                                      415

1          THE PROSPECTIVE JUROR:  Yes.  So last night I got

2    home and kind of started freaking out about having to cancel

3    my trip, and found out that I can't cancel my hotel stay and

4    get a refund, and I -- I won't get into all the details.

5          I did not sleep at all.  And around 4-ish in the

6    morning, whatever it was, I couldn't think of any other

7    solution, other than to look up the defendant's name, and I

8    closed the window right away, as I mentioned, but I did see

9    one image, and it reminded me of something that I had seen in

10   the past, and I just wanted to let you know.

11         THE COURT:  Okay.  So I mean, you tell me how badly

12   you're concerned about your trip and concerned about all those

13   things, if you were selected as a juror in this case would,

14   and also when you say you looked something up, it sounds like

15   you spent much time.

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  What was it.

18         THE PROSPECTIVE JUROR:  So I saw a pick from an

19   interview.

20         THE COURT:  Gayle King.

21         THE PROSPECTIVE JUROR:  And I realized I had seen

22   that interview.

23         THE COURT:  I see.

24         THE PROSPECTIVE JUROR:  And so I don't remember many

25   of the details from it, but I do have a sense of the feelings

JURY SELECTION                                    416

1   I had when I saw it.

2           THE COURT:  And what were those feelings?

3           THE PROSPECTIVE JUROR:  I remember being shocked and

4   scared, and I felt like that person had done some terrible

5   things.  And I realized that in a court that's something you

6   have to put behind you and you have to look at the evidence

7   that's here, but at the same time I can not know that.

8           THE COURT:  Okay.  And all of these things that

9   you've described, do you think that those would get in the way

10  of you're being a fair and impartial juror in this case?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Okay.  I'm going to ask you to step out.

13  Okay?

14          (Prospective Juror exits the courtroom.)

15          Donna, I think we can do everybody first and then

16  we'll...

17          THE COURTROOM DEPUTY:  Sorry, which juror?

18          THE COURT:  166.

19          And then the next one is 233.

20          (Prospective Juror enters the courtroom.)

21          THE COURT:  This is Juror Number 166.  Good morning.

22          THE PROSPECTIVE JUROR:  Good morning.

23          THE COURT:  What did you want tell us?

24          THE PROSPECTIVE JUROR:  I have plane tickets at the

25  end of the month.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

1           THE COURT:  The end of August?

2           THE PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Okay.  And what are the dates.

4           THE COURTROOM DEPUTY:  The 27th to the 2nd.

5           THE COURT:  I see.  Hold on one second.

6           Do you know what days of the week that is?

7           THE PROSPECTIVE JUROR:  I believe Friday to

8   Thursday.

9           THE COURT:  Okay.  And can you change them?

10          THE PROSPECTIVE JUROR:  I'm not sure.  I don't know.

11          THE COURT:  Okay.  When did you make the

12  reservation?

13          THE PROSPECTIVE JUROR:  This was months ago.

14          THE COURT:  I didn't think you made it yesterday.

15          THE PROSPECTIVE JUROR:  Yeah.

16          THE COURT:  But do you want to check to see if you

17  can change them?

18          THE PROSPECTIVE JUROR:  I don't know.  I'm not too

19  sure.  Because it's pretty late now.  I don't know if I can

20  get my money back.

21          THE COURT:  So give them a call, and we'll have you

22  come back in okay.

23          THE PROSPECTIVE JUROR:  Okay.

24          THE COURT:  Obviously, I mean if you were to miss

25  the trip, I think that would affect your ability to

JURY SELECTION                                    418

1    concentrate on the case, right?

2            THE PROSPECTIVE JUROR:  Yeah.

3            THE COURT:  Okay.  So just see if you can make a

4    call, and then we'll check back with you, okay?

5            THE PROSPECTIVE JUROR:  Okay.

6            THE COURT:  Okay, great.  Thank you.

7            (Prospective Juror exits the courtroom.)

8            (Prospective Juror enters the courtroom.)

9            THE COURT:  This is Juror 233?

10           THE PROSPECTIVE JUROR:  Yes.

11           THE COURT:  You can have a seat.

12           So what's going on?

13           THE PROSPECTIVE JUROR:  I -- I answered all the

14   questions on the questionnaire yesterday.  Honestly, after I

15   left this courtroom and you addressed the whole group of us, I

16   had things like this.

17           I'm not -- in no place did I expect to react like

18   this.  I'm not sure what the cause is.  If it's a high-profile

19   case and the nature of the crimes as you described them?  If

20   it's anything else, it's been like this since last night.  And

21   it has manifested in a -- I don't want to -- I've had an upset

22   stomach all morning and I -- I don't what exactly the cause is

23   since yesterday, or how to fix it, or how to make it that it

24   wouldn't affect me or my judgment, or anything like that.

25           THE COURT:  All right, well, I'm so sorry that this

JURY SELECTION                                         419

1   happened.  I'm just going to ask you to step out with

2   Ms. Greene and we'll get back in a little bit.  Okay?

3               THE PROSPECTIVE JUROR:  Thank you.

4               (Prospective Juror exits the courtroom.)

5               THE COURT:  All right, if you all want to

6   reconfigure yourselves, I don't know if you want to turn

7   around, but I think probably at least the first, Juror

8   Number 11 and Juror Number 233 have to be excused.

9               I don't know about the guy with the plane tickets.

10  I don't know how long it takes to get in touch with the

11  airline.  He seemed to be sort of casual about it.  But I

12  think we will give him a shot to see if he can change them.

13  Otherwise I think he's fine.

14              So my plan is to excuse 11 and 233, unless somebody

15  feels differently.

16              MR. CANNICK:  No.

17              MS. GEDDES:  No, Judge.

18              THE COURT:  Okay, all right.

19              As soon as Ms. Greene gets back...

20              (Pause in the proceedings.)

21              THE COURT:  Okay, so Juror Number 110 has plane

22  tickets, on what date, September 19th?

23              THE COURTROOM DEPUTY:  The 19th, yes.

24              THE COURT:  So I think we'll bring him up and see if

25  he can change those, or what the story is.

GA0747

1          (Discussion was had off the record.)

2          (Prospective Juror enters the courtroom.)

3          THE COURT:  You're Juror 110; is that right?

4          THE PROSPECTIVE JUROR:  Yes, ma'am.

5          THE COURT:  So what have you got to tell us?

6          You can sit down.

7          THE PROSPECTIVE JUROR:  Well, you asked me to check

8    whether or not I'm getting paid for four weeks.  And the

9    answer I got from my employee, since I'm a salary I can work

10   at any time.  So if I have my computer and I can perform tasks

11   afterward, so I could be paid.

12         THE COURT:  Okay.  Good.

13         THE PROSPECTIVE JUROR:  The other question I forget

14   to mention on application, is that we have tickets to

15   California for September 18th for two weeks.

16         THE COURT:  For two weeks?

17         THE PROSPECTIVE JUROR:  It's me, my wife and my son.

18         THE COURT:  I see.

19         THE PROSPECTIVE JUROR:  And that did not register to

20   me when I saw August 18th.  So four weeks of -- but then

21   there's also deliberations.

