# 22-1481 22-1982 (con)

## UNITED STATES COURT OF APPEALS

*for the*

## SECOND CIRCUIT

▶ ◀

**UNITED STATES OF AMERICA,**

*Appellee,*

-v.-

**ROBERT SYLVESTER KELLY
AKA R. KELLY**

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**REPLY BRIEF FOR DEFENDANT-APPELLANT ROBERT SYLVESTER KELLY**

JENNIFER BONJEAN
ASHLEY COHEN
BONJEAN LAW GROUP, PLLC
750 Lexington Avenue, 9th Floor
New York, NY 10022
(718) 875-1850

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.………………………….………………….....    i

TABLE OF AUTHORITIES………………………………………………    ii

ARGUMENT

    I.   The Government Failed to Prove Defendant Guilty of Racketeering Where the Record is Devoid Of Evidence Of An Enterprise Comprised of Members Who Shared A Common Illegal or Fraudulent Purpose and Where the Defendant and the Alleged Enterprise Were Indistinct……………………….................................    1

        A.  The Jury Instructions Were Not Deficient - The Evidence Was……………………………………….......................    2

        B.  An Enterprise Requires a Shared Purpose of Fraudulent or Illegality as the Government Charged in Its Indictment………    5

        C.  The Government Did Not Show A Common Purpose of Any Illegal Or Illicit Conduct As Charged…………………………    11

        D.  Defendant and the Enterprise Are Not Distinct………………    17

    II.  The Government's Evidence Of Intent As to the Mann Act Violations Related to Jane and Faith Were Insufficient…………………………    18

    III.  Defendant Was Denied A Fair And Impartial Jury Where Several Of The Seated Jurors Admitted That They Prejudged The Defendant's Guilt and Trial Counsel Provided Ineffective Assistance of Counsel When He Failed to Move To Disqualify Patently Unqualified Jurors……………………………………….......................................    20

CONCLUSION………………………………………………………    23

# TABLE OF AUTHORITIES

**Cases**

*Bennett v. U.S. Trust Co. of New York*, 770 F. 2d 308 (2d Cir. 1985) ....................17

*Boyle v. United States,* 556 U.S. 928 (2009) ............................................................7

*Brannon v. Boatmen's First Nat'l Bank of Oklahoma, T.B.A.,*
153 F. 3d 1144 (10th Cir. 1998) ................................................................17

*D'Addario v. D'Addario,* 901 F. 3d 80 (2d Cir. 2018)................................................8

*Estes v. Texas,* 381 U.S. 532 (1965) ........................................................................21

*First Capital Asset Mgmt. v. Satinwood, Inc.,*
385 F. 3d 159 (2d Cir. 2004)........................................................................6

*First Nationwide Bank v. Gelt Funding, Corp.,*
820 F. Supp. 89 (S.D.N.Y. 1993) ................................................................6

*Hirsch v. Enright,* 751 F. 2d 628 (3d Cir. 1984)......................................................17

*Marshall v. United States,* 360 U.S. 310 (1959)......................................................22

*McCullough v. Suter,* 757 F. 2d 142 (7th Cir. 1985)................................................17

*Moll v. US Life Title Ins. Co. of New York,*
654 F. Supp. 1012 (S.D.N.Y. 1987) ............................................................6

*Rideau v. Louisiana,* 373 U.S. 723 (1963)...............................................................22

*Riverwoods Chappaqua Corp. v. Marine Midland Bank,*
*N.A.,* 30 F. 3d 339 (2d Cir. 1994) ...............................................................17

*Turner v. Louisiana,* 379 U.S. 466 (1965)...............................................................22

*Turney v. Ohio,* 273 U.S. 510 (1927).......................................................................21

*United States v. Cianci,* 378 F. 3d 71 (1st Cir. 2004)................................................10

*United States v. Dove,* 2018 U.S. App. LEXIS 5685 (2d Cir. 2018) ........................4

*United States v. Feldman,* 853 F. 2d 648 (9th Cir. 1988)........................................10