22         THE COURT:  It would be cutting it close.

23         Can you change any part of that ticket?

24         THE PROSPECTIVE JUROR:  Well, realistically the only

25   part I can change is I can delay my departure by a day or two

JURY SELECTION                                    421

1    or three.

2            THE COURT:  Would you be willing to do that?

3            THE PROSPECTIVE JUROR:  If it's only a day or two or

4    three.

5            THE COURT:  What if it's five?  I mean, I'm just --

6    I can't promise you.  We might be done.  The whole case might

7    be done by then.  But I'm not going to promise you that it is.

8    So, again, these are always good things to know, but it's

9    okay.

10           So it's really, you have to tell me.  I don't want

11   to ruin your family's vacation, but if you can move it back a

12   little bit, that would be --

13           THE PROSPECTIVE JUROR:  I can't move it back because

14   it's the time share, that first of all.  It's not just flying,

15   it's for two weeks.  Like I said, if I lose mine, we're

16   supposed to leave on Saturday, the 18th, I can go on Tuesday

17   or Wednesday, but it's un -- uncertain how many days.

18           So I -- I tried, Your Honor.  I change myself, if I

19   have to.

20           THE COURT:  All right, I'm going to have you step

21   out with Ms. Greene, okay?

22           THE PROSPECTIVE JUROR:  Okay.

23           (Prospective Juror exits the courtroom.)

24           THE COURT:  So I don't know what either sides'

25   positions are to Juror Number 110.

JURY SELECTION                                        422

```
 1           MR. CANNICK:  We don't object, Your Honor.
 2           MS. GEDDES:  The government agrees with defense
 3  counsel.
 4           THE COURT:  All right.
 5           (Pause in the proceedings.)
 6           MS. GEDDES:  Your Honor, are you planning to have
 7  the jury in the room when we exercise our peremptories?
 8           THE COURT:  No.
 9           MS. GEDDES:  Thank you.
10           THE COURT:  Is that usual?
11           MS. GEDDES:  Sometimes we do it at sidebar.
12           MS. SHIHATA:  But we prefer not.
13           THE COURT:  I'm just actually looking over the --
14  just the word about -- because it doesn't matter how many
15  times I do this I try to remember who goes first, but I think
16  I've got it.
17           So it will be six alternates, but we'll do the 12
18  from the first 28.  And then we'll do alternates from what's
19  left over.
20           State court sometimes you go back, but that's not
21  how we roll here.
22           (Pause in the proceedings.)
23           THE COURT:  And I think for Juror Number 166,
24  Ms. Greene is making sure he was on the phone.  The next step
25  I think might be for her to call for him.
```

JURY SELECTION                          423

1          MR. CANNICK:  I don't know what room number 182 is

2    in.  She was at sidebar yesterday, and we wanted her to be

3    excused for cause.  We wanted her to be excused for cause.

4    Excuse me.

5          MS. GEDDES:  I think she will qualify as an

6    alternate, and the government does object to her being excused

7    for cause.  I'm happy to address it.

8          THE COURT:  All right.

9          (Pause in the proceedings.)

10          THE COURT:  So I think that 182, I was counting

11    it -- so I think our 28th juror is 163.

12          MS. GEDDES:  I think it's 166, Your Honor.

13          THE COURTROOM DEPUTY:  163.

14          MS. CRUZ MELENDEZ:  The current...

15          THE COURT:  Oh, oh, oh, that's right.  Well, no, it

16    would be 165, right?

17          No, no, no, 166, because we're letting go 110 and

18    111.  So -- and depending on how swiftly 166 moves, we might

19    be 171.

20          So then one, two, three, four, five...  So then

21    we're -- so the 12 would end at 206; is that right?

22          MS. GEDDES:  206, if we don't have 166.

23          THE COURT:  And if we don't --

24          MS. GEDDES:  If we do have 166, I think it's 171 to

25    201.

LINDA D. DANELCZYK, RPR, CSR, CCR
Official Court Reporter

JURY SELECTION                                424

1          THE COURT:  All right.  Let me hear you on 182,

2     because we might as well take care of that now.

3          But what I'd like to do, just because we do have an

4     overflow room, is use the microphones.

5          MS. GEDDES:  Just make sure I'm not...

6          THE COURT:  Application for cause?

7          (Pause in the proceedings.)

8          MR. CANNICK:  She's waiting for me?

9          MS. GEDDES:  Yes.

10         MR. CANNICK:  Oh, I'm sorry.

11         THE COURT:  You were gathering your thoughts.

12         But what I'd like to do is use the microphone.

13         MR. CANNICK:  Sure, Your Honor.

14         Your Honor, we would ask that prospective jury 182

15    be excused for cause.

16         THE COURT:  Let's just put this into context.

17         She would be the pool -- part of the pool from which

18    the alternates would be selected, correct?

19         MR. CANNICK:  That is correct.

20         THE COURT:  And this is -- go ahead and put your

21    reasons on the record.  I know we discussed this on the record

22    yesterday also.

23         MR. CANNICK:  Yes, Your Honor.  I'm happy that the

24    Court has a recollection as to what we discussed yesterday

25    about this prospective juror, and I'd just like to augment on

JURY SELECTION                                           425

1   that.

2           Basically on the questionnaire she indicated she has

3   somewhat negative impressions of Mr. Kelly.  One of the things

4   she said yesterday that is really troubling and really can't

5   get around it, she indicated that she has a number of friends

6   who are involved in relationships where they've been

7   manipulated by men and men of power and prestige.  And that

8   it's been her experience that that has been consistent.  And

9   she also mentioned that her -- she had a family member, I

10  think it's her mom, who was also a victim of sexual harassment

11  and her uncle is a police officer.

12          Given the totality of what she said yesterday and

13  plus the questionnaire, I would ask -- and she said I think

14  statistically that women -- she's read some report that

15  statistically women do lie about being sexually abused.

16          THE COURT:  I recall.

17          MR. CANNICK:  Okay.

18          Based on those reasons, Your Honor, I don't see how

19  she can be bring fairness and impartiality to this process,

20  and I will ask that she be excused.

21          THE COURT:  Let me hear from the government.

22          MS. GEDDES:  Your Honor, the juror made clear that

23  she would not ascribe any additional credibility to a woman in

24  this particular case than any other witness.  She stated, when

25  Your Honor asked her:  "I wouldn't believe that she would have

1  a higher credibility."

2          And then she continued and said, "I'm not saying I

3  know what it is in this particular case or any case."

4          So, in essence, all she had said is that she read an

5  article that mentioned a study that statistically women tend

6  not to lie when they report about it.

7          But the question here is whether she can put aside

8  anything that she has previously read and not assign any

9  higher belief in a particular witness on account of that, and

10 she said that she could.  She said she wouldn't assign any

11 higher credibility to a women for testifying here.

12         And so in terms of exercising a for-cause challenge,

13 there's just not a basis here where she said she could be

14 fair.  She said it repeatedly.

15         And with respect to Mr. Cannick's other argument

16 about her other potential factors in the questionnaire, none

17 of those serve as a basis for cause either.