*United States v. Minicone,* 960 F. 2d 1099 (2d Cir 1992) .......................................12

*United States v. Turkette,* 452 U.S. 576 (1981) .......................................................8

# ARGUMENT

**I.**     **The Government Failed to Prove Defendant Guilty of Racketeering Where the Record is Devoid Of Evidence Of an Enterprise Comprised of Members Who Shared A Common Illegal or Fraudulent Purpose and Where the Defendant and the Alleged Enterprise Were Indistinct.**

The government largely concedes that it did not prove beyond a reasonable doubt that Defendant's "inner circle" shared a common purpose to engage in a fraudulent or illegal course of conduct. Instead, the government makes a frivolous waiver argument and insists that it was never required to prove a common purpose of illicit conduct in the first place, even though the indictment charged it. The government now seeks to constructively amend the indictment to remove an essential element of its enterprise theory to circumvent its proof problems.

The government makes virtually no effort to address Defendant's separate contention that evidence of an enterprise was insufficient where Defendant and the alleged enterprise were indistinct. The government's evidence at its best shows only that Defendant used his status and authority to engage his employees in routine (sometimes odd) tasks that unwittingly facilitated his private sexual activities. That the government suspects that some of Defendant's employees "turned a blind eye" or knew more than they let on is not sufficient evidence that the members of the so-called enterprise shared a common purpose of promoting

Defendant's illegal sexual conduct - a necessary element to the charged RICO offense.

### A. The Jury Instructions Were Not Deficient - The Evidence Was.

Preliminarily, the government did not argue below that Defendant's Rule 29 challenge to the government's evidence of an enterprise was misplaced and that his objection was actually to the court's jury instructions. More importantly, the District Court concluded that the question of whether an enterprise was proven beyond a reasonable doubt was a proper Rule 29 claim. The government's attempt to recast this sufficiency of the evidence challenge as a defective jury instruction issue is specious. Having proposed the jury instructions, the government knows that they accurately stated the law, that they included that government's theory of an illicit common purpose, and most importantly, that they told the jury that the government was required to prove an enterprise *as charged in the indictment*. The problem is not with the instructions - it is with the proofs.

Critically, the government fails to acknowledge that the jury instructions incorporated language from the third superseding indictment, including the government's claim that the common purpose of the enterprise was to engage in an *illegal* common purpose. In the instruction setting forth the "existence of an enterprise" the jury was expressly instructed that the indictment alleged that "the purposes of the Enterprise were to promote R. Kelly's music and the R. Kelly

2

brand, to recruit women and girls to engage in *illegal* sexual activity with KELLY and to produce pornography, including child pornography." [DE 303 at pg. 24] The instruction also told the jury that although the government is not required to prove each and every allegation about the enterprise, "[t]he enterprise proved . . . must be essentially the one alleged in the indictment." [*Id.* at pg. 29] In other words, the government conceded that it *was* required to prove that Defendant's employees or so-called "inner circle" shared a common purpose to engage in illegal or illicit conduct, namely "to recruit women and girls to engage in illegal sexual activity with KELLY and to produce pornography, including child pornography."

The government pretends that it never charged an illegal common purpose, pompously declaring, "the parties' proposed instructions, adopted by the district court, set a benchmark for the government to meet; the government met the mark; and Kelly now objects that the government did not instruct sufficient evidence for the jury to find that another, previously unspecified required was met." (Gov. Br. 41) Defendant agrees that the jury instructions "set a benchmark for the government to meet." One of those benchmarks was to prove beyond a reasonable doubt that the common purpose of the enterprise was to promote Defendant's *illegal* sexual activity. The government failed to meet *that* benchmark. Defendant did not introduce a new "unspecified" requirement. Rather, the illicit common purpose element was charged, set forth in the jury instructions, and the jury was

3

instructed that the government was required to prove the enterprise *as charged*. The government simply failed to prove the *charged* enterprise theory.