18         She made clear that she would put aside anything

19 that she previously read, and there's no issue.  I mean many

20 people, as Your Honor observed yesterday, have been victims of

21 sexual harassment.  There's no reason that that should affect

22 her ability to be a fair and impartial juror.

23         So I think the defense is free to exercise a

24 peremptory challenge as to this particular juror.  But if the

25 question is whether or not, which is what the question is in

JURY SELECTION                                            427

1   determining a for-cause challenge, this juror could be fair, I

2   think that the answer is she can.

3           She said she could, and the fact that she has read

4   some studies, number one, it doesn't mean that she buys into

5   it, but even if she did, as long as she can put it aside and

6   listen to the testimony and review all of the evidence fairly,

7   she can be a fair and impartial juror, and I believe she made

8   clear that she could.

9           THE COURT:  Mr. Cannick, is there anything that

10  you --

11          MR. CANNICK:  Yes, Your Honor.

12          Your Honor, I think that the prospective juror

13  testified that she doesn't recall whether or not she read it.

14          THE COURT:  Let's go to the microphone, if you don't

15  mind.

16          MR. CANNICK:  She doesn't recall whether or not she

17  read it or believes it.  I think that when you combine her

18  responses, the totality of what she said yesterday, I can't

19  see how we can believe that this juror can be free from

20  implicit bias and a preconceived notion as to what her real

21  feelings are about this.

22          It's easy to say, I can put it behind me, but given

23  the totality of things here, I just believe that there's an

24  implicit and preconceived bias that will come into the

25  process.

JURY SELECTION                                    428

1          THE COURT:  All right, I'm not sure that I would

2     call it "implicit bias," but I have this to say about it,

3     about this juror.

4          First of all, her uncle, who was a police officer, I

5     believe she said that he was deceased.  That to me is not a

6     factor requiring a cause challenge.

7          She also answered the questions satisfactorily, in

8     my opinion, about her views, which lots of jurors have, quite

9     frankly, about either seeing the charges or having heard

10    something having to do with the defendant.  And like other

11    jurors, she said she can put those feelings aside.

12         Where I part company with the government is on this

13    question of her response to the Me Too questions.  And I think

14    we all have to take into account, and not only what she said,

15    but the way she said it.

16         And this was a juror, in my view, who believed --

17    whatever the study is, I don't know how a person would

18    study -- the likelihood that someone's going to be untruthful

19    in a situation, but I don't express an opinion about that.

20         But she seemed to think that -- she took that as

21    fact.  And I think she said -- that her -- what she had said

22    is that 2 percent of people are untruthful in this situation.

23         And I don't -- like I said, I'm not passing judgment

24    on any study, but just like a witness, just like a juror who

25    said that she believes that police officers are statistically

JURY SELECTION                                      429

1   more likely to tell the truth, or any other category of sort

2   of generally accepting of one kind of witness.

3          I think that in this case, and just also bear in

4   mind in all cases we're talking about that, but the analysis

5   is no less appropriate is that she would assume, and she

6   almost as good has said, she would assume that when a woman

7   came and made accusations, that statistically they're more

8   likely to be true.

9          I don't think that that juror can be fair in this

10  case, so I'm going to grant the for-cause challenge.

11         I'm assuming, by the way, there aren't any other

12  cause challenges; is that correct?

13         MS. GEDDES:  There are none for the government.

14         MR. CANNICK:  One more request.

15         THE COURT:  Okay.

16         (Pause in the proceedings.)

17         MR. CANNICK:  Yes, I think that 93 might have -- 93

18  has an issue with the language.  He indicated he thinks that

19  he might understand, but he wasn't sure, and he thinks that he

20  could be fair and impartial.

21         THE COURT:  93?  The guy who likes the soccer

22  player?  He didn't -- I mean, sorry, but he didn't have any

23  trouble with English, nor did he indicate on his questionnaire

24  that he had any difficulty with English.

25         MS. GEDDES:  Your Honor, to make clear there was

1    *voir dire.*

2           THE COURT:  Yes, I just don't remember him saying

3    that he has a problem.  I mean, I'm not claiming I have a

4    photographic memory about it, but he runs marathons.  He likes

5    the soccer player.

6           MS. GEDDES:  Yes.

7           THE COURT:  I don't think he had trouble.

8           MS. GEDDES:  I think during *voir dire* he mentioned

9    it, but Your Honor also then questioned him about it, and he

10   said that he had understood everything that had happened.  He

11   seemed clearly read through the questions on the questionnaire

12   thoroughly, demonstrating a full comprehension of the English

13   language.  I don't think there's any reason to believe that he

14   could not be a competent juror here.

15          MR. CANNICK:  Lastly, Your Honor, he indicated that

16   he was somewhat uncomfortable with the case.

17          THE COURT:  I recall that, but I also think -- I

18   think this is one of those cases where, like many jurors, the

19   nature of the charges.  It should be disturbing to everyone.

20   I mean, nobody is asking these jurors to endorse what the

21   charges are.  But that's not the question.

22          The question is whether they can -- whether they can

23   give Mr. Kelly a fair trial.  And I instructed them that the

24   accusation is just an accusation.  And he confirmed all of his

25   understanding of those principles.  And so I'm not going to

JURY SELECTION                                    431

1    grant a cause challenge for him.

2            All right, so let me just speaker with Ms. Greene

3    for just a second.

4            (Discussion was had off the record.)

5            THE COURT:  All right.  Well, I have an update from

6    Ms. Greene about 166.

7            Apparently he still he hasn't located a phone number

8    yet.  So I think rather than wait for him, we'll just send him

9    on his way and then we'll start.  So he will be out.

10           He was taking a very leisurely approach to finding

11   out the answer to this question.  Unless somebody has some

12   disagreement about that.  Okay.

13           So just to be clear then, that takes us to?

14           THE COURTROOM DEPUTY:  171 would be Number 28.

15           THE COURT:  171 is Number 28.  Okay.

16           Okay, so 178 -- 171 is the 28th juror, so that

17   group, excluding Number 11, 110 and 166 will be the group from

18   whom we start with picking the panel of 12.

19           And I don't know if anybody knows, but the

20   government has six challenges, defense has ten.

21           And the way we'll do that, in round one, the

22   government goes first with one, then the defense exercises

23   two.

24           In the second round, the defense exercises two, and

25   the government exercises one.

JURY SELECTION                        432

1          In the third round, the government exercises one,

2   the defense exercises two.

3          In the fourth round, the defense exercises two, the

4   government one.

5          And the fifth round, the government exercises one,

6   the defense two.  Is that right?  Defense one.

7          And then in the sixth round, the defense exercises

8   one, and the government exercises one.

9          Then we'll -- from the alternates -- is it 182 that

10  is gone?  So 210, if I'm counting correctly.  I'm just always

11  uncertain.  210 should be -- well, we should go from 175 to

12  210 would be the pool for the six alternate jurors.

13         And then that -- and just to review how that works.

14  It will be the defense -- in the first round, the defense

15  exercises one, the government exercises one.

16         In the second round, the government exercises one,

17  defense exercises one.

18         In the third round, the defense exercises one, and

19  the government exercises one.

20         I might just check one other thing.  I'm so rusty.

21         (Discussion was had off the record.)