By arguing that it was never required to prove a common purpose of illegality *as the indictment charged,* the government is attempting to constructively amend the indictment on appeal to remove that essential element of the RICO enterprise theory. A constructive amendment occurs when the evidence presented at trial alters the essential elements of the charges specified in the indictment. *United States v. Dove,* 2018 U.S. App. LEXIS 5685, *12 (2d Cir. 2018). The indictment here alleged that a common purpose of the enterprise was to promote Defendant's *illegal* sexual conduct. That the government now claims that it was never required to prove the *illegal* common purpose is nothing more than an unconstitutional constructive amendment to the indictment.

The government alternatively argues that "even if Kelly's brief challenging the sufficiency of the evidence were interpreted to challenge the jury instructions . . ." the error is not plain error. There is no error in the jury instructions, plain or otherwise. The jury was expressly told that the government was duty-bound to prove its *charged* theory of an enterprise which included a theory that the common purpose of the enterprise was to promote *illegal* sexual conduct - not merely promote Defendant's music. The government failed to prove its theory of an enterprise and the conviction must now be reversed. The government can cite to no

4

authority that allows it to amend the indictment on appeal to fundamentally alter its theory of the purpose of the enterprise.

## B. An Enterprise Requires a Shared Purpose of Fraudulent or Illegality as the Government Charged in Its Indictment.

The government contends that it was *not* required to prove a shared illegal or fraudulent course of conduct. (Gov. Br. at 42) This position by the government represents a profound change of heart where it charged Defendant with an enterprise that had a common purpose of an *illegal* course of conduct and then instructed the jury that it was required to prove that *illegal* common purpose. As argued above, the government was required to prove its theory of a common purpose as pled in the indictment and as set forth in the jury instructions.

Recognizing that its proof of a common purpose as pled in the indictment was insufficient, the government repeatedly attempts to recast Defendant's argument as a challenge to the structure of the RICO organization. Defendant's RICO challenge has nothing to do with the structure of Defendant's organization. It is well established that an enterprise can have either a legal or illegal structure. But a RICO enterprise cannot exist without its members sharing a common purpose to engage in a particular course of fraudulent or illegal conduct irrespective of whether the so-called enterprise has a formal or informal structure. The government recognized that it was required to prove that the members of the

5

alleged enterprise shared a common *illegal* or *illicit* purpose as evidence by the fact that it pled one in the indictment. To hold otherwise would mean that any rouge bad actor operating in a legal organization could be prosecuted under RICO. This scenario stretches the RICO statute beyond and *contrary to* its purpose.

The government attempts to distinguish Defendant's authority but repeatedly succeeds at proving Defendant's contentions. For example, the government argues that in *First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F. 3d 159 (2d Cir. 2004), the alleged common purpose was one grounded in fraud - "to conceal . . . assets from [] creditors [] [and] the bankruptcy court" - and, thus, this Court necessarily analyzed whether such a common purpose had been adequately alleged." (Gov. Br. at 44) The government seems to forget that *it* too alleged that the common purpose of the enterprise in this case was to promote the Defendant *and his illegal sexual conduct*. Consistent with the government's own argument, this Court should necessarily analyze whether such a common purpose has been adequately proved.

The government's attempts to distinguish *First Nationwide Bank v. Gelt Funding, Corp.,* 820 F. Supp. 89 (S.D.N.Y. 1993) and *Moll v. US Life Title Ins. Co. of New York,* 654 F. Supp. 1012 (S.D.N.Y. 1987) similarly fail. In both cases, the Complaints alleged a common purpose of illegality - just as the government did in this case. Having charged a common purpose of illegality amongst the so-called members of the association-in-fact enterprise, the government was required to

prove that common purpose of illegality. If the government had not charged a common purpose of illegal conduct in this case, the Defendant's motion to dismiss the indictment would have prevailed.

The government suggests that *Satinwood, First Nationwide,* and *Moll* are not good law because the cases preceded the Supreme Court's decision in *Boyle v. United States,* 556 U.S. 928 (2009) in which the Supreme Court held that an association-in-fact enterprise need only have a "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associate to pursue the enterprises purpose." (Gov. Br. at 45) *Boyle* does not help the government's case.