22         THE COURT:  So it's been a little while since I've

23  done this.  I think everybody knows this already, but if you

24  don't exercise a challenge in a round, you lose it.  So if you

25  were to only exercise one in a round when you have two, you

JURY SELECTION                                    433

1   don't get to save them until the end.  All right.

2              So I'll give you whatever time you need to make

3   those decisions, and I think we'll step out.

4              MS. GEDDES:  The government is ready.

5              THE COURT:  Oh, you're ready.  Okay.

6              MR. SCHOLAR:  We're not ready.

7              THE COURT:  How much time do you need?

8              MR. CANNICK:  Fifteen, 20 minutes.

9              THE COURT:  Okay.

10             MR. CANNICK:  Come back at 11:15?

11             THE COURT:  Sure.  I'm just going to, as a reminder,

12  just when you come back, please make sure you're using the

13  microphones, so if people are...

14             MR. CANNICK:  Yes, Your Honor.

15             THE COURT:  And then -- well, we can -- I think we

16  have some housekeeping things to talk to you about that don't

17  need to be discussed at the moment, so we'll be back.

18             (Pause in the proceedings.)

19             THE COURTROOM DEPUTY:  All rise.

20             THE COURT:  Everybody can sit down.

21             (Defendant enters the courtroom.)

22             THE COURT:  So I don't care if you sit with your

23  backs to me, it's not that, but I don't think I'll be able to

24  hear, you.  So...

25             Yes, and just make you're using the microphone.  All

GA0761

JURY SELECTION                                          434

1   right, so.

2              MR. CANNICK:  Just one second.

3              THE COURT:  Sure.

4              (Pause in the proceedings.)

5              THE COURT:  Okay, and just as a reminder, we're

6   going through the first 28.  And so I know you all know that

7   but...

8              So we're in round one, so government has one

9   challenge.

10             MS. GEDDES:  Number 45.

11             THE COURT:  The defense has two.

12             MR. CANNICK:  115.  165.

13             THE COURT:  All right.

14             Sorry, I don't -- do we have 115?

15             MS. GEDDES:  We do.  I hope.

16             THE COURTROOM DEPUTY:  Number 24, sorry.

17             (Discussion was had off the record.)

18             THE COURT:  115?

19             THE COURTROOM DEPUTY:  Yes.

20             MR. CANNICK:  Yes.

21             MS. CRUZ MELENDEZ:  It's one of the jurors who

22   didn't come on Monday, so he was taken out of order.

23             THE COURT:  Oh, it's 26.

24             THE COURTROOM DEPUTY:  It's 26?

25             THE COURT:  On my list it's 26.

JURY SELECTION                                    435

1          Oh, we made the correction.

2          All right, sorry.

3          Okay, 115.

4          MR. CANNICK:  And 165.

5          THE COURT:  Okay.  And then the defense has two in

6    round two.

7          MR. CANNICK:  Okay.  149 and 16.

8          THE COURT:  16?

9          MR. CANNICK:  16, yes.

10         THE COURT:  Now the government has one in round two.

11         MS. GEDDES:  135.

12         THE COURT:  Okay.  And the government has one --

13   we're starting round three, so the government has another one.

14         MS. GEDDES:  7.

15         THE COURT:  Okay.  And defense has two.

16         MR. CANNICK:  One second.

17         THE COURT:  Sure.

18         MR. CANNICK:  Your Honor, the government -- I just

19   want to respond to the government's challenge.  That's the

20   second black male --

21         THE COURT:  All right.

22         MR. CANNICK:  -- individual I think it's a female,

23   that was challenged by the government, and I don't see a -- a

24   neutral basis for that challenge.

25         THE COURT:  All right.  Are you making a *Batson*

JURY SELECTION                                         436

1    challenge?

2              MR. CANNICK:  Yes.

3              THE COURT:  Okay.  You haven't told me what number

4    you're talking about.

5              MR. CANNICK:  I the government's just challenged

6    Juror 7?

7              MS. GEDDES:  That's correct.

8              THE COURT:  And what's the basis?

9              MR. CANNICK:  The first one is 45, an African

10   American.  And the second is an African American.

11             THE COURT:  Are they men or women or -- the first?

12             MR. CANNICK:  The first.

13             THE COURT:  Number 7 is a 56-year-old woman from

14   Jamaica.

15             And what was the other one?  What was the other

16   number?

17             MR. CANNICK:  45.

18             THE COURT:  45.  Also a woman.  Okay.

19             And the basis of your application is a *Batson*

20   application because --

21             MR. CANNICK:  Because they're -- these are folks of

22   a protected class.  They -- it doesn't seem to be a gender

23   neutral nor a race neutral reason for challenging these

24   individuals.

25             THE COURT:  All right.  I'll hear from the

GA0764

1   government.

2          MS. GEDDES:  Yes, Judge.

3          The government does have neutral race basis for

4   challenging these two witnesses -- excuse me, these two

5   jurors.

6          With respect to Number 45, the juror, in her

7   questionnaire, indicated that the women --

8          THE COURT:  Oh, just speak into the microphone.

9          MS. GEDDES:  Sure.  The juror indicated that the

10  women were less of -- referring to the women in this case, I

11  don't know if she was talking about information that she had

12  heard previously.

13         She indicated that the woman stayed with him.  In

14  the government's view that demonstrated a reluctance to

15  potentially credit the allegations of the females who are

16  expected to testify here and give the government a harder

17  burden.  So that's why the government challenged Number 45.

18         She also indicated -- primarily that the women

19  stayed with them.

20         And then with respect to Number 7, she indicated in

21  her questionnaire that allegations don't matter, which is, of

22  course, true, but then went on to say that a person can choose

23  to do that, referring to the charged allegations here, and the

24  government believed that that demonstrated a lack of concern

25  for some of the charged conduct, and that was the reason that

JURY SELECTION                                     438

1    the government challenged Number 7.

2              THE COURT:  Do you have any response?

3              MR. CANNICK:  Yes, Your Honor.  And I just also want

4    to note that the three challenges the government has exercised

5    here, they're all African Americans.  I think they're all

6    females as well.

7              THE COURT:  You're only making a *Batson* as to those
     three?

8              MR. CANNICK:  Yes, I'm making a *Batson* to all three,

9    Your Honor.

10             THE COURT:  Who's the third?

11             MR. CANNICK:  The third is 135.

12             THE COURT:  Okay.  Okay, 135, okay.

13             And I'll hear from the government on 135.

14             MS. GEDDES:  With respect to 135, the juror

15   indicated that she's in between open minded or not, which was

16   of some concern to the government in the ability to reach a

17   verdict in this case.

18             And in addition to that, the juror indicated, I

19   think this was during *voir dire*, that she didn't look up or

20   look down on anyone.  And while that may be a very good thing

21   in many instances, here the government is concerned that it

22   demonstrated indifference to some of the potential testimony

23   that she would hear during this trial.

24             THE COURT:  Mr. Cannick, do you want to be heard on

25   all three of those?

JURY SELECTION                                         439

1          MR. CANNICK:  Yes, Your Honor.

2          THE COURT:  First of all, let's just -- since we've

3     got the questionnaires, just so I can keep it, and we'll start

4     with Juror Number 7.