In *Boyle,* the Defendant was charged with a number of bank thefts that were allegedly conducted by a group of loosely organized individuals operating within a larger structure. As the Court observed, "[t]he participants in these crimes included a core group, along with others who were recruited from time to time. . . Each theft was typically carried out by a group of participants who met beforehand to plan the crime, gather tools . . . and assign the roles that each participant would play (such as lookout and driver). The participants generally split the proceeds from the thefts. The group was loosely and informally organized. It does not appear to have had a leader or hierarchy. . ." *Id* at 941. The Supreme Court held that this association-in-fact qualified as an enterprise for RICO purposes notwithstanding the absence of a

clear leader. The Court was not presented with the question (nor did it answer) whether the members of an association-in-fact must share a common purpose to carry out an illegal course of conduct or whether a single bad actor acting within an organization can be guilty of RICO.

Indeed, in *Boyle,* the association-in-fact's entire purpose was to carry out bank robberies - a decidedly criminal purpose. If anything, *Boyle* drives home Defendant's point that the evidence in this case did not show that the members of Defendant's musical collective - whether characterized as formal or informal structure - engaged in conduct demonstrating a shared purpose to carry out an illegal course of conduct. The government purposefully distorts Defendant's challenge as one to the *structure* of the enterprise rather that the *purpose* of it. If within the context of a legitimate business (as Defendant's business was) there does not exist a group of individuals with a shared purpose to engage in a course of fraudulent or illegal conduct, there simply is no RICO enterprise, even if the head of that legitimate business is independently engaging in illegal behavior.

The government points this Court to the language in *United States v. Turkette,* 452 U.S. 576 (1981) and *D'Addario v. D'Addario,* 901 F. 3d 80 (2d Cir. 2018) for the proposition that an association-in-fact enterprise need not have "some sort of illicit- much less fraudulent - common purpose." (Gov. Br. at 48) The government did not take this view when it presented it theory of a common

8

purpose to the grand jury or even when it offered its jury instructions. In any event, neither the *Turkette* nor *D'Addario* courts were presented with this precise question, because there was no dispute about whether the common purpose of the alleged enterprise members were engaged in a criminal or fraudulent course of conduct. As explained in his opening brief (apparently overlooked by the government based on footnote 7 of its brief) in *Turkette,* the Court was tasked with deciding whether an enterprise could include an entirely illegitimate enterprise. In its discussion, the Court compared various associations-in-fact that were entirely criminal in nature with those that were a combination of illegal and legitimate activities. *Turkette* did not provide any example of an association-in-fact where its members shared *only* a legal purpose. Similarly, in *D'Addario,* the association-in-fact enterprise had a legitimate *structure* in so far as its stated purpose was to settle the deceased's Estate. But as this Court observed, the defendant and other members of the enterprise shared a common and unambiguous purpose of carrying out a fraudulent scheme to steal from the Estate. *Id.* at 87.

These cases stand in stark contrast to the instant one. Here, the evidence, at best, shows that Defendant used unwitting low-level employees to carry out anodyne tasks that facilitated his *own* criminality. Indeed, the government has failed to cite a single case that suggests, let alone holds, that an enterprise is

established when a single bad actor uses status and authority within an organization to enable his private misdeeds.

The government also cites *United States v. Cianci,* 378 F. 3d 71 (1st Cir. 2004) and *United States v. Feldman,* 853 F. 2d 648 (9th Cir. 1988) for the proposition that to establish a RICO enterprise, the government need not show that a corporation has acted with 'purposeful' or unlawful intent. This argument misses the mark. Defendant has never suggested that the government's enterprise evidence was insufficient because his legitimate business entities did not act with an unlawful intent. Defendant's argument is simply that the government did not prove that the charged association-in-fact enterprise shared any illicit common purpose. Neither *Cianci* nor *Feldman* hold that association-in-fact enterprise can exist without its members sharing an illicit common purpose. Indeed, *Cianci* says the opposite. There the Court held:

> Municipal entities can be party of an unlawful purpose association-in-fact enterprise so long as those who control the entities shared the purposes of the enterprise. "RICO does not require intention or 'purposeful' behavior by corporations charges as members of an association-in fact." [citation omitted] A RICO enterprise animated by an *illicit common purpose* can be comprised of an association-in-fact municipal entities and human members when the latter exploits the former to carry out that purpose. (emphasis added) *Id.* at 83.