5          Juror Number 7 in response to questions about the

6     case wrote and said that:  "She heard that the defendant was

7     messing with young females and keeping them from leaving his

8     place of residence.  That really doesn't matter to me if the

9     person chose to do that."

10         And then in response to question 32, which was:  "Do

11    you have a general impression of the defendant?"

12         She replied:  "Everyone has a mind of their own and

13    what do you is your own business not mine."

14         So let's take Juror Number 7 first.

15         Do you think that -- what's your response to -- do

16    you need to consult with your cocounsel?

17         MR. CANNICK:  Yes.

18         (Pause in the proceedings.)

19         MR. CANNICK:  Your Honor, as it relates to Number 7,

20    the responses that she gave on the questionnaire that the

21    government seems to have a concern about, seems to me there

22    was -- it may have been unclear in terms of what it is that

23    she was actually saying, but no one asked for clarity.  And

24    now the government raised an issue that seems to be somewhat

25    ambiguous as a race-neutral reason for challenging her as a

JURY SELECTION                                    440

1    prospective juror on the panel.

2              THE COURT:  Are you say that that's not a

3    race-neutral reason?

4              MR. CANNICK:  I do not think it's a race-neutral

5    reason, no.

6              And I also think that -- I know that for a fact when

7    the Court drilled down on questioning her, she indicated that

8    she could be fair and impartial and would certainly follow the

9    Court's instructions in terms of being a juror in this case.

10             And so what other concerns the government may have

11   had about the responses to those particular questions, those

12   were certainly cleared up when the Court inquired as to

13   whether or not she could be fair and impartial.

14             THE COURT:  Well, that would be an analysis cause

15   challenge.  This is not a cause challenge.  This is a fact

16   analysis, and I haven't been strictly following the order and

17   question.  So that's an analysis as to whether there's a

18   race-neutral reason for the exclusion.

19             And are you saying this is not?  This is what this

20   woman wrote in the questionnaire.  You're saying that's not --

21   that's pretextual?

22

23             (Continued on the following page.)

24

25

JURY SELECTION                                441

1              (In open court.)

2              MR. CANNICK:  What I'm saying, your Honor, is that I

3    think the responses are, at best, could be argued as ambiguous

4    and the Court was not asked by the Government to follow up and

5    get clarity as to what, in fact, she meant and by those

6    responses.

7              THE COURT:  And, again, these are peremptory

8    challenges.  And so, if we were talking about whether or not

9    to excuse the juror for cause, that would be a valid argument.

10   But what you're asking me to do is to find that the Government

11   is exercising challenges in a racially discriminatory way.

12   And under Batson, the question is whether at this stage of the

13   analysis is whether the reasons that they've articulated are

14   nondiscriminatory and nonpretextual.  I don't think that's a

15   particularly strong argument for you on the pretext on that

16   one.

17             What I'm going to do is hear all of your challenges

18   and I'm going to take a minute just to consider them.

19             And so, I think that's all you have to say about

20   No. 7.

21             MR. CANNICK:  Yes.

22             THE COURT:  The next juror is juror, sorry.

23             MS. GEDDES:  45.

24             THE COURT:  Sorry.

25             MS. GEDDES:  45.

JURY SELECTION                                442

1          THE COURT:  Okay.  All right.  I think just, correct

2   me if I'm wrong, this would be the answers to questions, I

3   think, are on 31 and 32.

4          MS. GEDDES:  That's correct, your Honor.

5          THE COURT:  Just for the record, the question is,

6   Have you watched any interviews or any television shows

7   featuring the defendant?  And the prospective juror responded

8   yes and said, There are two sides to each story.  Some of the

9   females denied being held against their will, they willingly

10  stayed with him.  And then -- is that what you were focusing

11  on.

12         MS. GEDDES:  Yes, your Honor.

13         THE COURT:  Okay.  And, again, just keeping in mind

14  that these are peremptory challenges not cause challenges,

15  what is your position on that?

16         MR. CANNICK:  Your Honor, I think that that's a

17  pretextual explanation by the Government.  That response has

18  indicated that the prospective juror is saying that I am

19  prepared to listen to the case saying that there are two sides

20  to the situation, and that there is an explanation that may be

21  these women, some of them at least, made a choice to stay.

22         And I think the response that's given, the responses

23  that were given to those questions, are certainly ones that

24  are clearly in the middle.  They seemed to be appropriate in

25  terms of what the question was calling for to see whether or

1   not the juror could be of fair and open mind in terms of

2   making his evaluation.  But the explanation the Government is

3   giving here is clearly pretextual.

4              THE COURT:  Clearly pretextual?

5              MR. CANNICK:  Yes.

6              THE COURT:  Let's hear -- give me the last, I'm

7   sorry.

8              MS. GEDDES:  135, your Honor.  This was based in

9   part on her question, excuse me, in part on her responses

10  during voir dire.

11             THE COURT:  Just remind me what your position on

12  this juror was, what your concerns were.

13             MS. GEDDES:  Yes.  With respect to her

14  questionnaire, it was supplemented by the voir dire.  She

15  described herself as in between open-minded and not indicating

16  a potential issue with reaching consensus among the jury.  And

17  then, during her voir dire, she said she doesn't look up or

18  look down on anyone and the Government interpreted that

19  comment as potentially indicating an indifference to what the

20  victim -- what the witnesses were going to testify, like, she

21  wasn't going to become particularly concerned about their

22  testimony and that's why the Government struck her.

23             THE COURT:  Okay.  And what's your response to that?

24             MR. CANNICK:  That's pretextual understanding by the

25  Government.  I think the Government is fashioning its

JURY SELECTION                                    444

1  understanding to support its challenge.  I think when you go

2  back and look at her responses, her responses were clearly

3  neutral as terms of being able to evaluate the case fairly and

4  impartially for both sides.

5          THE COURT:  Can I hear both sides your understanding

6  of the analysis the Court has to undergo in determining a

7  Batson challenge.

8          Let me start with you, Counsel.

9          MR. CANNICK:  Mr. Scholar is going to respond.

10         THE COURT:  You have a microphone?

11         MR. SCHOLAR:  Yes, your Honor.

12         THE COURT:  Thanks so much.

13         MR. SCHOLAR:  As the Court knows, the Batson

14  analysis goes in three stages.

15         The first, the defense must indicate that the

16  stricken juror is part of a protected class.  Then the Court

17  would then move on to ask the Government to find out what

18  their reason was in a neutral way.  And then the Court would

19  have to look at whether the defense is showing a purposeful

20  discrimination.

21         So the Court would then look at whether the

22  responses by the Government were pretextual and whether there

23  were any follow-up questions at the time by the Government,

24  whether they sought to, I guess, follow up on any of the

25  concerns they had at the time in real-time which, in this

JURY SELECTION                              445

1   case, they have not.  And based upon that, I think that's why

2   we are indicating that those responses were pretextual.

3              THE COURT:  Okay.  Government?

4              MS. GEDDES:  Yes, your Honor.  The government agreed

5   with counsel up until the last part.