The *Cianci* Court expressly acknowledged that the *members* of the association-in-fact enterprise must be motivated by an "illicit common purpose,"

10

even if the municipality itself need not act purposefully. As the Court noted, an association-in-fact enterprise consisting of people and entities can exist when the people use the organization to carry out their shared *illicit* common purpose. The Court did not hold that an association-in-fact enterprise can consist of people whose only purpose is to carry out a legitimate and legal purpose.

**C.      The Government Did Not Show A Common Purpose of Any Illegal Or Illicit Conduct As Charged.**

The government eventually concedes, as it must, that its indictment charged that the "common purpose" of the RICO enterprise was to "recruit women and girls to engage in illegal sexual activity with KELLY and to produce pornography, including child pornography." (Gov. Br. at 50-51) The government generally claims that it proved this illicit common purpose but almost immediately reverts back to its faulty legal argument, namely that Defendant's mere use of his employees for tasks such as driving "female guests" from one location to another, or providing a woman (of unknown age) Defendant's phone number is sufficient to show a common purpose of recruiting women for *illegal* sexual activity and the production of child pornography.

The government expressly argues, "[t]he evidence proved that Kelly used his fame and popularity in the music business, combined with a network of individuals at his disposal, to target, groom and exploit numerous victims for his own sexual

gratification." (Gov. Br. at 51) Even accepting this statement as true, it does not constitute sufficient evidence that the "network of individuals" shared a common purpose to promote Defendant's illegal sexual conduct.

The government relies on *United States v. Minicone,* 960 F. 2d 1099 (2d Cir 1992) for the proposition that the government was only required to prove that the enterprise's common purpose was to promote Defendant's music and brand, not Defendant's illegal sexual conduct. The government grossly mischaracterizes the holding of *Minicone,* falsely suggesting that *Minicone* supports its contention that an enterprise need not have an illegal common purpose if a Defendant merely uses his underlings to carry out his private misdeeds.

In *Minicone,* the defendants were charged for their alleged involvement in a wide-ranging criminal enterprise that profited from "extortion, loansharking, illegal gambling, and trafficking in stolen property." *Id.* at 1103. The defendants challenged their convictions on the grounds that the racketeering activities were not sufficiently related to the RICO enterprise, not that evidence of an enterprise was insufficient. *Id.* at 1106. Contrary to the government's argument, the court did not suggest an enterprise exists when a defendant is "enabled to commit the predicate offenses solely by virtue of his position in the enterprise . . ." Rather, the court's statement pertained to the vertical nexus requirement between the RICO enterprise and predicate racketeering acts. It was not a declaration that a RICO

12

enterprise can exist even where the members have no common purpose of carrying out an illegal course of conduct.

The government spills unnecessary ink on its argument that the predicate offenses are related to the activities of the enterprise, detailing its evidence of the "predicate acts". (Gov. Br. at 53) If the government had proved the enterprise as charged, the government's relatedness claim would be well taken. But as discussed at length, the government failed to prove an enterprise. There are no predicate offenses - just stand alone charges that are time-barred.

The government insists that despite the fact that it charged an illicit common purpose, it was not required to prove one. Alternatively, the government claims even if it was required to prove an illicit common purpose, it satisfied its burden because Defendant's employees knew he mistreated his girlfriends. The government revives its closing argument, drawing sweeping and unsupported conclusions about the evidence that borders on misrepresenting the record. Cites to the record are noticeably lacking and the government seems to rely heavily on the PSR which is replete with hearsay evidence that was *never* presented to the jury. But even if the government's greatly embellished version of the evidence was true, its evidence showed only that a handful of employees whose employment with the Defendant was short-lived turned a blind eye to Defendant's occasional mistreatment of his adult girlfriends.