6              Under the law, the moving party, the defense in this

7   case, has to make a prima facie showing that the challenge is

8   based on a protected class.  The opposing party, the

9   Government here, if a prima facie case is made, must come

10  forward with a neutral explanation for striking that

11  particular prospective juror.

12             And then the Court must decide whether in this case

13  the Government's explanation is pretextual.  Here, the

14  Government has provided a race neutral reason for each of

15  their peremptory challenges and there's no basis in the

16  Government's view to find that those motivations were

17  pretextual.

18             MR. SCHOLAR:  Just our response is that in looking

19  at whether the answers were race neutral, the Court can look

20  at whether at the time the juror was answering those questions

21  whether the Government asked or was thought to ask any

22  follow-up questions to flesh out those issues and they did not

23  in this case.

24             THE COURT:  And just remind me, I just don't have my

25  chart in front of me.  How many peremptory challenges have you

GA0773

JURY SELECTION                                    446

1    exercised, has the Government exercised?

2              MS. GEDDES:  Three.

3              THE COURT:  Three.  How many have you exercised?

4              MR. CANNICK:  I've exercised four.

5              THE COURT:  Anything else that you want to say?

6              MR. CANNICK:  Nothing further, your Honor.

7              MS. GEDDES:  Your Honor, I would just note that in

8    our submission to your Honor, we did address some of the

9    issues that we just raised in our questions.

10             So it's certainly -- I'm sorry -- in our submission

11   to your Honor, questions to pose to the venire we did address

12   the very concerns that we raised here showing that these were

13   concerns that had nothing to do with the race.  Frankly, at

14   the time the Government prepared these -- reviewed the

15   questionnaires, we would have had no idea what the race was of

16   these individuals.

17             THE COURT:  Let me just ask.  With respect to the

18   last juror, what was the question when you submitted the

19   questions to me you wanted me to put to her during voir dire.

20             MS. GEDDES:  I don't think it was with respect to

21   the last juror because my concerns with the last juror were --

22   oh, I'm sorry, I've been corrected.

23             With respect to 135, we did ask whether the juror

24   would be able to put aside anything she had previously seen

25   and heard and follow the Court's rules to evaluate the merits

GA0774

JURY SELECTION                                              447

```
 1   of this case.

 2              MR. CANNICK:  The last question was put to the

 3   prospective juror; the juror responded that she could.

 4              THE COURT:  Right.  Again, I'm just differentiating

 5   between the cause challenges and why something is a pretext

 6   for discrimination.  Those are two radically different things.

 7   And what I'm going to do is just take ten minutes.  I

 8   understand everybody's arguments and I will join you in just a

 9   minute, okay?

10              (Defendant exits from courtroom.)

11              (A recess in the proceedings was taken.)

12              COURTROOM DEPUTY:  All rise.  Everybody can have a

13   seat.

14              (Defendant enters the courtroom.)

15              THE COURT:  All right.  I have carefully considered

16   this matter and I've examined the relevant questionnaires on

17   the issue.

18              Under Batson, the moving party has to make a prima

19   facie case that the challenge that the other party made was on

20   the basis, in this case, of race and gender is that the other?

21              MR. CANNICK:  Yes, your Honor.

22              THE COURT:  All right.  Then it moves to the

23   non-moving party to come up with a race neutral reason

24   justifying the challenge that involves making a credibility

25   determination on the part of the party making the challenge as
```

JURY SELECTION                                      448

1    well as an examination of the record.

2              Then the Court must decide, again, part of that is a

3    credibility determination if the reason advanced by, in this

4    case the Government, is pretextual.

5              In this case, the Government exercised its first

6    three challenges and all of those challenges were to black

7    women.  On its own, that would be concerning, but under these

8    circumstances, I'm denying the Batson challenge for the

9    following reasons.

10             And I think with respect to No. 7 and No. 45, the

11   questions that were given in the answers that were given in

12   the questionnaire to which I referred earlier clearly form the

13   basis for a valid peremptory challenge given the attitudes

14   that could be discerned from those questionnaires.

15             And with respect to -- so that's Jurors No. 7 and

16   45.

17             With respect to Juror No. 135.  Juror No. 135

18   expressed in her questionnaire that she was in the middle

19   about whether she could be open-minded.  I credit the

20   Government's reasons for these challenges, but as I said, I've

21   give continue careful thought and I have looked at the entire

22   record as well as looking at, well, as I said, I looked at the

23   entire record.  So the challenge is denied and you have an

24   exception.

25             MR. CANNICK:  Thank you.

JURY SELECTION                                    449

1           THE COURT:  All right.  Can someone remind me where

2    we were?

3           MS. GEDDES:  I believe --

4           MR. CANNICK:  Your Honor, I think I'm supposed to be

5    giving my challenges as to the third round.

6           THE COURT:  Okay.

7           MR. CANNICK:  And those would be 93 and 151?

8           THE COURT:  Okay.  And, Government.

9           MS. GEDDES:  Is it defense again?

10          THE COURT:  Defense has two more.

11          MR. CANNICK:  108 and 160.

12          THE COURT:  Government?

13          MS. GEDDES:  171.

14          THE COURT:  And then we're now, I think, in the

15   fifth round so the Government goes first.

16          MS. GEDDES:  133.

17          THE COURT:  And the defense?

18          MR. CANNICK:  138.

19          THE COURT:  And the defense again for the sixth

20   round.

21          MR. CANNICK:  106.

22          THE COURT:  Then the Government.

23          MS. GEDDES:  58.

24          THE COURT:  Let's go over --

25          MR. CANNICK:  Your Honor, may we have a second,

JURY SELECTION                                              450

1   please.

2            THE COURT:  Sure.

3            (A brief pause in the proceedings was held.)

4            MR. CANNICK:  Thank you, your Honor.

5            THE COURT:  You're good?

6            MR. CANNICK:  Yes.

7            THE COURT:  So I think what we should do now is go

8   over the 12, I think that gets us to 12.  Who will be the 12

9   jurors and let me just consult with my expert here.

10           (A brief pause in the proceedings was held.)

11           THE COURT:  Just to go over those first 12.  No. 2

12  is the first juror.  No. 12.

13           MS. GEDDES:  Your Honor, I'm sorry, to interrupt you

14  but I just did --

15           THE COURT:  Not that sorry, but okay.

16           MS. GEDDES:  I apologize all the same.

17           The Government just had a chance to look at the

18  defendant's challenges and see that at least eight of them

19  were -- seven or eight on our count were --

20           THE COURT:  Microphone, please.

21           MS. GEDDES:  Were of white jurors.  And we would

22  just raise a reverse Batson challenge here and ask the defense

23  to provide a race neutral reason as to those challenges.

24           THE COURT:  Each one of them?  Are they white men

25  and women?

GA0778

JURY SELECTION                                    451

1          MS. GEDDES:  They're mostly white women, but there

2     are some white men in there.

3          THE COURT:  Can I see just the two lawyers up at the

4     front here for a minute?

5          (Discussion held off the record.)

6          (Continued on the next page.)

GA0779

SIDEBAR CONFERENCE                                              452

1          (Sidebar conference held on the record in the

2     presence of the Court and counsel.)