The government writes in its Statement of Facts, and later incorporates into its argument, that "Kelly and his inner circle assisted Kelly in his professional and personal life . . . also recruiting and maintaining Kelly's female victims" citing A447-49; A673; SA1257 (Gov. Br. at pg. 5) Indeed, it is not even clear what the government means by recruiting and maintaining Kelly's "female victims." But the testimony to which the government cites to back up this aggrandized narrative is devoid of facts from which the jury could have fairly concluded that Defendant's employees shared a common purpose of promoting his *illegal* sexual activity.

For example, Navarro did not testify to a single fact from which a rational juror could conclude that he "recruited or maintained" Defendant's "victims." Indeed, the prosecutor did not even question Navarro about Defendant's "victims" who she never identified in any event. Navarro testified to his general responsibilities as a road manager that included ordering food for Defendant's "female guests" at the studio and driving them home when asked. In a misleading fashion, prosecutors repeatedly referred to Defendant's "female guests" when questioning his former employees knowing that those former employees would never agree that they knowingly facilitated Defendant's sexual misconduct. But here, the government asks this Court to just assume that "female guests" means Defendant's "victims." This Court may not do so. In sum, Navarro did not utter a single word from which any rational juror could conclude that he and others shared

a common purpose to ensure Defendant sexually abused women and children or produced pornography.

The government also cites to Arnold's testimony as support for its "common purpose" evidence, claiming that "Kelly's inner circle also assisted Kelly's female guests in arranging air travel and hotel rooms, allowing them to visit Kelly across the United States." (Gov. Br. at pg. 6) A review of the citations provided by the government at A649 shows only that one of Arnold's responsibilities was to make sure Kelly and his team got to their destinations. Arnold's testimony as cited by the government is devoid of a single reference to Kelly's victims or girlfriends. The government takes enormous liberties with this record that borders on misrepresentations.

The government claims that evidence of a common purpose was established because Kelly's inner circle required them to abide by "several rules" including signing non-disclosure agreements and getting permission for guests to use the bathroom. The government fails to explain how rules related to non-disclosure agreements and obtaining permission to use the bathrooms in his studio or house shows a common purpose to promote Defendant's alleged sex crimes.

The government cites to testimony from Diana Copeland (A1063) and Mayweather (A1282) which established nothing more than they were Defendant's personal assistants who arranged travel for some of Defendant's "female guests"

15

(A1063) and that they interacted with Defendant's girlfriends, none of whom were underage. Copeland never testified that she made travel arrangements for underage girls or that she was promoting Defendant's illegal sexual activities or production of child pornography. Mayweather noted that Defendant did not want her interacting with his girlfriends. It is unclear how this testimony showed a common purpose to promote Defendant's illegal sexual conduct with women and children. Furthermore, that Defendant's personal assistants retrieved prescription medications for him, including Valtrex, does not mean that those assistants had any reason to know that Defendant was exposing his girlfriends to herpes without their knowledge in states where it is illegal to do so; it certainly does not establish a common purpose to promote Defendant's *illegal* sexual activities.

The remainder of the government's cited evidence merely shows that Defendant imposed rules on his employees that were sometimes harsh and that he sometimes mistreated them. (Gov. Br. at 8) For example, the government makes much of the fact that Defendant "fined" his employees for not abiding by his rules and allegedly requiring them to write letters to admit when they had done something wrong. That Defendant was difficult to work for is not evidence that his employees shared a common purpose to promote his illegal sexual conduct.

In sum, the government charged Defendant under RICO alleging that the purpose of the enterprise was to promote Defendant's illegal sexual conduct. The

jury instructions set forth that theory and instructed the jury that the government was required to prove that theory. The government's evidence was insufficient.