3          THE COURT:  I don't want to say how many years I've

4     been doing this but this is probably the most fraught

5     challenge that be can be made to either lawyer.  It can be

6     personally very troubling and I think that any lawyer who has

7     had that, who has had a Batson challenge leveled against them

8     has that feeling of, well, it's not a good feeling.

9          How many challenges are you talking about here in

10    terms of -- and then we'll go back in a second.  I don't want

11    a freak out upstairs.

12         MS. GEDDES:  There were seven or eight and why I say

13    "seven or eight" is I'm unclear as to the race as to one of

14    them who appears to be white jurors and of the --

15         THE COURT:  This is what I'm going to do.  We'll go

16    back on the record.  I'm going to give you a few minutes to go

17    over your notes and then tell me what the challenges you want

18    to make and if it's -- what I don't want to to be is, well, I

19    think you understand my point.

20         MS. GEDDES:  I do.  What I would ask is if defense

21    counsel could simply provide to me off the record the reasons

22    for the challenge so we don't have to go forward.

23         THE COURT:  Why don't you talk amongst yourselves?

24         MR. CANNICK:  We have them listed.

25         THE COURT:  We'll take another ten minutes.

SIDEBAR CONFERENCE                                         453

1          MS. GEDDES:  All right.

2          MR. CANNICK:  All right.

3          (Sidebar discussion concludes.)

4          (Continued on the next page.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Anthony D. Frisolone, FAPR,  RDR, CRR, CRI, CSR*
*Official Court Reporter*

GA0781

COLLOQUY                                    454

1              (In open court.)

2              THE COURT:  All right.  Just logistically I was

3     trying to figure out from counsel what the next step should

4     be.  Let's take ten minutes so that I think counsel is going

5     to confer and then I'll hear from you on the extent to which

6     you're making a reverse Batson challenge.

7              MS. GEDDES:  Thank you, Judge.

8              THE COURT:  Just remind me because I'm going to look

9     over my notes just in preparation which -- how many jurors

10    you're talking about.

11             MS. SHIHATA:  Your Honor, it's Juror 165.

12             THE COURT:  Can you speak into the microphone?

13             MS. SHIHATA:  Juror 165.

14             THE COURT:  Okay.

15             MS. SHIHATA:  149.

16             THE COURT:  Okay.

17             MS. SHIHATA:  16.  93.  151.  108.  138.  58.

18             MR. CANNICK:  58?

19             THE COURT:  58 is --

20             MS. SHIHATA:  I'm sorry, 106.  I apologize.

21             THE COURT:  Okay.  So let's just take ten minutes

22    and then we'll reconvene.

23             (Defendant exits from courtroom.)

24             (A recess in the proceedings was taken.)

25             COURTROOM DEPUTY:  All rise.

COLLOQUY                                    455

1          THE COURT:  Everybody can sit down.

2          (Defendant enters the courtroom.)

3          MS. GEDDES:  I apologize, Judge, I'm just listening

4   to their reasoning.

5          THE COURT:  That's okay.

6          MR. CANNICK:  We just gave them; they're evaluating.

7          (A brief pause in the proceedings was held.)

8          THE COURT:  All right.  I just want to remind

9   everybody to speak into the microphone, okay?

10          MS. GEDDES:  Thank you, Judge.  Thank you for giving

11   us the opportunity to speak with counsel.

12          Counsel has now provided its reasons for each of its

13   strikes and the Government is satisfied that given the low bar

14   that there are sufficient race neutral reasons for each of

15   those.

16          THE COURT:  Thank you for conferring on that.  Okay.

17   So I think I went through the list of 12.

18          MR. CANNICK:  You started.

19          THE COURT:  I think I finished.

20          MS. GEDDES:  I think I interrupted you.

21          THE COURT:  All right.  So let's start again.

22          So the first juror is No. 2.  The second juror is

23   No. 12.  The third juror is No. 25.  The fourth juror is

24   No. 52.  The fifth juror is No. 87.  The sixth juror is

25   No. 88.  The seventh juror is No. 145.  The eighth juror is

GA0783

COLLOQUY                                    456

1    No. 147.  The ninth juror is No. 156.  The tenth juror is

2    Juror 29.  The eleventh juror is Juror 153.  And the twelfth

3    juror is Juror 163.

4              Does that comport with everybody's list?

5              MS. GEDDES:  It does for the Government.

6              THE COURT:  All right.  So the next, let's go on to

7    the alternate jurors.

8              And so, in round one the defense will go first.

9              MR. CANNICK:  191.

10             THE COURT:  And the Government?

11             MS. GEDDES:  201.

12             THE COURT:  Government.

13             MS. GEDDES:  185.

14             THE COURT:  Defense.

15             MR. CANNICK:  177.

16             THE COURT:  Defense.

17             MR. CANNICK:  We're trying to see if we -- 266.

18             THE COURT:  266?  I don't think that's in our -- is

19   that.

20             COURTROOM DEPUTY:  No.

21             THE COURT:  That's beyond the range.  210 is the

22   last juror in this group.

23             MR. CANNICK:  One second, please, your Honor.

24             THE COURT:  Sure.

25             MR. CANNICK:  200.

COLLOQUY                                    457

```
 1              THE COURT:  Okay.  I've lost my place, I'm sorry,
 2     who is turn is it?  Government?
 3              MR. CANNICK:  Yes.
 4              MS. GEDDES:  One minute, Judge, I'm sorry.
 5              THE COURT:  Yes.
 6              MS. GEDDES:  184.
 7              MR. CANNICK:  I'm sorry.
 8              MS. GEDDES:  184.
 9              THE COURT:  All right.  Let me confirm with
10     Ms.  Greene.
11              So Alternate No. 1 is Juror 175.  Alternate No. 2 is
12     Juror 179.  Alternate No. 3 is Juror 188.  Alternate No. 4 is
13     Juror 199.  Alternate No. 5 is Juror 206.  And Alternate No. 6
14     is 210.
15              So what we'll do next we've sent the jurors for
16     lunch.  So what we'll do next is we'll come back at
17     2:00 o'clock and then I'll give them some instructions.  We
18     will swear them in, I'll give some instructions and meet with
19     the marshals to get instructions from them and I don't think
20     we have anything else to do.  I guess I'm expecting a response
21     from you on the motion to dismiss.
22              MS. GEDDES:  Friday, correct?
23              THE COURT:  Yes.  And then I think I've already gone
24     over the rules of the road.  We've had to make a few
25     adjustments courtroom wise.  I think we're going to be trying
```

COLLOQUY                                    458

1   it in my courtroom and the jury room is going to be in

2   Judge Dearcy Hall's.  Logistically, it wasn't working the

3   other way.  So it will be in my courtroom, but we'll have them

4   here this afternoon or up in?

5              COURTROOM DEPUTY:  We'll have them here.

6              THE COURT:  All right.  And then I don't think

7   there's anything else to discuss.  I think I went over my

8   basic trial rules which overarching theme is no drama and no

9   speaking objections.  I know everybody knows the rules on

10  opening statements, so I'm not going to tell you about that.