### D. Defendant and the Enterprise Are Not Distinct.

The government seems to suggest that the distinctness requirement is only applicable in RICO cases involving corporate entities and that because Defendant had an "inner circle," the distinctness requirement was satisfied. Not so. The RICO statute mandates that a *person* who engaged in a pattern of racketeering activity must be "employed by or associated with" the enterprise. *Satinwood,* 385 F. 3d 159 (2d Cir. 20014); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F. 3d 339, 344 (2d Cir. 1994); *Bennett v. U.S. Trust Co. of New York*, 770 F. 2d 308, 315 (2d Cir. 1985); *Brannon v. Boatmen's First Nat'l Bank of Oklahoma, T.B.A.,* 153 F. 3d 1144, 1146 (10th Cir. 1998). An entity cannot simultaneously be the enterprise and the person who conducts its affairs; permitting that would be tantamount to permitting an entity to associate with itself. *Bennett,* 770 F. 2d at 315; *Hirsch v. Enright,* 751 F. 2d 628, 633 (3d Cir. 1984)*; McCullough v. Suter,* 757 F. 2d 142, 144 (7th Cir. 1985).

In its argument, the government doubles down on its claim that a RICO enterprise exists when the Defendant simply uses "the machinery" of his organization to enable his sexual misdeeds. By making this claim, the government simply reads out of the statute any distinctness requirement. If it is the case that a

RICO enterprise exists when a defendant uses the employees of his *own* organization to carry out tasks that facilitate illegal activities, whether it be using employees to facilitate unlawful sexual conduct or illicit drug use or financial crimes, the alleged enterprise has no function unrelated to the Defendant. They are truly one in the same.

In sum, the government's theory of a RICO enterprise was flawed from the start. The government's evidence, taken in its best light, showed only that Defendant employed a collective of people over his 25+ year career who promoted his career and his music; they did not share an objective to commit sex crimes against women and girls. Accordingly, the government failed to prove an enterprise, and Defendant's racketeering conviction must be vacated.

## II. The Government's Evidence Of Intent As to the Mann Act Violations Related to Jane and Faith Were Insufficient.

Defendant relies largely on the arguments contained in his opening brief concerning the sufficiency of the evidence as to the Mann Act violations related to Jane and Faith. However, it bears repeating that the government cannot and did not prove that Defendant's motivating purpose in transporting Jane and Faith to California and New York was to expose them to herpes in violation of state public health laws. The District Court got it wrong when it held that the intent element is satisfied by a general intent to engage in legal sex that could be criminally

prosecuted for reasons unrelated to the travel. Recognizing the District Court's flawed analysis, the government attempts to fold the prohibited sexual activity into the real purpose of the travel, arguing that Defendant's motivating purpose for the travel was "to engage in unprotected sex in his usual manner, without first informing her that he had contracted herpes, and obtaining her consent to sexual intercourse in those circumstances." (Gov. Br. at pg. 61) The government's word games do not save their argument.

Defendant's *intent* in arranging travel for Jane and Faith was not to give them herpes or expose them to an STD; it was to engage them in sexual activity, and not necessarily sexual intercourse (the only way to expose them to an STD). The exposure to herpes was merely incidental to the travel. To hold otherwise would mean that even if Defendant never went to Faith's hotel room after arranging for her travel there and never had sex with her, he would still be guilty of violating the Mann Act for *intending* to expose her to a sexually transmitted disease. This absurd result undermines the government's contention. The government's attempt to avoid its burden of proof by conflating the incidental consequence (exposure to herpes) into the true purpose of the travel, legal sexual activities, must be rejected.

**III.    Defendant Was Denied A Fair And Impartial Jury Where Several Of The Seated Jurors Admitted That They Prejudged The Defendant's Guilt and Trial Counsel Provided Ineffective Assistance of Counsel When He Failed to Move To Disqualify Patently Unqualified Jurors.**

Contrary to the government's argument, Defendant is not generally complaining that his trial counsel "could have done more" during *voir dire.* Rather, Defendant contends that his counsel's performance was objectively unreasonable when he did not object to the seating of multiple jurors who: (1) had seen "Surviving R. Kelly;" (2) were aware of Defendant's reputation that he "loves little girls;" and (3) were familiar with his prior legal troubles, including his criminal prosecution for creating sexually explicit videos with a minor. Had there been even *one* juror who had seen "Surviving R. Kelly" seated on Defendant's jury, his jury could not be deemed impartial.