11  But I'm sure everybody knows that opening statements are what

12  you expect the evidence to prove, they're not a preview of

13  your summation.

14              All right.  So we'll see everybody at 2:00 o'clock.

15              (Defendant exits from courtroom.)

16              (Luncheon recess taken.)

17              (Continued on the next page.)

18

19

20

21

22

23

24

25

*Anthony D. Frisolone, FAPR,  RDR, CRR, CRI, CSR*
*Official Court Reporter*

JURY SELECTION                                          459

```
1              A F T E R N O O N   S E S S I O N

2          (Time noted:  2:10 p.m.)

3          (In open court; jury not present.)

4          (Defendant enters the courtroom.)

5          THE COURTROOM DEPUTY:  All rise.

6          THE COURT:  Everybody can sit down.

7          Okay.  Are we ready for our jurors?

8          Bring them in.

9          THE CLERK:  All rise.  Jury entering.

10          (Jury enters.)

11          THE COURTROOM DEPUTY:  You may be seated.

12          Jurors, when I call your number, you are excused

13  with the thanks of the Court.

14          Juror Number 7, 16, 45, 58, 93, 106, 108, 133, 135,

15  138, 149, 151, 160, 115, 165, 171, 177, 184, 185, 191, 200,

16  201, 182, 216, 218, 252, 266, and 269.

17          THE CLERK:  269?

18          THE COURTROOM DEPUTY:  269.

19          Would the jurors please stand and raise your right

20  hand?

21          (Jury sworn.)

22          THE COURTROOM DEPUTY:  Thank you.

23          You may be seated.

24          THE COURT:  Okay.  First of all, good afternoon,

25  everyone.
```

GA0787

1               THE JURY:  Good afternoon.

2               THE COURT:  All right.  Now that you have been

3      selected and sworn as jurors, there are a number of

4      instructions that I'm going to give you regarding your conduct

5      as jurors.  These rules are critical to the fair trial for

6      both sides, and you must follow them.

7               Give me just one moment, please.

8               (Pause.)

9               THE COURT:  Sorry.  Bear with me for just a second.

10              (Pause.)

11              THE COURT:  Can I see counsel briefly -- off the

12     record -- just at the table?

13              (Discussion held off the record.)

14              THE COURT:  Sorry about that, everybody.

15              Okay.  Let me start over again.

16              These are rules that you must follow.  The reason we

17     give you these instructions is to make sure that the trial

18     functions as efficiently as possible.  These rules are also

19     critical to the fair functioning of the trial, and so I expect

20     that everybody will follow them.

21              The first rule is that you cannot speak to anybody

22     about the case at all.  That includes people at your homes.

23     Obviously, you can tell people that you were selected as a

24     juror at home and what the time is, you know, what time you

25     have to be away from home, but you can't talk about the case

JURY SELECTION                                    461

1    at all in any way, shape, or form.

2            Remember, too, that your identities are being kept

3    confidential, so please don't tell anybody who you are or

4    anything like that.  As I said, that's because of the media

5    attention to the case.

6            In terms of speaking about the case, you also can't

7    speak with one another about the case, which I think is much

8    harder because it's the only experience that all of you share,

9    but you can't talk about the case.  If you were to start

10   talking about it before deliberations, before you've heard all

11   the evidence, before you've heard my instructions on the law,

12   then you would be deliberating prematurely and the law does

13   not permit that.

14           I've told you before, and I will be repeating it

15   throughout the course of this trial, you may not do any

16   independent research about this case at all.  Don't look up

17   anything on the internet; don't look up anything on social

18   media.  I know sometimes people think, oh, well, it won't

19   hurt.  Don't do it.  You will be violating your oaths as

20   jurors if you start doing your own research on a case.  The

21   reason for that, as I've explained to you before, is that

22   jurors in a criminal case decide the case based only on the

23   evidence, not on something that you hear outside of the

24   courtroom or that you read on social media.

25           Equally important, don't do any of your own -- when

JURY SELECTION                                          462

1   I say "don't communicate with anybody," that means don't

2   communicate in all of the ways that people can communicate in

3   2021, whether it's by social media or texting, in any way

4   about this case.

5           You also must report directly to me any effort by

6   anyone to influence you improperly about the case.  If anybody

7   tries to speak to you about the case or approaches you about

8   the case, you must report that to me.

9           As I told you yesterday, the lawyers are not

10  permitted to speak to you at all, even to say "good afternoon"

11  or "good morning," so please don't think they're being rude if

12  they don't greet you.

13          The next step, you will be going with Ms. Greene,

14  and then with the marshals, who will give you further

15  instructions.  Ms. Greene is the source of all information in

16  this trial, and you listen to what she says, and obviously

17  listen to what the marshals say.

18          I just want to see counsel -- it doesn't have to be

19  on the record -- just for a minute up at the bench.

20          (Discussion held off the record.)

21          THE COURT:  Okay.  And just related to not talking

22  about the case, don't even tell anybody what trial you are on.

23  Don't identify it in any way, shape, or form.  I want you to

24  be able to concentrate on this case and all of the things that

25  happen in the courtroom, so nothing about the case that you're

*Denise Parisi, RPR, CRR*
*Official Court Reporter*

JURY SELECTION                                        463

1  working on, nothing about the case.

2          I think now we can -- do you want them to go with

3  you?

4          THE COURTROOM DEPUTY:  Yes.

5          THE COURT:  Thanks so much, everybody.

6          Before we go, let me give them the schedule.

7          I guess it would be good to know when you have to

8  come back.

9          The next time that we'll meet is on August 18th.  We

10 are we're going to start at 9:30, so I would like you to be

11 here between 9:00 and 9:30 so we can hit the ground running

12 right away, so be here then.  And Ms. Greene will tell you

13 specifically where to go, okay, once you get in the building.

14 All right?

15         Thanks so much.  I will see you in about a week.

16         THE JURY:  Thank you.

17         (Jury exits.)

18         THE COURT:  Okay.  Everybody can have a seat.

19         Anything before we break for the day?

20         MS. GEDDES:  Not from the Government.

21         MR. CANNICK:  Just --

22         THE COURT:  Microphone.

23         MR. CANNICK:  It's really not a record issue.

24         The Government indicated that they would let us know

25 who would be first, second, third on deck.

JURY SELECTION                                    464

1              MS. GEDDES:  I will let you know.  I don't know

2     right now, but I will let you know in advance.

3              THE COURT:  Right.  We talked about that.

4              MR. CANNICK:  Yeah.

5              THE COURT:  Do you want me to say anything else

6     about that?

7              MR. CANNICK:  I just wanted to --

8              MS. GEDDES:  You wanted to remind them?  Okay.

9              MR. CANNICK:  I just wanted to know whether or not

10    we would have that information today or --

11             MS. GEDDES:  I don't have it yet, but I will provide

12    it to counsel.

13             THE COURT:  Okay.  And in advance of the 18th.

14             MS. GEDDES:  Yes.

15             THE COURT:  Okay.  Thank you.

16             Anything else?

17             MR. CANNICK:  Nothing.

18             THE COURT:  All right, everybody.  Thanks so much.

19             (Matter concluded.)

20

21

22

23

24

25