The government minimizes the extraordinary prejudice that Defendant suffered as a result of his counsel's deficient performance. The government argues that Defendant cannot demonstrate prejudice, because he cannot show that any juror had "actual bias." This record demonstrates that before stepping into the courtroom, *two* jurors heard over 360 minutes of victim testimonies, including graphic accounts of urinating on 14-year-olds. If this type of information does not lead to the inference that a person will not and cannot act with impartiality, it is

20

difficult to imagine what would. A whopping *six* jurors were familiar with allegations that Defendant had previously sexually abused minors and had faced legal consequences for such conduct. The government attempts to trivialize the prejudice to Defendant, but it is simply beyond debate that Defendant's jurors suffered from actual bias.

Frankly, even if Defendant cannot show "actual bias," bias should be presumed here. The United States Supreme Court has observed, "[a] fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness . . . To perform its high function in the best way 'justice must satisfy the appearance of justice.'" *Estes v. Texas,* 381 U.S. 532, 543 (1965). As Chief Justice Taft said in *Turney v. Ohio,* 273 U.S. 510 (1927):

> The requirement of due process of law in judicial procedures is not satisfied by the argument that men of the highest honor and the greatest self-sacrifice could carry it on without danger of injustice. Every procedure which would offer a *possible* temptation to the average man . . . to forget the burden of proof required to convict the defendant or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law. *Id.* at 532.

Indeed, the United States Supreme Court has struck down convictions irrespective of a showing of actual bias where prejudice is inherent in those convictions. *See,*

*e.g., Rideau v. Louisiana,* 373 U.S. 723 (1963); *Turner v. Louisiana,* 379 U.S. 466 (1965).

This is a case where prejudice is inherent in Defendant's convictions because fully half of his jury was exposed to highly prejudicial and *inadmissible* evidence that invariably interfered with Defendant's cherished constitutional safeguards. In the old, but highly instructive case of *Marshall v. United States,* 360 U.S. 310 (1959), the United States Supreme Court reversed a defendant's drug conviction after concluding that exposure of some of the jurors to newspaper articles was so prejudicial to justify a new trial. *Id.* During the defendant's trial, two newspaper articles got before a substantial number of jurors. *Id.* at 311. The news accounts contained information that the defendant had two previous felony convictions and detailed the circumstances of prior arrests and convictions. *Id.* Upon learning that the news accounts had reached the jurors, the trial judge questioned the jurors about whether they had seen the articles. *Id.* at 312. Seven of the jurors had some exposure to the articles, but *all* assured the trial judge that they would not be influenced by the news articles and could decide the case on the evidence in the record. The trial judge denied the defendant's motion for a mistrial, finding that there was no prejudice to the defendant. The United States Supreme Court reversed, finding "[w]e have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly

offered as evidence. The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is part of the prosecution's evidence. It may indeed be greater for it is then not tempered by protective procedures." *Id*. at 312-313.

Consistent with the teachings of *Marshall,* Defendant is entitled to a new trial. Four jurors were exposed to information of a character that was so prejudicial that it could not be offered into evidence. Indeed, had trial counsel simply moved to disqualify these jurors, it seems likely that those motions for cause would have been allowed. Prejudice to the defendant must be presumed given the inflammatory nature of the information that no average human could put aside. Defendant's convictions must be vacated, and a new trial ordered.

The government's responsive brief does not raise any additional arguments that are not adequately addressed in Defendant's opening brief.

Respectfully Submitted,

/s/JENNIFER BONJEAN

Bonjean Law Group, PLLC
750 Lexington Avenue, 9th Floor
New York, NY 10022
(718) 875-1850

23